1   ROB BONTA
    Attorney General of California
2   GREG W. CHAMBERS
    Supervising Deputy Attorney General
3   State Bar No. 237509
      455 Golden Gate Avenue, Suite 11000
4     San Francisco, CA  94102-7004
      Telephone:  (415) 510-3382
5     Fax:  (415) 703-5480
      E-mail:  Greg.Chambers@doj.ca.gov
6   *Attorneys for Defendants Rob Bonta, Attorney
    General, and Laurie Rose Lubiano*

7

8                 IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  ┌─────────────────────────────────────┬──────────────────────────────────

12  **DOUGLAS VERN HULSTEDT,**              Case No. 23-cv-02003-JSC

                                   Plaintiff,  **REQUEST FOR JUDICIAL NOTICE IN**
13                                          **SUPPORT OF DEFENDANTS ROB**
                                            **BONTA AND LAURE ROSE LUBIANO TO**
14              v.                          **DISMISS COMPLAINT**

15  **ROB ANDREAS BONTA, LAURIE ROSE**      Date:         Thursday, August 3, 2023
    **LUBIANO, AND THE STATE BAR OF**       Time:         10:00 a.m.
16  **CALIFORNIA,**                         Courtroom:    8 – 19th Floor
                                            Judge:        Hon. Jacqueline Scott Corley
17                             Defendants.   Trial Date:   None Set
                                            Action Filed: April 25, 2023
18  └─────────────────────────────────────┴──────────────────────────────────

19        TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD, IF ANY:

20        PLEASE TAKE NOTICE THAT on August 3, 2023, at 10:00 a.m., before the Honorable

21  Jacqueline Scott Corley in Courtroom 8 – 19th Floor of the United States Courthouse, located at

22  450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Rob Bonta, Attorney General,

23  and Laurie Rose Lubiano, a member of the Medical Board of California (hereinafter collectively

24  Defendants), will, and hereby do, respectfully request that, pursuant to Federal Rule of Evidence

25  201, this Court take judicial notice of the following documents in considering their Motion to

26  Dismiss Plaintiff's Complaint:

27  ///

28

                                            1

| | **Exhibit** | **Document** |
|---|---|---|
| | 1 | Medical Board's Order Denying Petition for Reconsideration, and Decision Revoking Plaintiff's license effective February 27, 2023. |
| | 2 | Accusation before the Medical Board of California, *In the Matter of the Accusation Against Douglas Vern Hulstedt, M.D.*, Case No. 800-2021-079497. |
| | 3 | Petition No. CPF-22-517660 in the County of San Francisco Superior Court for an Order to Show Cause and Compel Plaintiff's Compliance with an Investigational Subpoena on January 12, 2022. |
| | 4 | Order of the Superior Court of California for the County of Monterey dated September 30, 2022, granting Defendants' Special Motion to Strike. |
| | 5 | Plaintiff's small claims matter in Alameda Court Superior Court Against State of California; Rob Bonta, Attorney General; and Thomas Ostly, Deputy Attorney General. |
| | 6 | Notice of Removal of Civil Action - *Hulstedt v. State of California,* Case No. 22-cv-07439-HSG. |
| | 7 | Plaintiff's Complaint against the Medical Board - *Hulstedt v. Medical Board of California*, Case No. 22-cv-06688-HSG. |

This Request for Judicial Notice is based on this notice, the attached memorandum of points and authorities, Plaintiff's Complaint, all pleadings and records on file in this action, and on such further authority, evidence, or argument as may be presented at or before the time of any hearing on Defendants' motion to dismiss Plaintiff's Complaint.

1    Dated:  June 23, 2023                           Respectfully submitted,

2                                                    ROB BONTA
                                                     Attorney General of California
3                                                    *Greg W. Chambers*

4                                                    GREG W. CHAMBERS
                                                     Supervising Deputy Attorney General
5                                                    *Attorneys for Defendants*
                                                     *Rob Bonta and Laurie Rose Lubiano*

6

7

8                       **MEMORANDUM OF POINTS AND AUTHORITIES**

9                                       **INTRODUCTION**

10           This Court should take judicial notice of the attached administrative and judicial records

11   when it considers the motion of Defendants Rob Bonta, Attorney General; and Laurie Rose

12   Lubiano, a member of the Medical Board of California (hereinafter collectively the Defendants)

13   to dismiss Plaintiff's Complaint. These documents are public records capable of accurate and

14   ready determination by resort to sources whose accuracy cannot be reasonably questioned and

15   they are relevant to the issues raised in the Defendants' motion to dismiss.

16                                        **ARGUMENT**

17           A Court may consider documents incorporated by reference in the complaint and matters of

18   judicial notice without converting a motion to dismiss into a motion for summary judgment.

19   *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Tellabs v. Makor Issues &*

20   *Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007) (holding "courts must

21   consider the complaint in its entirety, as well as other sources courts ordinarily examine when

22   ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the

23   complaint by reference, and matters of which a court may take judicial notice").

24           The incorporation by reference doctrine permits a court to take into account documents

25   whose contents are alleged in a complaint and whose authenticity no party questions, but which

26   are not physically attached to the plaintiff's complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1076

27   (9th Cir. 2005); *see also Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (considering

28

1    subpoenas on Rule 12(b)(6) motion that were "not physically attached to the complaint where the

2    documents' authenticity is not contested, and the plaintiff's complaint necessarily relies on them").

3    The Court should find that Exhibit 2 is incorporated by reference in page 1 of the pleading

4    caption, and page 3, lines 5-6, of Plaintiff's Complaint, which makes explicit reference to that

5    proceeding. The Court may also separately take judicial notice of this document, because it is a

6    matter of public record.

7         Pursuant to Federal Rule of Evidence 201, a court may take judicial notice of adjudicative

8    facts. Adjudicative facts are "not subject to reasonable dispute," and "thus subject to judicial

9    notice, only if they are either 'generally known' under Rule 201(b)(1) or 'capable of accurate and

10   ready determination by resort to sources whose accuracy cannot be reasonably questioned' under

11   Rule 201(b)(2)." *Ritchie*, 342 F.3d at 908-09. Court especially take judicial notice of "matters of

12   public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 688-689 (9th Cir. 2001).

13        Courts frequently take judicial notice of actions and records of other courts. Federal courts

14   "may take notice of proceedings in other courts, both within and without the federal judicial

15   system, if those proceedings have a direct relation to matters at issue." *United States ex rel.*

16   *Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (quoting

17   *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979)). Federal courts

18   often take judicial notice of records from state courts. *See, e.g.*, *Dawson v. Mahoney*, 451 F.3d

19   550, 551 n. 1 (9th Cir. 2006); *Louie v. McCormick & Schmick Restaurant Corp.*, 460 F. Supp. 2d

20   1153, 1155 n. 4 (C.D. Cal. 2006).

21        Courts may take judicial notice of records in the court files, because these records are

22   generally not subject to reasonable dispute. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d

23   741, 746 n. 6 (9th Cir. 2006); *Western Fed. Sav. & Loan Ass'n v. Heflin Corp.*, 797 F. Supp. 790,

24   792 (N.D. Cal. 1992). For example, courts take judicial notice of complaints and orders as public

25   records. *See, e.g.*, *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (a complaint); *Nguyen v.*

26   *LaSalle Bank Nat'l Ass'n*, 2009 WL 3297269, at *2 (C.D. Cal. Oct. 13, 2009) (complaint, answer,

27   and minute order); *Whitty v. First Nationwide Mortgage Corp.*, 2007 WL 628033, at *3-4 (S.D.

28   Cal. Feb. 26, 2007) (various court documents, including complaints, judgments, and orders).

1   Although courts cannot take judicial notice of factual allegations or finding in court records for

2   the truth of the facts asserted, they can take judicial notice of judicial acts or order. A "judicial

3   act" itself, such as an oral or written order, is not a fact subject to reasonable dispute, because

4   court records "constitute 'a source whose accuracy cannot reasonably be questioned.'" *Colonial*

5   *Leasing Co. of New England, Inc. v. Logistics Control Group Int'l*, 762 F.2d 454, 459 (5th Cir.

6   1985).

7        In addition, courts appropriately take judicial notice of the records and reports of

8   administrative bodies and agencies because they are public records. *See, e.g.*, *Barron v. Reich*, 13

9   F.3d 1370, 1377 (9th Cir. 1994); *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 600

10   (7th Cir. 2004); *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986),

11   *abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S.

12   Ct. 2166, 115 L. Ed. 2d 96 (1991); *Lawrence v. City of San Bernardino*, 2005 WL 5950105, at *3

13   (C.D. Cal. July 27, 2005).

14        Finally, a court "may take judicial notice of a record of a state agency not subject to

15   reasonable dispute." *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1223 (9th Cir. 2004). Thus,

16   California courts have taken judicial notice of government claims and notices of rejection. *See,*

17   *e.g., Abdi v. Cty. of San Diego,* 2018 WL 6248539, at *2 (S.D. Cal. Nov. 29, 2018); *Pinder v.*

18   *Employment Dev. Dep't*, 2013 WL 4482955, at *11 n. 11 (E.D. Cal. Aug. 20, 2013).

19        Thus, the Court may take judicial notice of Exhibits 1 and 2 as both administrative records

20   and public records, Exhibit 3, 4, 5, 6, and 7 as Court records, and Exhibit 4 as a judicial order and

21   Court record. All seven of these documents can be accurately and readily determined from

22   sources whose accuracy cannot reasonably be questioned.

23        Courts are permitted to take judicial notice of the contents of court orders or briefs to

24   determine what issues were litigated. *See, e.g.*, *Reyn's Pasta Bella*, 442 F.3d at 746 n. 6;

25   *Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1037 (9th Cir. 2005);

26   *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002). Judicial notice of these documents and the

27   contents thereof is important for the Court's decision about the application for injunctive relief in

28

this case and for context about the facts and history giving rise to Plaintiff's claim, especially since his Complaint references them but is scant on factual allegations.

### CONCLUSION

The Defendants respectfully request that the Court grant judicial notice of Exhibits 1 through 7 in considering their Motion to Dismiss Plaintiff's Complaint.

Dated:  June 23, 2023                    Respectfully submitted,

ROB BONTA
Attorney General of California

*Greg W. Chambers*

GREG W. CHAMBERS
Supervising Deputy Attorney General
*Attorneys for Defendants*
*Rob Bonta, Attorney General, and Laurie*
*Rose Lubiano*

# EXHIBIT 1

**BEFORE THE**
**MEDICAL BOARD OF CALIFORNIA**
**DEPARTMENT OF CONSUMER AFFAIRS**
**STATE OF CALIFORNIA**

In the Matter of the Accusation Against:

Douglas Vern Hulstedt, M.D.

Case No.: 800-2021-079497

Physician's & Surgeon's
Certificate No A 42397

                        Petitioner.

## ORDER DENYING PETITION FOR RECONSIDERATION

The Petition filed by Douglas Vern Hulstedt, M.D., for the reconsideration of the decision in the above-entitled matter having been read and considered by the Medical Board of California, is hereby denied.

This Decision remains effective at 5:00 p.m. on February 27, 2023.

IT IS SO ORDERED: _____FEB 2 7 2023_____

_Reji Varghese_
Reji Varghese
Interim Executive Director

## DECLARATION OF SERVICE BY CERTIFIED AND FIRST CLASS MAIL

In the Matter of the Accusation Against:

### DOUGLAS VERN HULSTEDT, M.D.      MBC Case No.: 800-2021-079497

I, the undersigned, declare that I am over 18 years of age and not a party to the within cause; my business address is 2005 Evergreen Street, Suite 1200, Sacramento, California 95815. I served a true copy of the attached:

### ORDER DENYING PETITION FOR RECONSIDERATION

by mail on each of the following, by placing same in an envelope (envelopes) addressed (respectively) as follows:

**NAME AND ADDRESS**
Douglas Vern Hulstedt, M.D.
2511 Garden Rd., # C100
Monterey, CA 93940-5333

**CERT NO.**
7021 2720 0000 5188 2061 and
**FIRST CLASS MAIL**

Thomas Ostly
Deputy Attorney General
Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004

**ELECTRONIC MAIL**

Juliet Cox
Administrative Law Judge
Office of Administrative Hearings

e-FILE:
OAHSecureEFile@dgs.ca.gov

Each said envelope was then, on February 27, 2023, sealed and deposited in the United State mail at Sacramento, California, the county in which I am employed, either as certified mail or first-class U.S. mail with the postage thereon fully prepaid and return receipt requested for the certified mail.

Executed on February 27, 2023 at Sacramento, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Regina Rodriguez, Declarant

**BEFORE THE**
**MEDICAL BOARD OF CALIFORNIA**
**DEPARTMENT OF CONSUMER AFFAIRS**
**STATE OF CALIFORNIA**

In the Matter of the Accusation Against:

Douglas Vern Hulstedt, M.D.

Case No.  800-2021-079497

Physician's and Surgeon's
Certificate No.  A 42397

Respondent.

## DECISION

The attached Proposed Decision is hereby adopted as the Decision and Order of the Medical Board of California, Department of Consumer Affairs, State of California.

This Decision shall become effective at 5:00 p.m. on February 17, 2023.

IT IS SO ORDERED January 18, 2023.

MEDICAL BOARD OF CALIFORNIA

Laurie Rose Lubiano, J.D., Chair
Panel A

DCU35 (Rev 07-2021)

# BEFORE THE
# MEDICAL BOARD OF CALIFORNIA
# DEPARTMENT OF CONSUMER AFFAIRS
# STATE OF CALIFORNIA

## In the Matter of the Accusation Against:

## DOUGLAS VERN HULSTEDT, M.D.,

## Physician's and Surgeon's Certificate No. A 42397

## Respondent.

## Agency Case No. 800-2021-079497

## OAH No. 2022100013

## PROPOSED DECISION

Administrative Law Judge Juliet E. Cox, State of California, Office of Administrative Hearings, heard this matter on November 8, 2022, by videoconference.

Deputy Attorney General Thomas Ostly appeared for complainant William Prasifka, Executive Director of the Medical Board of California.

Respondent Douglas Vern Hulstedt, M.D., appeared representing himself.

The matter was submitted for decision on November 8, 2022.

# FACTUAL FINDINGS

1.      The Medical Board of California (Board) issued Physician's and Surgeon's Certificate No. A 42397 to respondent Douglas Vern Hulstedt, M.D., on December 30, 1985. At the time of the hearing, this certificate was active and was scheduled to expire December 31, 2023.

2.      Acting in his official capacity as Executive Director of the Board, complainant William Prasifka signed an accusation against respondent on July 27, 2022. Respondent timely requested a hearing.

3.      Complainant alleges that respondent committed extreme departures from the medical standard of care by giving advice and issuing statements exempting a child (Patient 1) on medical grounds from all vaccination, and that respondent violated Business and Professions Code section 2225.5 by refusing to release Patient 1's medical records to the Board in response to a request accompanied by parental authorization and later in response to a court order. On these grounds, complainant seeks revocation of respondent's certificate, civil monetary penalties, and reimbursement of enforcement costs.

## Vaccination Exemptions for Patient 1

4.      Patient 1 was born in mid-2011. He received some early childhood vaccinations between 2011 and 2013.

5.      Patient 1's parents disagreed as to whether Patient 1 should receive additional vaccinations. A family court order regarding Patient 1 required his parents to make his medical decisions jointly, however.

2

6.      On August 19, 2015, when Patient 1 was four years old, Patient 1's father took Patient 1 to respondent, a pediatrician in Monterey.[1] Respondent gave Patient 1's father a note, written on a prescription form and signed by respondent, stating, "Pt. family [with] autoimmune issues. 0 further vaccines recommended." Patient 1's parents used this note to satisfy a preschool's requirement that they demonstrate either that Patient 1 was up to date on his routine childhood vaccinations or that he met one of the then-existing criteria for exemption from those vaccinations. (See Health & Saf. Code, § 120325 et seq.) Respondent knew when he gave Patient 1's father this note that Patient 1's father intended to use it in this manner.

7.      Medical records from the San Francisco pediatric practice where Patient 1's mother took him regularly (GetzWell Personalized Pediatrics) include a few records about Patient 1 from respondent. A note by respondent from his evaluation of Patient 1 on August 19, 2015, states "Mother Graves Disease."[2] It references no other autoimmune disease in Patient 1's family.

8.      On May 22, 2017, in preparation for enrolling Patient 1 in full-day school, Patient 1's mother conferred by telephone with GetzWell Personalized Pediatrics pediatrician Julia Getzelman, M.D., about additional vaccinations. Dr. Getzelman recommended them, noting that Patient 1's mother said he had "not had any trouble" with prior vaccines and that Patient 1 had "no neuro-developmental concerns."

---

[1] No evidence established whether respondent ever had met Patient 1 or his family before August 19, 2015.

[2] Graves' disease is an autoimmune disorder that causes hyperthyroidism.

3

9.      The next day, Patient 1's father again took Patient 1 to respondent. Respondent gave Patient 1's father another note, written on a prescription form and signed by respondent, stating, "Pt. [with] family hx of autoimmune [disease]. No vaccines recommended." Respondent also gave Patient 1's father a signed letter stating that Patient 1 "is exempt from vaccinations until 21 years of age, due to family autoimmune disease. This includes DTAP, Hep A, Hep B, Tdap, IPV, HIB, PREVNAR, MMR, VARICELLA, Meningococcal, Flu Vaccine, and Gardasil."

10.      Records in evidence from respondent's examination of Patient 1 on May 23, 2017, are only partially legible. Handwritten notes state that Patient 1 sometimes has "puffy eyes," and "strong reactions" to "bug bites." They also state, "Autoimm. dad and mom," "from time he was born constantly throwing up," "psoriasis, eczema, hyperhidrosis," "food allergies," and "celiac disease." These notes reflect a discussion with Patient 1's father, not any primary diagnoses by respondent based on examination, health history reflected in medical records, or laboratory testing.

11.      Patient 1's mother conferred several times during the next few years with pediatricians at GetzWell Personalized Pediatrics and with Patient 1's father about vaccinating Patient 1. Patient 1 underwent extensive allergy testing, including testing specifically to identify potential allergies to various common vaccine preparations, which did not show that Patient 1 was likely to have any allergic reaction to any vaccine. Dr. Getzelman and her colleague Nicole Glynn, M.D., advised Patient 1's parents on multiple occasions that Patient 1 was a generally healthy child who had no medical reason not to receive routine childhood vaccinations. Nevertheless, no one was able to persuade Patient 1's father to consent to Patient 1's receiving further vaccines.

///

4

12.     Eventually, the family court overseeing custody issues between Patient 1's parents addressed their conflict over whether Patient 1 should receive additional vaccinations. In January 2021, respondent provided a declaration to the family court supporting Patient 1's father's wish that Patient 1 receive no further vaccinations. Respondent's declaration emphasized his medical credentials and long experience as a pediatrician. He explained his beliefs that vaccination already had harmed Patient 1 and that further vaccination would be medically risky.[3]

## Standard of Care Regarding Childhood Vaccinations

13.     Deborah Lehman, M.D., testified on complainant's behalf, after having reviewed records about Patient 1 and prepared a report. Dr. Lehman holds a California physician's and surgeon's certificate and is board-certified in pediatrics and pediatric infectious diseases. She is a clinical professor at the University of California, Los Angeles, School of Medicine.

14.     The American Academy of Pediatrics (AAP) and the United States Centers for Disease Control and Prevention (CDC) issue and regularly update guidance for clinicians regarding diagnosing, treating, and preventing infectious disease. This guidance explains these organizations' recommendations for achieving effective

---

[3] Based on Patient 1's mother's complaint to the Board, complainant alleges that the family court ordered that Patient 1's mother could arrange vaccinations for Patient 1. Complainant alleges further that Patient 1's father reacted to this order by killing both Patient 1 and himself. No non-hearsay evidence addressed these allegations.

5

immunity to infectious disease through vaccination,[4] and also their recommendations regarding circumstances in which a patient should not receive vaccination.

15.    Dr. Lehman gave several examples of vaccine "contraindications," which are circumstances in which the AAP and CDC guidelines would counsel against vaccinating a particular patient with a particular product or at a particular time. These guidelines identify no circumstances in which every vaccine would be contraindicated for a patient during the patient's entire childhood, no matter what disease the vaccine targets, what mechanism of action it uses, or what specific ingredients it has.

16.    Dr. Lehman noted that neither a family history of autoimmune disease generally, nor a parental history of Graves' disease specifically, is a contraindication to any vaccination. Although a history of extreme allergic reaction to a specific vaccine preparation or ingredient may be a contraindication to further vaccination with the offending product, ordinary environmental or seasonal allergies (such as to pollen, dander, dust, insect bites, or foods) are not vaccine contraindications. Finally, Dr. Lehman noted that Patient 1's documented medical history of eczema would have put him at greater risk of serious harm from some vaccine-preventable diseases (such as chicken pox) than a child without eczema; as to these diseases, Patient 1's eczema was a strong personal reason for him to receive vaccination, not to avoid it.

---

[4] "Vaccination," as Dr. Lehman used that term, means use of a pharmaceutical product to induce immune response to one or more infectious microorganisms. Dr. Lehman explained that vaccine products vary widely with respect to their ingredients, and also with respect to the mechanisms by which they cause recipients to develop immune response.

17.     Dr. Lehman testified that the standard of care in California for pediatricians is to follow the AAP and CDC guidelines with respect to vaccination. A pediatrician should recommend and administer vaccines to children in accordance with the guidelines, modifying the guidelines' vaccination schedules only for patients as to whom the pediatrician diagnoses and documents vaccine contraindications that also conform to the guidelines.

18.     Upon review of all medical records available to her about Patient 1, Dr. Lehman identified no contraindication to Patient 1's receiving vaccinations in accordance with the AAP and CDC guidelines. In particular, in reviewing the sparse, cryptic records available from respondent, she identified no basis for him to have advised Patient 1's father against vaccinating Patient 1, and no basis for respondent to have issued "medical" exemptions for Patient 1's parents to present to his schools. In Dr. Lehman's opinion, respondent's advice to Patient 1's father and the medical exemptions respondent issued were extreme departures from the standard of care.

19.     Respondent did not testify to explain his medical reasoning with respect to the recommendations he made regarding Patient 1. Furthermore, respondent offered no expert opinion to contradict Dr. Lehman's opinion. Finally, as described below in Findings 21 through 30, if respondent had any other medical records about Patient 1 that might have explained his reasoning,[5] he refused to provide them.

///

---

[5] Records from GetzWell Personalized Pediatrics include a note from a "Well Child Visit" among respondent, Patient 1, and Patient 1's father on October 22, 2020, stating respondent's view that "vaccines always have unavoidable risks."

7

20.     Dr. Lehman's opinion is persuasive. The standard of care for a California pediatrician considering whether a child should or should not receive any particular childhood vaccination is to evaluate the child in accordance with the AAP and CDC guidelines.

a.     By issuing long-term exemptions from all vaccination to Patient 1 on putative "medical" grounds, without evaluating Patient 1 carefully and thoroughly in accordance with the AAP and CDC guidelines, respondent committed extreme departures from the standard of care.

b.     Moreover, the medical records about Patient 1 that were in evidence from GetzWell Personalized Pediatrics showed that if respondent had evaluated Patient 1 in accordance with the AAP and CDC guidelines, he could have satisfied the standard of care only by recommending routine vaccinations to Patient 1. On this basis as well, respondent committed extreme departures from the standard of care by granting, rather than refusing, Patient 1's father's request for "medical" exemptions to vaccination.

## Refusal to Produce Medical Records

21.     Patient 1's mother complained to the Board that respondent had grossly misinformed Patient 1's father, and had issued unwarranted vaccination exemptions for Patient 1. She provided some documents with her complaint, and authorized the Board to seek records about Patient 1 from several physicians, including respondent.

22.     On October 4, 2021, Board Special Investigator Chris Jensen mailed Patient 1's mother's authorization to respondent, and requested certified copies of all respondent's medical records regarding Patient 1.

8

23.     Respondent replied to this request by letter dated October 22, 2021, titled, "CONDITIONAL ACCEPTANCE READ CAREFULLY." He provided no records, no statement to the effect that he had no records, and no comprehensible or potentially meritorious objection to Jensen's request.[6]

24.     On November 18, 2021, a Board staff member personally served an investigative subpoena to respondent, demanding that he produce his complete medical records regarding Patient 1.

25.     In response to the subpoena described in Finding 24, respondent sent Jensen a letter reminding Jensen that respondent had made the demands in the letter identified above in Finding 23 and offering Jensen an additional three days to reply to these demands. He provided no records, no statement to the effect that he had no records, and no comprehensible or potentially meritorious objection to the subpoena.

26.     In January 2022, acting in her official capacity as Director of the California Department of Consumer Affairs, Kimberly Kirchmeyer filed a petition in the San Francisco Superior Court for an order compelling respondent to comply with the subpoena described in Finding 24.

27.     Respondent did not oppose the petition described in Finding 26 in the court. He did send Jensen a document on February 16, 2022, titled, "NOTICE OF

---

[6] The response included 35 numbered paragraphs, beginning with a demand that Jensen prove "that this a proper venue for me to testify in" and ending with a lengthy statement purporting to be an excerpt from a *British Medical Journal* article regarding medical experimentation on human subjects. It instructed Jensen to reply "under your full commercial liability, rebutting each of the points of the undersigned."

9

VIOLATION OF ESTOPPEL AND LAWFUL CLAIM FOR DAMAGES," demanding that Jensen cease all efforts to require any action from respondent and enclosing respondent's "fee schedule" for any further "violation of my natural, unalienable, constitutionally protected and secured Rights."

28.    On April 5, 2022, the San Francisco Superior Court entered an order directing respondent to comply on or before April 18, 2022, with the subpoena described in Finding 24. A Board staff member served that order to respondent the same day.

29.    On April 16, 2022, respondent sent notice to Jensen and to Kirchmeyer's counsel that he needed "leave of court for 45 days" to provide a proper response to the order described in Finding 28. He decorated this notice with two-cent postage stamps, and styled himself as "Douglas-Vern: Hulstedt, Beneficiary."

30.    As of the hearing date, respondent had provided no medical records regarding Patient 1 to the Board, and no statement or testimony to the effect that he has no such records.

## Refusal to Participate in Hearing in Good Faith

31.    Before the hearing, respondent barraged complainant's counsel as well as the Office of Administrative Hearings by mail with documents that did not state any cognizable prehearing motions. At the hearing, he repeatedly demanded that the administrative law judge and complainant's counsel answer irrelevant or incomprehensible questions, and asserted the same objections over and over.

32.    Despite having clearly requested a hearing, respondent declined at the hearing to offer any documents into evidence, and also declined to testify or to offer

testimony from any other witnesses. Respondent attempted only to call witnesses to whom he had not served subpoenas in accordance with the Administrative Procedure Act, and who could not in any event have offered relevant testimony.

33.     Respondent stated repeatedly throughout the hearing that he did not "understand" the proceedings. He did not mean by this phrase that he lacked comprehension. Rather, he meant that he did not acknowledge either the Board's or the administrative law judge's authority.

## Costs

34.     Since January 1, 2022, the Board has incurred $520 in costs for investigative services relating to this matter. Complainant's claim for reimbursement of these costs is supported by a declaration that complies with California Code of Regulations, title 1, section 1042, subdivision (b)(1). The costs are reasonable.

35.     Since January 1, 2022, the Board also has incurred $49,040 in costs for legal services provided to complainant by the California Department of Justice in this matter. Complainant's claim for reimbursement of these costs is supported by a declaration that complies with California Code of Regulations, title 1, section 1042, subdivision (b)(2). The costs are reasonable in light of the matters summarized in Findings 31 through 33.

# LEGAL CONCLUSIONS

1.     The Board may take disciplinary action against respondent only if clear and convincing evidence establishes cause for such action. The factual findings above rest on clear and convincing evidence.

11

## Unprofessional Conduct

2.      The Board may suspend or revoke respondent's physician's and surgeon's certificate if he has engaged in unprofessional conduct (Bus. & Prof. Code, §§ 2227, 2234.)

### VACCINE RECOMMENDATIONS AND EXEMPTIONS

3.      Unprofessional conduct includes medical practice reflecting gross negligence, repeated negligence, or incompetence. (Bus. & Prof. Code, § 2234, subds. (b), (c), (d).) The matters stated in Findings 4 through 20 constitute cause for discipline against respondent for gross negligence, repeated negligence, and incompetence.

### FAILURE TO PRODUCE MEDICAL RECORDS

4.      Unprofessional conduct also includes failing or refusing to comply with a court order directing a physician to produce medical records for a Board investigation. (Bus. & Prof. Code, §§ 2225.5, subd. (d), 2234, subd. (a).) The matters stated in Findings 21 through 30 constitute cause for discipline against respondent for such failure.

## Civil Monetary Penalties

5.      Business and Professions Code section 2225.5., subdivisions (a)(1) and (e), authorize the Board to impose a civil monetary penalty of $1,000 per day, up to a maximum of $10,000, for a physician's failure or refusal to provide records to the Board in response to a request that includes the patient's authorization to release the records. The matters stated in Findings 21 through 23, 25, and 30 constitute cause to impose the maximum penalty of $10,000 for respondent's failure to provide the requested records to the Board.

12

6.      Business and Professions Code section 2225.5., subdivisions (b)(1) and (e), also authorize the Board to impose a civil monetary penalty of $1,000 per day, up to a maximum of $10,000, for a physician's failure or refusal to provide records to the Board in response to a court order enforcing a subpoena for those records. The matters stated in Findings 24 through 30 constitute cause to impose the maximum penalty of $10,000 for respondent's failure to provide the requested records to the Board in response to the court order enforcing the subpoena.

## Costs

7.      A physician who has committed a violation of the laws governing medical practice in California may be required to pay the Board the reasonable costs of the investigation and enforcement of the case, but only as incurred on and after January 1, 2022. (Bus. & Prof. Code, § 125.3.) The matters stated in Findings 34 and 35 establish that these costs for this matter total $49,560.

8.      In *Zuckerman v. State Bd. of Chiropractic Examiners* (2002) 29 Cal.4th 32, the California Supreme Court set forth the standards by which a licensing board or bureau must exercise its discretion to reduce or eliminate cost awards to ensure that the board or bureau does not deter licensees with potentially meritorious claims from exercising their administrative hearing rights. The court held that a licensing board requesting reimbursement for costs relating to a hearing must consider the licensee's "subjective good faith belief" in the merits of his position and whether the licensee has raised a "colorable challenge" to the proposed discipline. (*Id.*, at p. 45.) The board also must consider whether the licensee will be "financially able to make later payments." (*Ibid.*) Last, the board may not assess full costs of investigation and enforcement when it has conducted a "disproportionately large investigation." (*Ibid.*)

13

9.      All these matters have been considered. They do not justify any reduction in respondent's obligation to reimburse the Board for its reasonable costs.

## Disciplinary Considerations

10.      The matters stated in Findings 4 through 20 establish that respondent did not base his medical recommendations for Patient 1 on any principle reflecting the community standard of care. He fails to understand, or has affirmatively rejected, scientific concepts regarding disease transmission, immunity, and public health. The Board cannot allow respondent to continue holding himself out to the community as a licensed medical professional.

11.      Moreover, the matters stated in Findings 21 through 33 confirm respondent's belief that the Board lacks authority to investigate or to control his medical practice. Even if respondent's unprofessional conduct arguably might warrant an order placing him on probation, these matters show that the Board could not reasonably expect respondent to comply with any probation conditions or monitoring.

12.      Finally, respondent argued that revocation of his certificate would be overly harsh, because even if his recommendations against vaccinating Patient 1 were unprofessional conduct they caused Patient 1 no actual harm. To the contrary, and as summarized in Findings 4 through 20, respondent not only delayed Patient 1's receipt of immunizations that would have protected Patient 1 and his community against common childhood diseases, but also contributed to conflict between Patient 1's parents. Respondent's failure to appreciate the profound harm he caused confirms that public safety requires the Board to revoke his medical license.

///

14

## ORDER

1.     Physician's and Surgeon's Certificate No. A 42397, held by respondent Douglas Vern Hulstedt, M.D., is revoked.

2.     Respondent shall pay a total civil monetary penalty of $20,000 to the Board: $10,000 under Business and Professions Code section 2225.5, subdivision (a)(1), and $10,000 under Business and Professions Code section 2225.5, subdivision (b)(1).

3.     Respondent shall pay the Board $49,560 to reimburse the Board for its reasonable costs to investigate and prosecute this matter.

DATE: **11/17/2022**

*Juliet E. Cox*

JULIET E. COX
Administrative Law Judge
Office of Administrative Hearings

15

**DECLARATION OF SERVICE BY CERTIFIED AND FIRST-CLASS MAIL**

**IN THE MATTER OF THE ACCUSATION AGAINST:**

Douglas Vern Hulstedt, M.D.   Case No. 800-2021-079497

I, the undersigned, declare that I am over 18 years of age and not a party to the within cause; my business address is 2005 Evergreen Street, Suite 1200, Sacramento, California 95815. I served a true copy of the attached:

**DECISION AND ORDER**

by mail on each of the following, by placing same in an envelope (or envelopes) addressed (respectively) as follows:

| NAME AND ADDRESS | CERTIFIED MAIL TRACKING NO. |
|---|---|
| Douglas Vern Hulstedt, M.D.<br>2511 Garden Rd # C100<br>Monterey, CA 93940-5333 | 7021 1970 0001 3930 1848<br>And First-Class Mail |
| Thomas Ostly<br>Deputy Attorney General<br>California Department of Justice<br>455 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102-7004 | **ELECTRONIC MAIL** |
| Juliet E. Cox<br>Administrative Law Judge<br>Office of Administrative Hearings | **E-File:**<br>OAHSecureEFile@dgs.ca.gov |

Each said envelope was then, on January 18, 2023, sealed and deposited in the United States mail at Sacramento, California, the county in which I am employed, either as certified mail or first-class U.S. mail with the postage thereon fully prepaid and return receipt requested for the certified mail.

Executed on January 18, 2023, at Sacramento, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Regina Rodriguez, Declarant

**Government Code Section 11521**

(a) The agency itself may order a reconsideration of all or part of the case on its own motion or on petition of any party. The agency shall notify a petitioner of the time limits for petitioning for reconsideration. The power to order a reconsideration shall expire 30 days after the delivery or mailing of a decision to a respondent, or on the date set by the agency itself as the effective date of the decision if that date occurs prior to the expiration of the 30-day period or at the termination of a stay of not to exceed 30 days which the agency may grant for the purpose of filing an application for reconsideration. If additional time is needed to evaluate a petition for reconsideration filed prior to the expiration of any of the applicable periods, an agency may grant a stay of that expiration for no more than 10 days, solely for the purpose of considering the petition. If no action is taken on a petition within the time allowed for ordering reconsideration, the petition shall be deemed denied.

(b) The case may be reconsidered by the agency itself on all the pertinent parts of the record and such additional evidence and argument as may be permitted, or may be assigned to an administrative law judge. A reconsideration assigned to an administrative law judge shall be subject to the procedure provided in Section 11517. If oral evidence is introduced before the agency itself, no agency member may vote unless he or she heard the evidence.

EXHIBIT 2

1   ROB BONTA
    Attorney General of California
2   MARY CAIN SIMON
    Supervising Deputy Attorney General
3   THOMAS OSTLY
    Deputy Attorney General
4   State Bar No. 209234
        455 Golden Gate Avenue, Suite 11000
5       San Francisco, CA  94102-7004
        Telephone:  (415) 510-3871
6       Facsimile:  (415) 703-5480
    *Attorneys for Complainant*

7

8                               **BEFORE THE**
                    **MEDICAL BOARD OF CALIFORNIA**
9               **DEPARTMENT OF CONSUMER AFFAIRS**
                        **STATE OF CALIFORNIA**
10

11

12  In the Matter of the Accusation Against:        Case No. 800-2021-079497

13  **Douglas Vern Hulstedt, M.D.**                 **A C C U S A T I O N**
    **2511 Garden Rd # C100**
14  **Monterey, CA 93940-5333**

15
    **Physician's and Surgeon's Certificate**
16  **No. A 42397,**

17                                     Respondent.

18

19                              **PARTIES**

20      1.    William Prasifka (Complainant) brings this Accusation solely in his official capacity

21  as the Executive Director of the Medical Board of California, Department of Consumer Affairs

22  (Board).

23      2.    On or about December 30, 1985, the Medical Board issued Physician's and Surgeon's

24  Certificate Number A 42397 to Douglas Vern Hulstedt, M.D. (Respondent).  The Physician's and

25  Surgeon's Certificate was in full force and effect at all times relevant to the charges brought

26  herein and will expire on December 31, 2023, unless renewed.

27

28

                                        1

1

## JURISDICTION

2    3.    This Accusation is brought before the Board, under the authority of the following

3    laws. All section references are to the Business and Professions Code (Code) unless otherwise

4    indicated.

5    4.    Section 2227 of the Code states:

6        (a) A licensee whose matter has been heard by an administrative law judge of
     the Medical Quality Hearing Panel as designated in Section 11371 of the Government
7    Code, or whose default has been entered, and who is found guilty, or who has entered
     into a stipulation for disciplinary action with the board, may, in accordance with the
8    provisions of this chapter:

9        (1) Have his or her license revoked upon order of the board.

10       (2) Have his or her right to practice suspended for a period not to exceed one
     year upon order of the board.
11
         (3) Be placed on probation and be required to pay the costs of probation
12   monitoring upon order of the board.

13       (4) Be publicly reprimanded by the board. The public reprimand may include a
     requirement that the licensee complete relevant educational courses approved by the
14   board.

15       (5) Have any other action taken in relation to discipline as part of an order of
     probation, as the board or an administrative law judge may deem proper.
16
         (b) Any matter heard pursuant to subdivision (a), except for warning letters,
17   medical review or advisory conferences, professional competency examinations,
     continuing education activities, and cost reimbursement associated therewith that are
18   agreed to with the board and successfully completed by the licensee, or other matters
     made confidential or privileged by existing law, is deemed public, and shall be made
19   available to the public by the board pursuant to Section 803.1.

20   5.    Section 2234 of the Code, states:

21       The board shall take action against any licensee who is charged with
     unprofessional conduct. In addition to other provisions of this article, unprofessional
22   conduct includes, but is not limited to, the following:

23       (a) Violating or attempting to violate, directly or indirectly, assisting in or
     abetting the violation of, or conspiring to violate any provision of this chapter.
24
         (b) Gross negligence.
25
         (c) Repeated negligent acts. To be repeated, there must be two or more
26   negligent acts or omissions. An initial negligent act or omission followed by a
     separate and distinct departure from the applicable standard of care shall constitute
27   repeated negligent acts.

28       (1) An initial negligent diagnosis followed by an act or omission medically

2

1    appropriate for that negligent diagnosis of the patient shall constitute a single
     negligent act.

2        (2) When the standard of care requires a change in the diagnosis, act, or
3    omission that constitutes the negligent act described in paragraph (1), including, but
     not limited to, a reevaluation of the diagnosis or a change in treatment, and the
4    licensee's conduct departs from the applicable standard of care, each departure
     constitutes a separate and distinct breach of the standard of care.

5        (d) Incompetence.

6        (e) The commission of any act involving dishonesty or corruption that is
7    substantially related to the qualifications, functions, or duties of a physician and
     surgeon.

8        (f) Any action or conduct that would have warranted the denial of a certificate.

9    6.    Section 2225.5 of the Code states:

10       (a) (1) A licensee who fails or refuses to comply with a request for the certified
11   medical records of a patient, that is accompanied by that patient's written
     authorization for release of records to the board, within 15 days of receiving the
12   request and authorization, shall pay to the board a civil penalty of one thousand
     dollars ($1,000) per day for each day that the documents have not been produced after
13   the 15th day, up to ten thousand dollars ($10,000), unless the licensee is unable to
     provide the documents within this time period for good cause.

14       . . . (b) (1) A licensee who fails or refuses to comply with a court order, issued
15   in the enforcement of a subpoena, mandating the release of records to the board shall
     pay to the board a civil penalty of one thousand dollars ($1,000) per day for each day
16   that the documents have not been produced after the date by which the court order
     requires the documents to be produced, up to ten thousand dollars ($10,000), unless it
17   is determined that the order is unlawful or invalid.  Any statute of limitations
     applicable to the filing of an accusation by the board shall be tolled during the period
18   the licensee is out of compliance with the court order and during any related appeals.

19       (2) Any licensee who fails or refuses to comply with a court order, issued in the
     enforcement of a subpoena, mandating the release of records to the board is guilty of
20   a misdemeanor punishable by a fine payable to the board not to exceed five thousand
     dollars ($5,000).  The fine shall be added to the licensee's renewal fee if it is not paid
21   by the next succeeding renewal date.  Any statute of limitations applicable to the
     filing of an accusation by the board shall be tolled during the period the licensee is
22   out of compliance with the court order and during any related appeals.

23       . . . (3)(c) Multiple acts by a licensee in violation of subdivision (b) shall be
     punishable by a fine not to exceed five thousand dollars ($5,000) or by imprisonment
24   in a county jail not exceeding six months, or by both that fine and imprisonment.
     Multiple acts by a health care facility in violation of subdivision (b) shall be
25   punishable by a fine not to exceed five thousand dollars ($5,000) and shall be
     reported to the State Department of Public Health and shall be considered as grounds
26   for disciplinary action with respect to licensure, including suspension or revocation of
     the license or certificate.

27       (d) A failure or refusal of a licensee to comply with a court order, issued in the
     enforcement of a subpoena, mandating the release of records to the board constitutes
28   unprofessional conduct and is grounds for suspension or revocation of his or her

3

license.

(e) Imposition of the civil penalties authorized by this section shall be in accordance with the Administrative Procedure Act (Chapter 5 (commencing with Section 11500) of Division 3 of Title 2 of the Government Code).

(f) For purposes of this section, certified medical records means a copy of the patient's medical records authenticated by the licensee or health care facility, as appropriate, on a form prescribed by the board.

(g) For purposes of this section, a "health care facility" means a clinic or health facility licensed or exempt from licensure pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code.

## COST RECOVERY

7.     Section 125.3 of the Code provides, in pertinent part, that the Board may request the administrative law judge to direct a licensee found to have committed a violation or violations of the licensing act to pay a sum not to exceed the reasonable costs of the investigation and enforcement of the case, with failure of the licensee to comply subjecting the license to not being renewed or reinstated.  If a case settles, recovery of investigation and enforcement costs may be included in a stipulated settlement.

## FACTUAL ALLEGATIONS

8.     At all relevant times, Respondent was a physician with a specialization in pediatrics.

9.     At all relevant times, the standard of care for physicians and pediatricians was to follow the guidance on vaccines and vaccine safety provided by the Centers for Disease Control and Prevention (CDC), through the Advisory Council on Immunization Practices (ACIP), and the American Academy of Pediatrics (AAP), as disseminated in the Red Book.

Patient 1[1]:

10.    Patient 1, a male child born on July 27, 2011, had been under the care of multiple pediatricians and had been administered some but not all of the vaccines recommended for the prevention of communicable childhood diseases. Patient 1's parents had divorced and were not in agreement regarding the administration of standard pediatric vaccines; Patient 1's father was opposed to the boy receiving any vaccines.

---

[1] Patients are referred to by number to protect privacy.

4

11.    Beginning on or about December 30, 2014, Patient 1's father brought him to Respondent's Monterey office for a well-child visit. Respondent's record of the encounter documented a normal examination. On August 19, 2015, Patient 1 and his father returned. At that time, Respondent recorded a one-line family history: "Mother Graves Disease." The examination was noted to be normal for all areas examined by Respondent. Nevertheless, Respondent issued an exemption from all vaccines which read: "Pt. family with autoimmune issues. 0 further vaccines recommended."

12.    In 2015, Patient 1's mother relocated to San Francisco and he came under the care of a pediatric office there. Records of examinations for 2015-2016 by those physicians confirmed that Patient 1 was a healthy male child with no medical condition that would contraindicate any specific vaccine. On May 22, 2017, Patient 1 and his mother presented for a discussion of vaccinations. At that visit, the mother stated that the child was "mostly vaccinated" and had no trouble with any of the vaccines administered. A modified schedule of vaccines, which was intended to allay the father's concerns, was discussed and the pediatrician reassured the mother that vaccines were safe for children.

13.    On May 23, 2017, Patient 1's father took him back to Respondent in Monterey. Respondent's note of the visit states that the child's father presented a family history that included celiac disease and psoriasis and advised that the child had food allergies, including dairy. At that time, Respondent provided an exemption from all vaccines based on "family autoimmune disease" and stated that the child should not receive any vaccines at all until he reached 21 years of age. The exemption also stated that school authorities were prohibited from disclosing the exemption to third parties.

14.    A family history of autoimmune disease is not a recognized contraindication to any specific vaccine per CDC ACIP and AAP guidelines. There is no component common to all childhood vaccines and a valid medical indication that would contraindicate all vaccines is medically improbable.

15.    Patient 1's San Francisco pediatrician encouraged the child's mother to bring the boy up to date on his vaccinations and advised her that the exemptions issued by Respondent did not

5

1    appear to be valid. In late 2020, after negotiations with the child's father failed, the mother

2    brought the matter to Family Court, seeking a court order that the child receive all recommended

3    vaccines.

4         16.    On October 22, 2020, Patient 1's father returned with him to Respondent's office to

5    discuss the vaccinations. At that time, Respondent advised that contrary to information from the

6    CDC "vaccines always have unavoidable risks."

7         17.    In September and November 2020, Patient 1's mother took him to Stanford for

8    allergy testing, including skin tests for any allergies to pediatric vaccines. On November 20,

9    2020, the Stanford physician reported that he had no allergies to any of the vaccines tested. On

10   December 2, 2020, the San Francisco pediatrician recommended that his parents bring Patient 1

11   up to date on required vaccinations and proposed a schedule for accomplishing this over the

12   months before the boy would begin his 2021 Fall semester.

13        18.    On January 5, 2021, Respondent provided a sworn statement that vaccinating the

14   child "would be dangerous, and that such an ill-informed step may cause lifelong and extreme

15   detriment to [him]." In support of his assertion, Respondent recited a history of "negative"

16   vaccine reactions which were not supported by the child's other medical records, a family history

17   of autoimmune disease and a history of common and medically irrelevant pediatric conditions and

18   allergies. Respondent's discussion was neither evidence-based nor consistent with sound medical

19   and scientific principles.

20        19.    On January 12, 2021, a Family Court judge agreed with the mother's position and

21   ordered that Patient 1 should be vaccinated as approved by his San Francisco pediatrician. On

22   January 13, 2021, Patient 1 was killed by his father, who also killed himself.

23        Respondent's Refusal to Provide Records:

24        20.    On October 4, 2021, Patient 1's mother provided a release for his medical

25   information to the Board's investigator and that release was sent to Respondent the same day.

26   Respondent failed and refused to comply with the parent's medical release and did not provide

27   the requested records.

28

6

21.    On November 18, 2021, Respondent was duly served with an investigation subpoena for the records of Patient 1. Respondent did not comply with the subpoena by the due date of December 20, 2021, as he was required to do.

22.    On April 4, 2022, a judge of the San Francisco Superior Court issued an order compelling Respondent to comply with the subpoena for Patient 1's records within 15 days. Respondent did not comply with the court order.

### FIRST CAUSE FOR DISCIPLINE
#### (Gross Negligence/Incompetence/Repeated Negligent Acts)

23.    Respondent Douglas Vern Hulstedt, M.D. is subject to disciplinary action under section 2234 and/or 2234(b) and/or 2234(c) and/or 2234(d) of the Code in that Respondent was grossly negligent and/or lacked basic medical knowledge and/or engaged in repeated negligent acts in providing vaccine exemptions for Patient 1. The circumstances are as follows:

24.    Paragraphs 8-19, inclusive are incorporated herein by reference.

### SECOND CAUSE FOR DISCIPLINE
#### (Failure to Comply with Medical Release)

25.    Respondent Douglas Vern Hulstedt, M.D. is subject to disciplinary action under section 2234 and/or 2234(e) and/or 2225.5 in that, as alleged in Paragraph 20 above, Respondent failed to comply with an authorization for release of medical records signed by Patient 1's mother.

26.    By reason of his violation of section 2225.5(a)(1), Respondent is subject to a civil penalty of up to ten thousand dollars ($10,000.00).

### THIRD CAUSE FOR DISCIPLINE
#### (Failure to Comply with Court Order)

27.    Respondent Douglas Vern Hulstedt, M.D. is subject to disciplinary action under section 2234 and/or 2234(e) and/or 2225.5 in that, as alleged in Paragraphs 21-22 above, Respondent failed to comply with a court order that he produce his records for Patient 1 to the Board.

7

28.   By reason of his failure to comply with a court order issued in the enforcement of a subpoena and mandating the release of the records to the Board, Respondent is in violation of section 2225.5(b)(1) and is subject to a civil penalty of up to ten thousand dollars ($10,000.00). Pursuant to section 2225.5(d), Respondent's license is subject to suspension or revocation.

**DISCIPLINARY CONSIDERATIONS**

29.   To determine the degree of discipline, if any, to be imposed on Respondent Douglas Vern Hulstedt, M.D., Complainant alleges that on or about April 25, 2016, in a prior disciplinary action titled In the Matter of the Accusation Against Douglas Vern Hulstedt, M.D. before the Medical Board of California, in Case Number 800-2014-007854, Respondent's license was placed on probation for aiding and abetting the unlicensed practice of medicine.  That decision is now final and is incorporated by reference as if fully set forth herein.

**PRAYER**

WHEREFORE, Complainant requests that a hearing be held on the matters herein alleged, and that following the hearing, the Medical Board of California issue a decision:

1.   Revoking or suspending Physician's and Surgeon's Certificate Number A 42397, issued to Douglas Vern Hulstedt, M.D.;

2.   Revoking, suspending or denying approval of Douglas Vern Hulstedt, M.D.'s authority to supervise physician assistants and advanced practice nurses;

3.   Ordering Douglas Vern Hulstedt, M.D., to pay the Board the costs of the investigation, including subpoena enforcement, and prosecution of this case, and if placed on probation, the costs of probation monitoring;

4.   Ordering Respondent Douglas Vern Hulstedt, M.D., to pay all fines and penalties for failure to comply with an authorization for release of medical records and failure to comply with a court order to provide subpoenaed records.

8

1    5.    Taking such other and further action as deemed necessary and proper.

2

3    DATED: ___JUL 2 7 2022___

4                                              WILLIAM PRASIFKA
                                               Executive Director
5                                              Medical Board of California
                                               Department of Consumer Affairs
6                                              State of California
                                               *Complainant*

7

8    SF2022400748
     43322890.docx
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                      9

# EXHIBIT 3

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Rob Bonta, Attorney General, Lawrence Mercer, Deputy Attorney General (SBN 111898) 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102 | |

TELEPHONE NO.: (415) 510-3488     FAX NO. *(Optional):* (415) 703-5480
E-MAIL ADDRESS: larry.mercer@doj.ca.gov
ATTORNEY FOR *(Name):* Petitioner and Real Party in Interest

ELECTRONICALLY
**FILED**
*Superior Court of California,*
*County of San Francisco*

**01/14/2022**
**Clerk of the Court**
**BY: JACKIE LAPREVOTTE**
**Deputy Clerk**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME:
KIMBERLY KIRCHMEYER v. DOUGLAS VERN HULSTEDT, M.D.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: **CPF-22-517660** |
|---|---|---|---|---|
| [x] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter | [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: HON. ETHAN P. SCHULMAN DEPT.: 302 |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[x] Other petition *(not specified above)* (43)

2. This case [ ] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [ ] monetary   b. [x] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action *(specify):*
5. This case [ ] is   [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: 1/14/2022

Lawrence Mercer, Deputy Attorney General
_____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. September 1, 2021]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

1
2
3
4
5
6
7

Rob Bonta
Attorney General of California
Jane Zack Simon
Supervising Deputy Attorney General
Lawrence Mercer
Deputy Attorney General
State Bar No. 111898
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 510-3488
 Fax:  (415) 703-5480
 E-mail:  Larry.mercer@doj.ca.gov
*Attorneys for Petitioner and*
*Real Party in Interest*

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**01/14/2022**
**Clerk of the Court**
BY: JACKIE LAPREVOTTE
Deputy Clerk

8

9

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO            **CPF-22-517660**

10

11

12

13

14

15

16

17

18

19

20

21

22

**KIMBERLY KIRCHMEYER, DIRECTOR OF THE DEPARTMENT OF CONSUMER AFFAIRS, STATE OF CALIFORNIA,**

Petitioner,

**v.**

**DOUGLAS VERN HULSTEDT, M.D.,**

Respondent,

**WILLIAM PRASIFKA, EXECUTIVE DIRECTOR, MEDICAL BOARD OF CALIFORNIA,**

Real Party in Interest.

Case No.

**PETITION FOR ORDER TO SHOW CAUSE AND ORDER COMPELLING COMPLIANCE WITH INVESTIGATIONAL SUBPOENA (Government Code §§ 11180-11188)**

Date:
Time:
Dept: 302
Judge: Hon. Ethan P. Schulman
Trial Date:
Action Filed:

23

24

25

26

27

28

Petitioner Kimberly Kirchmeyer, Director of the Department of Consumer Affairs, State of California, by her attorneys Rob Bonta, Attorney General of the State of California, and Lawrence Mercer, Deputy Attorney General, alleges as follows:

1.    Petitioner Kimberly Kirchmeyer (Petitioner) is the duly appointed Director of the Department of Consumer Affairs. She brings this action solely in her official capacity as Director.

1

2.      The Department of Consumer Affairs of the State of California is a department within the meaning of Government Code §§ 11180 *et seq.* Under Government Code §§ 11181 and 11182, the Director of the DCA is the head of the Department and has the authority to conduct investigations, issue subpoenas, and take testimony in connection with matters within the jurisdiction of the Department. The Director also has the power to delegate such authority.

3.      Real Party in Interest William Prasifka is the Executive Director of the Medical Board of California (Medical Board or Board) which is a duly constituted government agency within the DCA. The Medical Board is charged with the enforcement of the Medical Practice Act (Business and Professions Code §§ 2000 *et seq.*) and with investigating complaints from consumers, from other licensees, from healthcare facilities, or from the Board itself, that a physician may be guilty of unprofessional conduct. (Business and Professions Code § 2220(a).) This proceeding directly affects the interests of the Medical Board because the petition seeks to enforce compliance with an investigational subpoena issued during an ongoing Medical Board investigation of possible violations of the Medical Practice Act by its licensee Douglas V. Hulstedt, M.D. (Respondent).

4.      The Director of the DCA has delegated to officers of the Medical Board, which is an agency within the DCA, the authority to issue subpoenas under Government Code § 11182.

5.      Douglas Vern Hulstedt, M.D. holds a Physician's and Surgeon's Certificate issued by the Medical Board, which permits him to engage in the practice of medicine and to issue exemptions from mandatory vaccinations to qualifying patients.

6.      By way of this petition, the Medical Board requests an order compelling Dr. Hulstedt to comply with investigational subpoenas for the medical records of a school-aged child for whom he provided vaccination exemptions in 2015 and 2017. As set forth in the Declaration of Special Investigator Chris Jensen, filed herewith, Dr. Hulstedt was personally served with the investigational subpoena, but has objected to the production of the subpoenaed records and refused to produce them. As set forth in Mr. Jensen's declaration and the Declaration of James Nuovo, M.D., the records sought are relevant and necessary to the investigation of vaccination exemptions issued by Douglas V. Hulstedt, M.D.

2

7.     On July 8, 2021, the Board received a complaint from the parent of a child (Patient 1) who had received a vaccine exemption from Dr. Hulstedt. The complaining witness is the mother of Patient 1, who had received a vaccine exemption from Dr. Hulstedt in 2015 and 2017 (at four and six years of age). Dr. Hulstedt's office is located in Monterey, which was a two-hour drive from the family's home in San Francisco, and she advised that her husband sought out Dr. Hulstedt based upon his opposition to vaccinations. Thereafter, she and her husband divorced and she sought a court order from the Family Court so that her son could catch up on his required school vaccinations. The parental dispute continued into 2021. In that dispute, Dr. Hulstedt served as a witness for the father and provided medical opinions in support of the father's opposition to Patient 1 receiving any vaccinations. The mother reported that Dr. Hulstedt's opinions were not based on Patient 1's medical history or condition and were contrary to the advice given by the child's pediatrician. She advised the Board that she ultimately prevailed in obtaining a court order for the child to be vaccinated, but tragically, the father murdered his son and killed himself before this could be carried out. She attributes her husband's state of mind, in part, to misinformation about vaccines and vaccine safety that Dr. Hulstedt provided.

8.     The complaining witness provided a copy of the vaccine exemptions written for Patient 1 by Dr. Hulstedt, as well as a declaration Respondent provided in the Family Court action. The exemptions and declaration stated that based on the child's family history of autoimmune disease and alleged adverse reactions to previous vaccines, he should not receive any vaccines. She also provided a release for medical information for all of Dr. Hulstedt's records pertaining to Patient 1. (Attachment A to Declaration of Special Investigator Chris Jensen, filed herewith.)

9.     Respondent did not produce his records after he received the medical release. Instead, he sent a rambling and incoherent letter asserting various rights under the Constitution, the Nuremberg principles and sundry cases and authorities; in sum, Respondent refused to comply with the medical release. (Attachment B to Declaration of Special Investigator Chris Jensen, filed herewith.)

1       10.    Special Investigator Chris Jensen obtained records from the Patient 1's other

2    physicians, which corroborated the mother's complaint. Specifically, the child's pediatricians

3    documented that while he likely had mild food and environmental allergies, he was healthy and

4    had no medical contraindication to any vaccine. Moreover, the child was skin-tested with multiple

5    vaccines in November 2021 and had no adverse or allergic reaction to any of them.

6       11.    On November 18, 2021, Respondent was personally served with an investigational

7    subpoena, which required him to produce records for Patient 1 by December 20, 2021.

8    (Attachment C to Declaration of Special Investigator Chris Jensen, filed herewith.)

9       12.    Respondent did not produce the subpoenaed records and he continues to refuse to do

10    provide them.

11       13.    James Nuovo, M.D., a Board medical consultant and a physician board-certified in

12    Family Medicine, reviewed materials gathered in the investigation. As stated in Dr. Nuovo's

13    declaration, he is familiar with the standard of care for pediatric immunization practices, which

14    are based on guidelines issued by the Centers for Disease Control and Prevention (CDC), through

15    the Advisory Committee on Immunization Practices (ACIP), and the American Academy of

16    Pediatrics (AAP). Based on Dr. Nuovo's review, Respondent's exemptions for Patient 1 do not

17    appear to follow ACIP and AAP guidelines, but are based on an alleged family history of

18    autoimmune disease, which is not a recognized contraindication or precaution for any vaccine.

19    Additionally, Patient 1's medical records from his other physicians do not support Respondent's

20    statements that the child had adverse reactions to previous vaccines; instead, the records show

21    Patient 1 to have been a healthy child specifically tested for allergic vaccine reactions and found

22    to have none. Dr. Nuovo concluded that Respondent's reliance on irrelevant family medical

23    history and unsupported claims of adverse reactions to previous vaccines strongly suggest that his

24    exemptions are not medically sound and that he is practicing medicine below the standard of care.

25    Consequently, it is necessary to the Board's investigation that Respondent be ordered to comply

26    with the investigational subpoena for Patient 1's medical records.

27       14.    Pursuant to Government Code § 11186, venue lies in the County of San Francisco,

28    where the investigation into Respondent's medical practice was directed by the Office of the

1    Attorney General. Pursuant to § 11188 this Court has the authority to issue an Order to Show

2    Cause requiring Douglas Hulstedt, M.D. to show why he should not be ordered to comply with

3    the investigational subpoena served upon him.

4        15.    Wherefore, pursuant to Government Code §§ 11186-88, Petitioner respectfully

5    requests that this Court issue an order requiring Douglas Hulstedt, M.D. to appear before this

6    Court and to show cause why he has failed to comply with the investigational subpoena. Upon

7    failure to show good cause, Petitioner requests that this Court enter an order requiring him to

8    produce the subpoenaed records within 15 days of the Court's order.

9    Dated: January 14, 2022           Respectfully submitted,

10

11                                 ROB BONTA
                                 Attorney General of California

12                                 JANE ZACK SIMON
                                Supervising Deputy Attorney General

13

14

15                                 LAWRENCE MERCER
                                Deputy Attorney General

16                                 *Attorneys for Petitioner and*
                                *Real Party in Interest*

17

18    SF2021401491
    43002765.docx

19

20

21

22

23

24

25

26

27

28

1  ROB BONTA
   Attorney General of California
2  JANE ZACK SIMON
   Supervising Deputy Attorney General
3  LAWRENCE MERCER
   Deputy Attorney General
4  State Bar No. 111898
     455 Golden Gate Avenue, Suite 11000
5    San Francisco, CA  94102-7004
     Telephone:  (415) 510-3488
6    Fax:  (415) 703-5480
     E-mail:  Larry.mercer@doj.ca.gov
7  *Attorneys for Petitioner and*
   *Real Party in Interest*

ELECTRONICALLY
**F I L E D**
*Superior Court of California,
County of San Francisco*

**01/14/2022**
**Clerk of the Court**
BY: JACKIE LAPREVOTTE
Deputy Clerk

8
                SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
                        COUNTY OF SAN FRANCISCO
10                                                          **CPF-22-517660**

11

12  **KIMBERLY KIRCHMEYER, DIRECTOR**        Case No.
    **OF THE DEPARTMENT OF CONSUMER**
13  **AFFAIRS, STATE OF CALIFORNIA,**        **MEMORANDUM OF POINTS AND**
                                             **AUTHORITIES IN SUPPORT OF**
14                              Petitioner,  **PETITION FOR ORDER TO SHOW**
                                             **CAUSE AND FOR ORDER**
15           v.                              **COMPELLING COMPLIANCE WITH**
                                             **INVESTIGATIONAL SUBPOENAS**
16
    **DOUGLAS VERN HULSTEDT, M.D.,**         Date:
17                                           Time:
                                Respondent,  Dept: 302
18                                           Judge: Hon. Ethan P. Schulman
                                             Trial Date:
19  **WILLIAM PRASIFKA, EXECUTIVE**          Action Filed:
    **DIRECTOR, MEDICAL BOARD OF**
20  **CALIFORNIA,**

21

22                          Real Party in Interest.

23

24                            <u>INTRODUCTION</u>

25          The petition to compel compliance with an investigational subpoena presents the

26  straightforward circumstance where a physician hopes to stymie an investigation of his medical

27  practice by the Medical Board of California (Board) by refusing to comply with an investigational

28  subpoena. The deceased patient's parent filed the complaint against physician Douglas V.

                                        1

1   Hulstedt (Respondent) with the Board and she has provided the Board with a release for all

2   medical information relating to her son. When Respondent refused to provide the records, the

3   Board properly served him with an investigational subpoena. Respondent sent the Board's

4   investigator bizarre and incoherent letters, but refused to produce the records. Respondent is

5   motivated solely by his self-interest and his opposition to the investigation is not based on any

6   cognizable legal right or argument. As demonstrated by the declarations, the Board has good

7   cause to investigate Respondent's care of the deceased patient and the information sought is

8   necessary to that investigation. An order compelling Dr. Hulstedt to comply with the subpoena

9   should issue to enable the Board to move forward.

10                               STATEMENT OF FACTS

11       On July 8, 2021, the Board received a complaint from the parent of a child (Patient 1) who

12   had received a vaccine exemption from Dr. Hulstedt. The complaining witness is the mother of

13   Patient 1, who had received a vaccine exemption from Dr. Hulstedt in 2015 and 2017 (at four and

14   six years of age). Dr. Hulstedt's office is located in Monterey, which was a two-hour drive from

15   the family's home in San Francisco, and she advised that her husband sought out Dr. Hulstedt

16   based upon that physician's opposition to vaccines. Thereafter, she and her husband divorced and

17   she sought a court order so that her son could catch up on his required school vaccinations. The

18   parental dispute continued into 2021. In that dispute, Dr. Hulstedt served as a witness for the

19   father and provided medical opinions in support of the father's opposition to Patient 1 receiving

20   vaccinations. The mother reported that Dr. Hulstedt's opinions were not based on Patient 1's

21   medical history or condition and were contrary to the advice given by the child's pediatrician. She

22   advised the Board that she ultimately prevailed in obtaining a court order for the child to be

23   vaccinated, but tragically, the father murdered his son and killed himself before this could be

24   carried out. She attributes her husband's state of mind, in part, to misinformation about vaccines

25   and vaccine safety that Dr. Hulstedt provided.

26       The complaining witness provided a copy of the 2015 vaccine exemption written for Patient

27   1 by Dr. Hulstedt, as well as a declaration Respondent provided on January 5, 2021, in the Family

28   Court action. The exemption and declaration stated that based on the child's family history of

2

1    autoimmune disease and alleged adverse reactions to previous vaccines, he should not receive any

2    vaccines until he became an adult. She also provided a release for medical information for all of

3    Dr. Hulstedt's records pertaining to Patient 1.

4        On October 4, 2021, the Board's investigator provided Respondent with the release for

5    medical information signed by the child's mother. Respondent did not produce his records after

6    he received the medical release. Instead, he sent a rambling and incoherent letter asserting various

7    rights under the Constitution, the Nuremberg principles and sundry cases and authorities; in sum,

8    Respondent refused to comply with the medical release.

9        On November 18, 2021, Respondent was personally served with an investigational

10   subpoena at his office in Monterey, California. Respondent did not provide the records, but sent a

11   second letter demanding that the investigator provide a response "by affidavit" to his earlier

12   correspondence.

13       In December 2021, the Board's investigator requested that James Nuovo, M.D., the Chief

14   Medical Consultant to the Board, review the investigation. On January 8, 2022, Dr. Nuovo

15   provided a declaration, filed herewith, noting that Respondent's 2015 and 2017 vaccine

16   exemptions for the child were based on a family history of autoimmune disease, which basis did

17   not comport with the generally accepted guidelines for immunizations and immunization

18   practices. Dr. Nuovo also noted that Respondent's exemptions were not supported by the

19   pediatric records maintained by the child's treating physicians and were in fact contradicted by

20   information in those records. These and other factors, including negative vaccine allergen tests,

21   caused Dr. Nuovo to conclude that evidence strongly suggests Respondent is not adhering to the

22   medical standard of care in his practice and that the records should be obtained and reviewed to

23   determine whether disciplinary action is warranted for the protection of the public.

24                          **LEGAL ARGUMENT**

25   **A.    The DCA and the Medical Board Have the Authority to Conduct this
           Investigation**

26

27       The Medical Board is the state agency within the DCA charged with reviewing the quality

28   of medical practice carried out by physicians and surgeons, the enforcement of the disciplinary

                                        3

1   and criminal provisions of the Medical Practice Act, and the administration and hearing of

2   disciplinary actions against physicians and surgeons. (Bus. & Prof. Code, § 2004.) In order to

3   fulfill its function, the Board has been given broad powers to investigate "complaints from the

4   public, from other licensees, from health care facilities, or from a division of the board that a

5   physician and surgeon may be guilty of unprofessional conduct." (*Id*. at § 2220, subd. (a); *Arnett*

6   *v. Dal Cielo* (1996) 14 Cal.4th 4, 7-8.) Under Business and Professions Code sections 2220 and

7   2224, the Board delegates its authority to conduct investigations and inspections to the executive

8   director of the Board and other personnel, including Board investigators.

9   The California Supreme Court has described the Board's broad investigative powers:

10       The Board's investigators have the status of peace officers [citation omitted], and

11       possess a wide range of investigative powers. In addition to interviewing and taking
statements from witnesses, the Board's investigators are authorized to exercise

12       delegated powers (Gov. Code, § 11182) to 'Inspect books and records' and to 'Issue
subpoenas for the attendance of witnesses and the production of papers, books,

13       accounts, documents and testimony in any inquiry [or] investigation . . . in any part of
the state.' (Citation omitted.)

14       (*Arnett, supra*, at p. 8.)

15       The *Arnett* Court further explained that no actual case or controversy is necessary to enable

16   the Board to investigate and that the Board "can investigate 'merely on suspicion that the law is

17   being violated, or even just because it wants assurance that it is not.'" (*Arnett v. Dal Cielo, supra*,

18   14 Cal.4th at p. 8, citing *Brovelli v. Superior Court* (1961) 56 Cal.2d 524, 528, and *United States*

19   *v. Morton Salt. Co.* (1950) 338 U.S. 632, 642-43.)

20       The Board's investigation of whether Respondent's advice against and exemptions from

21   required vaccines are in violation of the standard of care and the Medical Practice Act is well

22   within the ambit of the Medical Board's authority. In this case, the deceased patient's mother has

23   complained that Respondent improperly exempted her child from required vaccinations despite

24   the fact that the child was healthy and had no contraindication for any vaccine. An order

25   compelling Respondent to provide his records for Patient 1 is necessary in order for the Board to

26   carry out the its mandate to protect the public, (Business and Professions Code § 2229)

27

28

**B.     Good Cause Supports the Investigation into the Vaccine Exemptions**

While the Legislature has revised the statutes relating to medical exemptions from required vaccines on two occasions during the 2015-2021 period that Respondent provided his medical recommendations that Patient 1 should not be vaccinated, the purpose of the law is and has always been to limit such exemptions to bona fide medical conditions while applying generally accepted medical standards. In Health and Safety Code §120325, subsection (a), the Legislature declared that its intent was "the eventual achievement of total immunization of appropriate age groups" against 10 communicable childhood diseases. In order to reach that goal, the Legislature eliminated the personal beliefs exemption from requirement that children receive vaccines for specified infectious diseases before being admitted to any public or private elementary or secondary school. The elimination of the personal beliefs exemption and robust government policy of compulsory vaccination has been upheld by the courts. (See *Brown v. Smith* (2018) 24 Cal.App.5th 1135, and *Whitlow v. California* (2016) 203 F.Supp.3d 1079 [State has a compelling interest in fighting spread of contagious diseases through mandatory vaccination of school-aged children].) In Health and Safety Code §120372(3)(A)-(C) (effective January 1, 2020), the Legislature directed that the California Department of Public Health "shall identify those medical exemption forms that do not meet applicable CDC, ACIP, or AAP criteria for medical exemptions" and that non-compliant exemptions be subject to revocation by the Department.

As stated in the declaration of James Nuovo, M.D., the standard of care for immunization practices was, and now is, to follow the guidelines set forth by the Centers for Disease Control and Prevention (CDC), through the Advisory Committee on Immunization Practices (ACIP), and the American Academy of Pediatrics (AAP). Dr. Nuovo has concluded that Respondent's 2015 and 2017 exemptions, which are based on a family history of autoimmune disorders, do not comport with those guidelines. Dr. Nuovo also points out that Respondent's reliance on alleged adverse reactions after previous vaccinations are unsupported by the child's records, which show that he was skin-tested for reactions to multiple vaccines and had no reaction to any of them. Based upon his review, Dr. Nuovo concludes that there are ample grounds to believe that Respondent is not practicing medicine within the standard of care. Consequently, the Board

MEMORANDUM OF POINTS AND AUTHORITIES

1  should be permitted to exercise its function to protect the public and to investigate the vaccine

2  exemptions issued by Respondent.

3      **C.    This Court has the Authority to Compel Compliance with the Subpoenas**

4          Under California Government Code sections 11186-11188, a petition to the superior court

5  is the sole mechanism to compel compliance with investigational subpoenas issued under

6  Government Code section 11180 *et seq.*  Government Code section 11186 provides that the

7  superior court in the county in which the investigation is conducted or where the documents are

8  designated for production shall have jurisdiction to compel compliance with an investigational

9  subpoena.   Venue is appropriate in the County of San Francisco by reason of the fact that the

10  investigation is being directed and jointly conducted from the Office of the Attorney General in

11  San Francisco. (*Whitney v. Montegut* (2014) 222 Cal.App.4th 906, 913-914)

12          Government Code section 11187 provides that the head of the department issuing the

13  subpoena is the proper party to bring a petition to the superior court for an order compelling the

14  witness to produce the records sought by the subpoena.  The petition must set forth that: (a) due

15  notice of the time and place of the production of papers has been given; (b) the person has been

16  subpoenaed in the manner prescribed in Government Code section 11180 *et seq.*, and (c) the

17  person has failed and refused to produce the papers requested by the subpoena.

18          The court's issuance of an Order to Show Cause is mandatory once a proper petition is

19  filed.  Government Code section 11188 provides that, on the filing of the petition to compel, "the

20  court ***shall*** enter an order directing the person to appear before the court at a specified time and

21  place and then and there to show cause 'why he or she has not attended, testified, answered

22  interrogatories, or produced or permitted the inspection or copying of the papers or other items . .

23  . as required.'"  (Emphasis added.)  Section 11188 further provides for enforcement of the

24  subpoena.  In this respect, the California Supreme Court in *Arnett v. Dal Cielo* described the

25  court's role as follows:

26          If it appears to the court that the subpoena was regularly issued . . . the court shall
27          enter an order that the person appear before the officer named in the subpoena at the

28

MEMORANDUM OF POINTS AND AUTHORITIES

time and place fixed in the order and testify or produce the required papers.  Upon failure to obey the order, the person shall be dealt with as for contempt of court.

(*Arnett v. Dal Cielo*, *supra*, 14 Cal.4th at p. 8.)

In a hearing under Government Code section 11188, the court is limited to determining whether the subpoena conforms to legal and constitutional standards.  (*People ex rel. Franchise Tax Bd. v. Superior Court* (1985) 164 Cal.App.3d 526, 539; *Fielder v. Berkeley Properties Co.* (1972) 23 Cal.App.3d 30, 39.)   With regard to the legal standards, the only inquiry the court must make is whether the subpoena was "regularly issued."  (*Ibid*.)  The courts have held that the term "regularly issued," as in Government Code section 11188, means "in accordance with the provisions of sections 11180, 11181, 11182, 11184, and 11185 of the Government Code providing for the matters which may be investigated, the acts authorized in connection with investigations, and the service of process."  (*Fielder, supra*, at p. 39; *see also People ex. rel. Franchise Tax Bd., supra*, at p. 539.)

Here there is no question that the Medical Board's investigational subpoenas were regularly and properly issued and served. Respondent was personally served with the subpoena, which provided clear notice of the time and place for production of his records for the patient. The patient's mother was not only notified that the Board sought the child's records, but she also provided a written release for the records. Dr. Hulstedt has failed and refused to provide the records.

## CONCLUSION

The Medical Board is charged with the investigation and enforcement of the laws pertaining to physicians and prescribing.  The investigation of Dr. Hulstedt's vaccination exemptions falls directly within the Board's mandate.  To fulfill its public duty, the Board has followed all of the procedural steps required by law.  The subpoena at issue is reasonably tailored to seek only the records that are necessary and material to the Board's investigation, i.e., those records that will demonstrate whether or not Respondent's issuance of the exemptions comported with the standard of care.  The declaration of Dr. James Nuovo sets forth facts sufficient to permit the Court to make an independent assessment that good cause exists.

1       Wherefore, Petitioner respectfully requests that this Court order Respondent to appear and

2 to show cause why he should not be ordered to produce the subpoenaed records. Upon his failure

3 to show good cause, Petitioner requests that he be ordered to produce the records on a date not

4 later than 15 days of the Court's order granting the petition.

5 Dated: January ___, 2022                     Respectfully submitted,

6                                      ROB BONTA

7                                      Attorney General of California
                                     JANE ZACK SIMON

8                                      Supervising Deputy Attorney General

9

10

11                                      LAWRENCE MERCER
                                     Deputy Attorney General

12                                      *Attorneys for Petitioner and*
                                     *Real Party in Interest*

13 SF2021306344
   43034591.docx

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES

1  ROB BONTA
   Attorney General of California
2  JANE ZACK SIMON
   Supervising Deputy Attorney General
3  LAWRENCE MERCER
   Deputy Attorney General
4  State Bar No. 111898
    455 Golden Gate Avenue, Suite 11000
5   San Francisco, CA  94102-7004
    Telephone:  (415) 510-3488
6   Fax:  (415) 703-5480
    E-mail:  Larry.mercer@doj.ca.gov
7  *Attorneys for Petitioner and
   Real Party in Interest*

ELECTRONICALLY

**F I L E D**

*Superior Court of California,
County of San Francisco*

**01/14/2022**
**Clerk of the Court**
BY: JACKIE LAPREVOTTE
Deputy Clerk

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

10                       COUNTY OF SAN FRANCISCO          **CPF-22-517660**

11

12  **KIMBERLY KIRCHMEYER, DIRECTOR**          Case No.
    **OF THE DEPARTMENT OF CONSUMER**
13  **AFFAIRS, STATE OF CALIFORNIA,**          **DECLARATION OF JAMES NUOVO,**
                                                **M.D.**
14                               Petitioner,
                                                Date:
15           v.                                 Time:
                                                Dept:
16                                              Judge:
    **DOUGLAS VERN HULSTEDT, M.D.,**            Trial Date:
17                                              Action Filed:
                                 Respondent,
18

19
    **WILLIAM PRASIFKA, EXECUTIVE**
20  **DIRECTOR, MEDICAL BOARD OF**
    **CALIFORNIA,**
21
                        Real Party in Interest.
22

23           I, JAMES NUOVO, M.D., declare under penalty of perjury that the following matters are

24  true:

25           1.      I am a licensed California physician with a specialization in Family Medicine.  I

26  received my medical degree from the University of Vermont College of Medicine in 1980.  I did

27  an internship and residency in family medicine at Madigan Army Medical Center (1980-1983).  I

28

                                                    1

am board certified in family medicine by the American Board of Family Medicine.  I hold the position as Professor Emeritus at the University of California, Davis, Department of Family & Community Medicine. I currently hold the position of Chief Medical Consultant with the Medical Board of California. A true and correct copy of my Curriculum Vitae is attached to this declaration as Attachment A.

2.     Based on my education, training and experience, I am aware that California law requires vaccination of school-age children before they enroll in a grade span, i.e., birth to preschool, kindergarten to grade six and grades seven through twelve.

3.     Based upon my education, training and experience, I am familiar with the standard of care for pediatric immunization practices.  The standard of care for a primary care provider and consultant is to follow national standards for pediatric vaccination practices and immunization recommendations from the Centers for Disease Control (CDC), issued through the Advisory Committee on Immunization Practices, and the American Academy of Pediatrics (AAP).  While there are acknowledged precautions and, in some cases contraindications, to vaccination, these are not common.  It is important, however, to note that there is no precaution or contraindication that would apply to all vaccines, permanently.

4.     The risk to the public health posed by unvaccinated children is several-fold.  The unvaccinated child is at risk for vaccine-preventable diseases.  As examples, pertussis can be severe in small children, and measles can cause complications, including pneumonia, dehydration and encephalitis.  To compound the problem, the unvaccinated child can pass vaccine-preventable diseases to children below vaccination age and to other unvaccinated children and adults.  This is also a public cost.  Each case of measles can cost public health departments thousands of dollars to evaluate and respond.

5.     Improper exemptions have serious ramifications for the public and can harm its most vulnerable members by diminishing "herd immunity."

6.     By reason of my professional activities, I am aware that SB 277, which amended Health and Safety Code section 120325, changed immunization requirements for children entering childcare or school in California as of January 1, 2016, by eliminating personal beliefs

2

1  exemptions for vaccines required for schools or child-care facilities.  I am also aware that, since

2  then, medical exemptions increased for children attending kindergarten from 0.2% in 2015-2016

3  to 0.5% in 2016-2017 and to 0.7% in 2017-2018.  Medical exemptions increased for children

4  attending 7th grade from 0.1% in 2015-2016 to 0.4% in 2016-2017 and 2017-2018.

5       7.    I was asked by Special Investigator, Christopher Jensen, to be an expert medical

6  consultant to Real Party in Interest, the Medical Board of California, for the purpose of reviewing

7  a vaccination exemption issued by Douglas Vern Hulstedt, M.D. ("Respondent") to the child

8  referred to in the petition as Patient 1 (DOB 07/27/2011).

9       8.    I reviewed the complaint received by the Board from the biologic mother ("Mother")

10  of Patient 1.  The complaint alleges that Dr. Hulstedt issued a permanent vaccine exemption due

11  to an alleged family history of autoimmune conditions.  Mother indicated that Patient 1 had a

12  prior primary care physician who had cared for the child for "over 6 years," indicated that he was

13  healthy and that he could receive vaccinations.  Further, Mother reported that the child had been

14  tested specifically for vaccination concerns at UCSF and there were no contraindications.

15       9.    Patient 1's pediatric records were obtained and reviewed and confirm Mother's

16  statements. Vaccines for Hepatitis B, MMR (Measles, Mumps, Rubella), Varicella, DTaP

17  (Diphtheria, Tetanus and acellular Pertussis) and Influenza were all skin-tested on November 20,

18  2020, and the child had no allergic reaction to any of them. Significantly, Patient 1's

19  pediatricians, Dr. Getzelman and Dr. Glynn, consistently reported that the child was healthy, had

20  no contraindications to any vaccine and that the vaccine exemption letters issued by Dr. Hulstedt

21  did not appear to them to be medically valid.

22       10.   A copy of the exemption letters issued by Respondent on  August 19, 2015 and May

23  23, 2017, were also obtained and reviewed and document that Respondent issued an exemption

24  from all vaccines permanently based on a history of autoimmune disease and alleged allergic

25  reactions. As stated above, the standard of care is to adhere to CDC and AAP guidelines on

26  immunization practices and vaccine safety. A permanent exemption to all vaccines based on a

27  family history of autoimmune disease is not consistent with those guidelines. Patient 1's pediatric

28  records do not support the assertion of an adverse reaction after any vaccination. These factual

1   conclusions strongly suggest that Respondent is not practicing medicine within the standard of

2   care.

3      11.   The Board has sought certified medical records, pursuant to a release from the child's

4   mother as well as a subpoena, to assess the indications for a permanent vaccine exemption;

5   however, Dr. Hulstedt has refused to comply.

6      12.   In order to perform further assessment of the indications for a medical vaccine

7   exemption issued by Dr. Hulstedt to Patient 1 and to determine whether Respondent is practicing

8   medicine within the standard of care, certified medical records from Dr. Hulstedt are relevant and

9   necessary.

10

11      Executed under penalty of perjury at Sacramento, California on January 8, 2022

12

13

14

15                                    JAMES NUOVO, M.D.

16   SF2021401491
17   43005896.docx

18

19

20

21

22

23

24

25

26

27

28

4

# CURRICULUM VITAE

## Jim Nuovo, M.D.

**Personal Information:**

**Work Address:**      Chief Medical Consultant
                       Medical Board of California/Enforcement
                       2005 Evergreen Street; Suite 1200
                       Sacramento, CA  95815-5401

**Phone:**             (916) 274-5983

**Email:**             James.Nuovo@mbc.ca.gov

**Education:**

| | |
|---|---|
| 1972-1975: | University of Vermont, BA, Summa Cum Laude |
| 1976-1980: | University of Vermont, College of Medicine |
| 1980-1983: | Internship/Residency, Department of Family Medicine, Madigan Army Medical Center, Fort Lewis, WA |

**Licensing/Credentialing:**

| | |
|---|---|
| Washington State Medical License: | 1983-1992 |
| California State Medical License: | 1992-present |
| Board Certification: | American Board of Family Medicine, 1993. Recertified 1999, 2006, 2013 |

**Military Service**

| | |
|---|---|
| 1980-1986: | Captain, U.S. Army Medical Corps, Madigan Army Medical Center, Tacoma, Washington, and DeWitt Army Community Hospital, Fort Belvoir, Virginia |
| 1983-1984: | Treatment Platoon Leader, 1st Forward Support Battalion 9th Infantry Division, Fort Lewis, Washington |
| 1986-1987: | Major, U.S. Army Medical Corps, Madigan Army Medical Center, Tacoma, Washington |

**Academic Appointments:**

| | |
|---|---|
| 1984-1986: | Clinical Assistant Professor, Department of Family Medicine, F. Edward Hebert School of Medicine, Bethesda, MD. |
| 1986-1992: | Clinical Assistant Professor, Department of Family Medicine, University of Washington School of Medicine. |
| 1992-1997: | Assistant Professor, Department of Family & Community Medicine, University of California, Davis. |
| 1997-2005: | Associate Professor, Department of Family & Community Medicine, University of California, Davis. |
| 2005-3/2020: | Professor, Department of Family & Community Medicine, UC Davis. |
| 3/2020-Present: | Professor Emeritus, UC Davis. |

**Administrative Activities:**

| | |
|---|---|
| 1986: | Clinical Assistant Professor, F. Edward Herbert School of Medicine |
| 1987-1992: | Assistant Professor, University of Washington, Department of Family Medicine |
| 1990-1992: | Residency Director, University of Washington, Department of Family Medicine |
| 1992-2004: | Residency Director, Department of Family & Community Medicine |
| 1992-2001: | Director, UC Davis Network of Affiliated Family Medicine Residency Programs |
| 2001- 2004: | Director/UC Davis Network Research Consortium |
| 2003-2014: | Medical Officer of the Day (MOD)/UCDHS |
| 2003-2010: | Founding Director, UCDHS Chronic Disease Management Program |
| 2003- 2004: | Acting Assistant Dean & Designated Institutional Official for Graduate Medical Education, UCDMC |
| 2004-2016: | Vice Chair, Department of Family & Community Medicine |
| 2004- 2006: | Assistant Dean & Designated Institutional Official for Graduate Medical Education, UCDMC |
| 2006-2019: | Associate Dean & Designated Institutional Official for Graduate Medical Education |
| 2007- 2008: | Interim Associate Dean for Student Affairs |
| 2008-2009: | Associate Dean for Student Affairs and Career Advising |
| 2010-2011: | Associate Dean for Student Affairs |

**Committees:**

### Department/Section

| | |
|---|---|
| 1992-2018: | Graduate Medical Education Committee |
| 1994-3/2020: | Chair, Volunteer Clinical Faculty Review Committee |
| 2004-2019: | Vice Chair, Department of Family & Community Medicine |

### Other University

| | |
|---|---|
| 1992-1994: | Pharmacy and Therapeutics Committee |
| 1994-2020: | Affiliation Advisory Committee |
| 1996-1998: | Graduate and Continuing Medical Education Sub-Committee for LCGME |
| 1997-2018: | Graduate Medical Education Position Paper Sub-Committee |
| 1998-1999: | Compensation Advisory Committee |
| 2003-2004: | Acting Assistant Dean for Graduate Medical Education |
| 2003-2018: | Chair, Graduate Medical Education Committee |
| 2003-2010: | Founding Director, Chronic Disease Management Center |
| 2004: | LCME Sub-Committee |
| 2004-2007: | Medical School Interview Committee |
| 2008-2011: | Committee on Student Progress |

### Other Non-University

| | |
|---|---|
| 1997: | Member, Peer Reviewer, Graduate Training in Family Medicine. Review Committee, Department of Health & Human Services, Rockville, Maryland |
| 1993-2020: | Consultant, Medical Expert for the Medical Board of California |
| 1997-2000: | Consultant for the Department of Managed Healthcare |
| 1997-2002: | Officer, Assistant Editor, American Family Physician |
| 2004-2018: | Member, Medical Board of California Task Force on Offshore Schools |
| 2007: | Expert in the Issue of Chronic Disease Management, Governor's Panel on Health Care Policy Reform |
| 2007-2020: | Member, Medical Board of California Expert Review Committee for 2168 Policy |

**Current Activities:**

1.  Chief Medical Consultant/Enforcement

Medical Board of California/Executive Office

2005 Evergreen Street; Suite 1200

Sacramento, CA  95815-5401

916-274-5983

2.   Designated Institutional Office/Office of Graduate Medical Education

Adventist Health of Ukiah Valley Family Medicine Residency Program

495 East Perkins Street, Ukiah, CA  95482

707-467-5225

3.   Clinical Preceptor/Family Medicine Residency Program/Adventist Health of
    Ukiah Valley – 16 hours/month (seeing patients with residents in a continuity
    outpatient clinic).
4.  Hospitalist/Mather VA Hospital
    10535 Hospital Way, Mather, CA  95655 – 56 hours/month (seeing patients as a
    supervising hospitalist supervising a resident teaching service).
    Primary Care Provider/McClellan VA Outpatient Primary Care Clinic
    5342 Dudley Boulevard, McClellan Park, CA  95652 – 40 hours/month (seeing
    patients as the primary care provider in an outpatient clinic).


**Publications:**


**Journals**

1.  1985      **Nuovo J.** Clinical application of a high-risk scoring system on a
    family practice obstetric service. Journal of Family Practice, 20(2): 139-144.
2.  1986      **Nuovo J.** Overanxious parents. American Family Physician, 33(1):
    189-192.
3.  1989      **Nuovo J.** Use of dietary fiber to lower cholesterol. American Family
    Physician, 39(4): 137-140.
4.  1989      Eggertsen S, Leversee JH, **Nuovo J.** Initiating a vasectomy training
    clinic in a family practice residency. Family Medicine, 21(4): 301-302.
5.  1991      **Nuovo J.** Temporal arteritis: An atypical presentation. Journal of
    the American Board of Family Practice, 4(2): 115-118.
6.  1991      Nuovo G, **Nuovo J.** Should family physicians test for human
    papillomavirus?: An opposing view. Journal of Family Practice, 32(2): 188-
    192.
7.  1991      **Nuovo J.** Are oat products effective cholesterol lowering agents: A
    critical review. Journal of the American Board of Family Practice, 4(4): 229-
    236.

5

8. 1992      **Nuovo J,** Ellsworth A, Larson E. Treatment of atopic dermatitis with antihistamines: Lessons from a single-patient, randomized clinical trial. Journal of the American Board of Family Practice, 5(2): 137- 141.

9. 1993      Jacobson S, **Nuovo J.** Exercise stress test training in family practice residency programs. Journal of the American Board of Family Practice, 6(3): 289-291.

10. 1993      **Nuovo J,** Kreiter L. Frequency of nondiagnostic findings on colposcopy:

Implications for management. Journal of the American Board of Family Practice, 6(3): 209-214.

11. 1993      **Nuovo J,** DeNeff P, Hawley W, Carter P. Do oral contraceptive agents affect the risk of breast cancer?: A meta-analysis of the case-control reports. Journal of the American Board of Family Practice, 6(2): 123-135.

12. 1994      **Nuovo J,** Sweha A. Keloid formation from levonorgestrel implant (norplant system) insertion. Journal of the American Board of Family Practice, 7(2): 152-154.

13. 1995      **Nuovo J,** et.al. Cost-effectiveness analysis of five different antibiotic regimens for the treatment of uncomplicated chlamydia trachomatous cervicitis. Journal of the American Board of Family Practice, 8(1): 7-16.

14. 1995      **Nuovo J,** Melnikow J, Paliescheskey M. When the Pap smear shows inflammation. Patient Care, 29: 151-153.

15. 1995      **Nuovo J,** Melnikow J, Paliescheskey M. Management of patients with atypical and low-grade pap smear abnormalities. American Family Physician, 52(8): 2243-2250.

16. 1995      **Nuovo J,** Ellsworth A, Christensen DB, Reynolds R. Excessive thyroid hormone replacement therapy. Journal of the American Board of Family Practice, 8(6): 435-439.

17. 1996      Melnikow J, **Nuovo J,** Paliescheskey M. Management choice for patients with squamous atypia on papanicolaou smear: A toss up? Medical Care, 34(4): 336-347.

18. 1996      **Nuovo J,** Melnikow J. Colposcopy training in residency programs: A new dilemma. Family Medicine, 28: 502-504.

19. 1997      **Nuovo J,** Melnikow J, Hutchison B, Paliescheskey M. Is cervicography a useful diagnostic test?: A systematic overview of the literature. Journal of the American Board of Family Practice, 10(6): 390-397.

20. 1997      Melnikow J, **Nuovo J,** Paliescheskey M, Stewart G, Howell L, Green W. Detection of high-grade cervical dysplasia: Impact of age and the Bethesda system terminology. Diagnostic Cytopathology, 17(5): 321-325.

21. 1997      Chapman R, **Nuovo J.** Combined residency training in family practice and other specialties. Family Medicine, 29(10): 715-718.

22. 1998      Melnikow J, **Nuovo J,** Willan A, Chan B, Howell L. Natural history of cervical squamous intraepithelial lesions: A meta analysis. Obstetrics & Gynecology, 92(4): part 2:727-735.

23. 1999      Sweha A, Hacker T, **Nuovo J.** Interpretation of the electronic fetal heart rate during labor. American Family Physician, 59(9): 24872500.

24. 1999       Hixon A, Chapman R, **Nuovo J.** Failure to keep clinic appointments: Implications for residency education and productivity. Family Medicine, 31(9): 627-630.

25. 1999       **Nuovo J,** Smith L. Enhanced obstetrics training for family practice residents: A unique collaborative program. Journal of the American Board of Family Practice, 12(5): 409-412.

26. 2000       **Nuovo J,** Melnikow J, Willan AR, Chan BKS. Treatment outcomes for squamous intraepithelial lesions. International Journal of Gynecology & Obstetrics, 68: 25-33.

27. 2001       **Nuovo J,** Melnikow, Howell LP. New tests for cervical cancer screening. American Family Physician, 64(5): 780-786.

28. 2001       Hilty DM, Hales RE, Servis ME, **Nuovo J.** Algorithms for the Diagnosis and Management of Anxiety Disorders in the Primary Care Setting. Primary Psychiatry, 8(8): 58-67.

29. 2002       **Nuovo J,** Melnikow J, Chang D. Reporting Number Needed to Treat and Absolute Risk Reduction in Randomized Controlled Trials. JAMA, 287(21): 2813-2814.

30. 2002       Melnikow J, Kuppermann M, Birch S, Chan B KS, **Nuovo J.** Management of the Low-Grade Abnormal Pap Smear: What are Women's Preferences? Journal of Family Practice, 51(10): 849-855.

31. 2004       **Nuovo J,** Balsbaugh T, Barton S, Davidson E, Fox-Garcia J, Gandolfo A, Levich B, Seibles J. Development of a Diabetes Care Management Curriculum in a Family Practice Residency Program. Disease Management, 7(4): 314-324.

32. 2005       Jerant A, Levich B, Balsbaugh T, Barton S, **Nuovo J.** Walk a Mile in my Shoes: A Chronic Illness Care Workshop for First-Year Students. Family Medicine, 37(1): 21-6.

33. 2005       Melnikow J, Paterniti D, Azari R, Kuenneth C, Birch S, Phil D, Kuppermann M, **Nuovo J,** Keyzer J, Henderson S. Preferences of Women Evaluating Risks of Tamoxifen: The POWER Study of Preferences for Tamoxifen for Breast Cancer Risk Reduction. CANCER, 103(10): 1996-2005.

34. 2005       Keyzer JF, Melnikow J, Kuppermann M, birch S, Kuenneth C, **Nuovo J,** Azari R, Oto-Kent D, Rooney M. Recruitment Strategies for Minority Participation: Challenges and Cost Lessons from the POWER Interview. Ethnicity & Disease, 15(3): 395-406.

35. 2005       Paterniti DA, Melnikow J, **Nuovo J,** Henderson S, DeGregorio M, Kuppermann M, Nease R. "I'm Going to Die of Something Anyway": Women's Perceptions of Tamoxifen for Breast Cancer Risk Reduction. Ethnicity & Disease, 15(3): 365-372.

36. 2005       Eidson-Ton WS, **Nuovo J,** Solis B, Ewing K, Diaz H, Smith LH. An enhanced obstetrics track for a family practice residency program: results from the first 6 years. J Am Board Fam Pract, 18(3): 223-8.

37. 2006       **Nuovo J,** Bertakis K, Azari R. Assessing Resident's Knowledge and Communication Skills Using Four Different Evaluation Tools. Med Educ.,40(7): 630-636.

38. 2006      Melnikow J, Kuenneth C, Helms LJ, Barnato A, Kuppermann M, Birch S, **Nuovo J.** Chemoprevention: drug pricing and mortality: the case of tamoxifen. Cancer, 107(5): 950-958.

39. 2006      **Nuovo J,** Sather C. Reporting Adverse Events in Randomized ControlledTrials. Pharmacoepidemiology and Drug Safety, 16(3): 349-351.

40. 2007      **Nuovo, J.**, Balsbaugh, T., Barton, S., Fong, R., Fox, J., Levich, B., Fenton, JJ. Interventions to Support Diabetes Self-Management: The Key Role of the Patient in Diabetes Care? Current Diabetes Reviews, 3(4): 226-8.

41. 2007      **Nuovo J,** Balsbaugh T, Lee M, Isidro J. The UC Davis Health System's 6-Year Experience With A Web-Based Patient Sign-out System (PASS). Accreditation Council for Graduate Medical Education (ACGME) Bulletin, 18-19.

42. 2009      **Nuovo, J**. The Impact of Planned Visits on Patients with Type 2 Diabetes Mellitus. Clinical Medicine: Endocrinology and Diabetes, 2: 7-14.

43. 2009      **Nuovo J,** Balsbaugh T, Levich B. Gender Differences in the Selection of an Action Plan for Patients with Type 2 Diabetes Mellitus. The Patient, 2(3): 203-208.

44. 2010      Geraghty E, Balsbaugh T, **Nuovo J,** Tandon S. Using GIS to Assess for Outcome Disparities in Patients with Type 2 Diabetes and Hyperlipidemia. JABFM, 23(1): 88-96.

45. 2010      **Nuovo J.** The Convergence of Impact Factor and Media Attention on Discussions Between Doctors and Their Patients; the case of Rosiglitazone. Pharmacoepidemiology and Drug safety Editorial Office.

46. 2011      **Nuovo, J**. The Impact of a Drug Safety Warning on Discussions Between Doctors and Their Patients; the Case of Rosiglitazone. Pharmacology & Pharmacy.

47. 2013      **Nuovo J.** The Impact of a Diabetes Self-Management Education Program Provided Through a Telemedicine Link to Rural California Health Care Clinics. Health Services Insights, (6) 1-7.

48. 2013      **Nuovo J**, Hutchinson D, Balsbaugh T, Keenan, C. Establishing Electronic Health Record Competency Testing for First-Year Residents. Journal of Graduate Medical Education, 5(4): 658-661.

**Book Chapters**

1. 1994      **Nuovo J**: Ischemic Heart Disease, RB Taylor, (ed), Family Medicine: Principles and Practice, Fourth Edition, New York: Springer-Verlag, 582-592.

2. 1996      **Nuovo J**: Ischemic Heart Disease, RB Taylor, (ed), Fundamentals of Family Medicine, New York: Springer-Verlag, 252-281.

3. 1996      **Nuovo J**: Cervical Cancer, R Rakel, (ed), Saunders Manual of Medical Practice, W.B. Saunders Company, 413-415.

4. 1996      **Nuovo J**: Ischemic Heart Disease, M Mengel and S Schwiebert, (ed), Ambulatory Medicine: The Primary Care of Families, Second Edition, Connecticut: Appleton & Lange., 436-442.

8

5.  1996    **Nuovo J,** Sweha A: Atrial Fibrillation and Other Supraventricular Tachycardias, R.B. Taylor, (ed), The Manual of Family Practice, First Edition, Boston: Little, Brown and Company, 292-297.
6.  1997    Melnikow J, **Nuovo J**: Cancer Prevention and Screening in Women, Primary Care Clinics of North America, Vol. 24, pp. 15-26.
7.  1997    **Nuovo J,** Sweha A: Ischemic Heart Disease, R.B. Taylor, (ed), Family Medicine: Principles and Practice, Fifth Edition, New York: Springer-Verlag, 650-663.
8.  1998    **Nuovo, J**: Cervical Cancer, R.E. Rakel, (ed), Saunders Manual of Medical Practice, W.B. Saunders Company, 413-415.
9.  1998    **Nuovo J,** Hixon C: Ischemic Heart Disease, M. Mengel and S. Schwiebert, (ed), Ambulatory Medicine: The Primary Care of Families, Third Edition, Connecticut: Appleton & Lange, 473-480.
10. 2000    **Nuovo J**: Cardiovascular Problems, R.B. Taylor, (ed), The 10-Minute Diagnosis Manual, Lippincott Williams and Wilkins, 117-119.
11. 2001    **Nuovo J**: Atrial Fibrillation and Other Supraventricular Tachycardias, R.B. Taylor, (ed), The Manual of Family Practice, Second Edition, Boston: Lippincott Williams & Wilkins., 263-268.
12. 2002    **Nuovo, J**: Ischemic Heart Disease, R.B. Taylor, (ed), Family Medicine: Principles and Practice, Sixth Edition, New York: Springer-Verlag, 632-643.
13. 2003    **Nuovo J**, Hixon AL.: Ischemic Heart Disease, Mengel M. and Schwiebert LP, (ed), Family Medicine: Ambulatory Care & Prevention, Fourth Edition, McGraw-Hill, 508-515.
14. 2007    **Jim Nuovo**, MD: Section I Background: Chapter 1, Overview of Chronic Disease Management, Jim Nuovo, MD, (ed), Chronic Disease Management, Springer, 3-8.
15. 2007    **Jim Nuovo**, MD: Section II Management of Specific Diseases: Chapter 7, Type 2 Diabetes, Jim Nuovo, MD, (ed), Chronic Disease Management, Springer, 139-201.
16. 2007    **Jim Nuovo**, MD: Section II Management of Specific Diseases: Chapter 11, Obesity, Jim Nuovo, MD, (ed), Chronic Disease Management, Springer, 327-332.
17. 2007    **Jim Nuovo**, MD: Section II Management of Specific Disease: Chapter 12, Depression, Jim Nuovo, MD, (ed), Chronic Disease Management, Springer, 333-345.
18. 2007    **Jim Nuovo**, MD: Section II Management of Specific Diseases: Chapter 13, Jim Nuovo, MD, (ed), Chronic Disease Management, Springer, 346-358.

**Books Edited**

1. 2007    **Jim Nuovo**, MD: Chronic Disease Management, Jim Nuovo, MD, (ed), Springer.

## Invited Commentaries

1. 1992 **Nuovo J**, Newkirk G. Colposcopy Training for Family Physicians (Editorial). Journal of the American Board of Family Practice, 5(1): 102-104.
2. 1998 **Nuovo J**. Contraindications to Metformin Therapy. American Family Physician, 57(3): 536-537.
3. 1998 **Nuovo J**. Management of Incidental Pituitary Microdenomas. American Family Physician, 57(9): 2247-2248.
4. 1998 **Nuovo J**. Calcium Channel Blockers and Cardiovascular Mortality. American Family Physician, 58(5): 1203-1204.
5. 1998 **Nuovo J**. Common Questions about Low-Molecular Weight Heparin. American Family Physician, 58(7): 1649.
6. 1998 Melnikow J, **Nuovo J**. Reducing Mortality Cervical Cancer: Papnet Fails the Test (Editorial). Archives of Family Medicine, 8: 56-57.
7. 1999 **Nuovo J**. Hyperlipidemia in Patients with Type 2 Diabetes. American Family Physician, 59(6): 1666-1671.
8. 1999 **Nuovo J**. Treatment of Patients with Epilepsy Emergencies. American Family Physician, 59(10): 2872.
9. 1999 **Nuovo J**. AHA Statement on Antioxidants and Coronary Disease Prevention. American Family Physician, 59(10): 2904.
10. 1999 **Nuovo J**. Albumin-to-Creatine Ratio for Detection of Microalbuminuria. American Family Physician, 59(11): 3243.
11. 1999 **Nuovo J**. Diagnostic Markers for Detection of Myocardial Infarction. American Family Physician, 60(1): 262.
12. 1999 **Nuovo J**. Recommendations for Oral Agents in type 2 Diabetes. American Family Physician, 60(4): 1233-1234.
13. 1999 **Nuovo J**. Appropriate Beta-Blocker Therapy in CHF. American Family Physician, 60(6): 1838-1843.
14. 1999 **Nuovo J**. The Costs of Helping Patients with Type 1 Diabetes Achieve Tight Control (Editorial). American Family Physician, 60(7): 1914-1921.
15. 1999 Nicolette J, **Nuovo J**. Reframing our Approach to Domestic Violence: The Cyclic Batterer Syndrome (Editorial). American Family Physician, 60(9): 2498-2501.
16. 1999 **Nuovo J**. Cost Comparison of Fluoxetine and Tricyclic Antidepressants. American Family Physician, 60(9): 2678-2680.
17. 2000 **Nuovo J**. Reducing CHD in Diabetic Patients Using Simvastatin. American Family Physician, 61(4): 1178-1180.
18. 2000 **Nuovo J**. Gastric Irritation Effect of COX Inhibitors vs. NSAIDs. American Family Physician, 61(5): 1472.
19. 2000 **Nuovo J**. Diagnosis and Treatment of Nonulcer Dyspepsia. American Family Physician, 61(5): 1474-1476.
20. 2000 **Nuovo J**. Cholesterol Lowering Effect of Wood-Based Stanol Esters. American Family Physician, 61(8): 2483-2484.
21. 2000 **Nuovo J**. Improving Compliance after Abnormal Pap Smears. American Family Physician, 61(9): 2813-2817.

22. 2000     **Nuovo J**. The Shoulder Prereduction vs. Postreduction Radiographs. American Family Physician, 61(9): 2822-2824.

23. 2000     **Nuovo J**. [AFP 50 Years Ago] A Cancer Finding Team. American Family Physician, 61(12): 3531-3534.

24. 2000     **Nuovo J**. Tempering the Enthusiasm for COX-2 Inhibitors. American Family Physician, 61(12): 3560-3563.

25. 2000     **Nuovo J,** Melnikow J. [ACP Journal Club--Commentary] Review: The Extended-Tip Spatula is More Effective than the Ayre's Spatula for Detecting Karyosis in Cervical Smears. Evidence Based Medicine, 30.

26. 2000     **Nuovo J**. [ACP Journal Club--Commentary] Review: Newer technologies Improve Sensitivity in Detecting Uterine Cervical Lesions but at a Substantially Increased Cost. Evidence Based Medicine, 34.

27. 2000     **Nuovo J**. Current Status of Treatment for H. Pylori Infection. American Family Physician, 62(3): 630-633.

28. 2000     **Nuovo J**. Beta Blockade in Patients with CHF of Mixed Causes. American Family Physician, 62(3): 643-644.

29. 2000     Efficacy and Tolerability of Orlistat in Obese Patients. American Family Physician, 62(3): 649-650.

30. 2000     **Nuovo J**. Use of Opiate Analgesics for Acute Abdominal Pain. American Family Physician, 62(9): 2122.

31. 2000     **Nuovo J**. Asymptomatic Contacts of Patients with Scabies. American Family Physician, 62(10): 2317.

32. 2000     **Nuovo J**. Fluoxetine for Depression in Patients with Diabetes. American Family Physician, 62(10): 2336.

33. 2000     **Nuovo J**. Using Adhesives for Laceration Repair During Sports Events. American Family Physician, 62(10): 2338.

34. 2000     **Nuovo J**. Diuretics and Beta Blockers Safe to Use for Dyslipidemia. American Family Physician, 62(10): 3148.

35. 2001     **Nuovo J**. Diagnosis and Management of Nonalcoholic Steatohepatitis. American Family Physician, 63(1): 133.

36. 2001     **Nuovo J**. Efficacy of Methylphendiate in Various Clinical Conditions. American Family Physician, 63(1): 144.

37. 2001     **Nuovo J**. Detection of Colon Cancer with a Magnetic Resonance Technique. American Family Physician, 63(2): 352.

38. 2001     **Nuovo J**. Treatment of Benign Paroxysmal Vertigo. American Family Physician, 63(2): 357.

39. 2001     **Nuovo J**. Chronic Corticosteroid use in Patients with COPD. American Family Physician, 63(2): 364.

40. 2001     **Nuovo J**. Helical CT for the Diagnosis of Colonic Angiodysplasia. American Family Physician, 63(3): 531.

41. 2001     Melnikow J, **Nuovo J**. [ACP Journal Club] A Higher Level of Human Papilomavirus 16 DNA was Associated with an Increase Risk for Cervical Carcinoma in Situ. Evidence Based Medicine, 34-35.

42. 2001     **Nuovo J**. Management of Acute Gallstone Cholangitis. American Family Physician, 64(6): 1082-1084.

43. 2001     **Nuovo J**. Botulinum Toxin for Relief of Chronic Low Back Pain. American Family Physician, 64(12): 2004-2005.

44. 2003      Author reply. LEEP in the family practice setting. J Am Board Fam Practice, 16(4): 360; reply 360-1.
45. 2008      Commentary by **Nuovo, J**. Sex Discrimination in Selection for Residency. Virtual Mentor, 10(7): 439-443.
46. 2010      Commentary by **Nuovo** on. Adverse effects if treatment in randomized controlled trials are variably and inconsistently reported. (Reporting of Safety results in published reports of randomized controlled trials. Pitrou I, Boutron I, Ahmad N, Ravaud P. Arch Intern Med). Evidence-Based Medicine, 15(2): 60.

## Limited Distribution

1. 1993      **Nuovo J**. The Role of Dietary Fiber in the Management of Patients with Hypercholesterolemia. [Monograph 2-7] M.E.D. Communications.
2. 1998      **Nuovo J,** Sweha A In R.B. Taylor (Ed.). Ischemic heart disease. Fundamentals of Family Medicine: The Family Medicine Clerkship Textbook Second Edition, New York: Springer-Verlag., 246-277.
3. 2002      **Nuovo J**. Evaluation and Management of Abnormal Pap Smear. Primary Care Reports, 8(4): 29-36.
4. 2003      **Nuovo J**. Ischemic Heart Disease. Fundamentals of Family Medicine; The Family Medicine Clerkship Textbook Third Edition, New York: Springer-Verlag, 242-269.

## Abstracts

1. 2001      Melnikow J, Patemiti D, Henderson S, **Nuovo J,** Degregorio M, Kuppermann M, Nease R. Tamoxifen for breast cancer risk reduction: Women's perspectives. Journal of General Internal Medicine, 16(1): 230.
2. 2001      **Nuovo J,** Melnikow J, Cheng D. Reporting number needed to treat and number needed to harm in randomized controlled trials. JAMA Fourth International Congress on Peer Review on Biomedical Publication 15.
3. 2003      **Nuovo J,** Balsbaugh T, Barton S, Seibles J, Levich B, Davidson E. Use of Tele form Technology to Establish a Research Database for a Chronic Disease Management Program.
4. 2003      Melnikow J, Berger C, Paterniti D, **Nuovo J,** Kuenneth C. Breast Cancer Concern and Sources of Breast Cancer Information. Society of General Internal Medicine 26th Annual Meeting Journal of General Internal Medicine, 18(supp 1): 303.
5. 2003      Melnikow J, Paterniti D, **Nuovo J,** Kuenneth C, Birch S, Kupperman M, Azari R, DeGregorio M. Tamoxifen for Breast Cancer Risk Reduction: Is it acceptable to Women at Risk? Society of General Internal Medicine 26th Annual Meeting Journal of General Internal Medicine, 18(supp 1): 303.
6. 2003      Crichlow R, Melnikow J, **Nuovo J**. Race in the Gail Model of Breast Cancer. Journal of General Internal Medicine, 18(supp 1): 171.
7. 2004      **Nuovo J,** Bertakis K, Azari R. The utility of the Davis observation code (DOC) scores in assessing resident's communication and patient care

skills: Relationship of rotation evaluations, objective structured clinical examination (OSCE) scores, and results from the in-training examination. 2004 ACGME Annual Education Conference, The Marvin R. Dunn Poster Session, P7.

8. 2004      Flores C, **Nuovo J,** Brunader R, Rooney M. Chronic Non-malignant Pain Management: Knowledge and Attitudes of Family Practice Residents. 30th Annual Education Conference. Asilomar Conference Grounds, Pacific Grove, California.

9. 2004      **Nuovo J,** Sather C. Reporting Methods of Adverse Events in Randomized Controlled Trials. Fifth International Congress on Peer Review and Biomedical Publication JAMA.

10. 2007      **Nuovo J,** Balsbaugh T, Lee M, Isidro J. The UC Davis Health System's 6-Year Experience With A Web-Based Patient Sign-Out System (PASS).

11. 2009      Munroe J, **Nuovo J,** Dimand P. More Than Just Signout: Redesigned Handoff System Provides Program Flexibility and Unexpected Multi-Functionality.

12. 2009      **Nuovo J**. The Convergence of Impact Factor and Media Attention on Discussions Between Doctors and Their Patients: The Case of Rosiglitazone. International Congress on Peer Review and Biomedical Publication. September 10-12, 2009. Vancouver, BC, Canada.

13. 2010      Seritan, AL, Jennings J, **Nuovo J**. Medical Student Wellness: Development of a New Program. Presented at the Western Group on Educational Affairs, AAMC, Asilomar, CA. April 25-27, 2010.

## Presentations

1. 1983      The History of Digitalis, Department of Family Practice Tenth Anniversary Meeting, Madigan Army Medical Center, Tacoma, Washington.

2. 1983      The Importance of an Understanding to the History of Medicine, Tacoma Pierce County Medical Society Meeting, Tacoma, Washington.

3. 1985      Problems with Research in Primary Care, 11th Annual Meeting of the Uniformed Services Academy of Family Practice, Williamsburg, Virginia.

4. 1985      High-Risk Obstetrics for Family Physicians, North American Primary Care Research Group Meeting, Seattle, Washington.

5. 1985      Overanxious Parents, American Academy of Family Physicians' Meeting, Anaheim, California.

6. 1986      Pseudohypertension in the Elderly, North American Primary Care Research Group, Baltimore, Maryland.

7. 1987      Exercise Treadmill Testing Workshop, Annual Family Practice Review Course 1987-1991, Seattle, Washington.

8. 1993      And Now A Word From Our Sponsor, Annual Family Practice Residents Retreat and Research Conference, Pacific Grove, California.

9. 1994      Colposcopy, Annual Family Practice Residents' Retreat and Research Conference, Pacific Grove, California.

10. 1994      Improving The Quality Of Teaching, Faculty Development Seminar Department of Family Practice, San Joaquin General Hospital, Stockton, California.
11. 1994      Common Gynecological Problems For The General Internist, Advances in Internal Medicine, Monterey, California.
12. 1994      Update On Ambulatory Gynecology, San Joaquin General Hospital, Stockton, California.
13. 1995      Common End Disorders, Contemporary Forums/Contraceptive Technology, San Francisco, California.
14. 1995      Evaluation and Treatment of Depression, Contemporary Forums/ Contraceptive Technology, San Francisco, California.
15. 1995      Common Gynecological Infections, Mercy General Hospital, Sacramento, California.
16. 1995      Innovative Ideas Workshop: A Combined Residency in Family Practice and General Surgery, Association of Family Practice Residency Directors, Kansas City, Missouri.
17. 1995      Cervicography, Poster Presentation, Cancer Research Symposium, Sacramento, California.
18. 1995      How To Run A Family Practice Residency Program, Visiting Russian Physicians, Sacramento, California.
19. 1996      Colposcopy, Annual Family Practice Residents' Retreat and Research Conference, Pacific Grove, California.
20. 1997      Combined Family Practice/Psychiatry Training, 15th Annual Meeting of the American Psychiatry Association, San Diego, California.
21. 1997      Combined Family Practice/Obstetrics Training, Annual Meeting of the Association of Family Practice Residency Directors, Kansas City, Missouri.
22. 1998      Combined Family Practice/Psychiatry Training, Exploratory Conference University of California, San Francisco Department of Psychiatry, Fresno, California.
23. 1998      Song-Brown Presentations, California Health Manpower Policy Commission, San Francisco, California.
24. 1999      How to Teach Evidence-Based Clinic Practice Workshop, McGill University, Ontario, Canada.
25. 1999      Sexual Misconduct Between Patients and Non-Therapist Physicians I, Medical Board of California.
26. 1999      Sexual Misconduct Between Patients and Non-Therapist Physicians II, Medical Board of California.
27. 2000      Song-Brown Presentation, California Health Manpower Policy Commission, San Francisco, California.
28. 2002      September, Song-Brown Presentation, California Health Manpower Policy Commission, San Francisco, CA.
29. 2003      September, Song- Brown Presentation, California Health Manpower Policy Commission, San Francisco, CA.
30. 2004      February, Cardiovascular Diseases Prevention Forum, Sacramento, CA.
31. 2004      March, Marvin R. Dunn Poster Session "Initiatives in GME:

Teaching and Assessing the Competencies; Implementing the Duty Hours Requirements". The 2004 ACGME Annual Conference, Chicago, Illinois.

32. 2004      December, Nutrition and Chronic Illness: Impact on Bone Disease, Obesity, Diabetes and Heart Disease, 4th Annual UC Davis Endocrinology Conference, Napa, California.

33. 2005      Reporting adverse events in randomized controlled trials, International Congress on Peer Review and Biomedical Publication hosted by JAMA and the BMJ Publishing Group, Chicago, Illinois.

34. 2005      University of California, Davis Network of Affiliated Family Medicine Residency Program, 30th Annual Network Education Conference, Diabetes Presentation, Asilomar Conference Grounds, Monterey Bay, California.

35. 2007      Development of a resident wellness program, Marvin R. Dunn Poster Session for the ACGME's Annual Education Conference, Kissimmee, Florida.

36. 2007      Implementation of a Chronic Disease Rotation for Family Medicine Residents, Society of Teachers of Family Medicine Annual Conference, Chicago, Illinois.

37. 2008      April, Campus Authors Celebration, Peter J. Shields Library, Davis, CA.

38. 2009      September 10, The Convergence of Impact Factor and Media Attention on Discussions Between Doctors and Their Patients: The Case of Rosiglitazone, International Congress on Peer Review and Biomedical Publication. Vancouver, BC, Canada. September 10-12, 2009.

39. 2010      March 26, Overview of Diabetes, California State University, Sacramento.

40. 2010      April 25, Medical Student Wellness: The Development of a New Program, AAMC Western Group on Educational Affairs (WGEA). Asilomar Conference Center, Pacific Grove, CA. April 25 - 27.

41. 2012      November 13, Development of a Diabetes Self-Management Education Program Delivered via Telemedicine to Rural Communities in California 2009/2012. Annual Rural Health Conference 2012. California State Rural Health Association, Southern California, Disneyland Grand Hotel.

42. 2012      November 16, UC Davis Health System Mid-Career Leadership Program. Education Components: Residency and Fellowship Programs, UC Davis Health System, California. Faculty Workshop.

43. 2013      November 12, UC Davis Health System Mid-Career Leadership Program. Education Components: Residency and Fellowship Programs, UC Davis Health System, California. Faculty Workshop.

44. 2014      May 16, UC Davis Health System Mid-Career Leadership Program. Education Components: Residency and Fellowship Programs, UC Davis Health System, California. Faculty Workshop.

45. 2015      February 5, UC Davis Health System Mid-Career Leadership Program. Education Components: Residency and Fellowship

45. 2016       Programs, UC Davis Health System, California. Faculty Workshop.
               March 16, UC Davis Health System Mid-Career Leadership
               Program. Education Components: Residency and Fellowship
               Programs, UC Davis Health System, California. Faculty Workshop.

*46. 2017      April 5, UC Davis Health System Mid-Career Leadership Program.
               Education Components: Residency and Fellowship Programs, UC
               Davis Health System, California. Faculty Workshop.

# Publications: Additional Information

### Recognition

***Newsline***, Federation of State Medical Boards of the United States, Inc. Included
and article about "California Medical Board Promotes Telemedicine to Improve
Access to Quality Care and to Reduce Health Care Disparities in Underserved
Areas." September/October 2009, page 3
***Medical Board of California Newsletter***, article about "Medical Board of
California Promotes Telemedicine to Improve Access to Quality Care and to
Reduce Disparities in Diabetes through Telemedicine for Underserved
Communities." October 2009, Volume 112 page 1 and continued on page 5.

### Posters

11/2012 Compliance with Duty Hours and Fatigue Management Requirements,
Group on Regional Medical Campuses, Association of American Medical
Colleges. 2012 AAMC Annual Meeting in San Francisco, California. **Nuovo J**,
Dimand P, Munroe J- Big Tomato Tech, Andrews F - Interactive Game Designer.

03/2013 Annual Integrating Quality Symposium: Linking Educational and Clinical
Excellence. Establishing Electronic Medical Record Competency Testing for UC
Davis PGY-1 Residents. **Nuovo J**, Hutchinson D, Balsbaugh T, Keenan C.
University of California, Davis.

### Applications - Phones & Computers

| | |
|---|---|
| 2011 | eHandoff, Medical handoff. **Nuovo J**, Dimand P, Munroe J, Big Tomato Tech. |
| 2012 | Clock Jockey, Duty hour monitoring. **Nuovo J**, Dimand P, Munroe J, Big Tomato Tech. |
| 2014 | Ecotime, Duty hour monitoring. **Nuovo J**, Maurice T, Chilcott S, Minear M, Johnson V, Lippuner E, Shaw K. |

# Honors and Awards

| | |
|---|---|
| 1975 | Summa Cum Laude, University of Vermont, Burlington, Vermont |
| 1985 | Outstanding Scientific Paper Award, AAFP 37th Assembly, Anaheim, California |
| 1986 | Teacher of the Year, Department of Family Practice, DeWitt Army Community Hospital, Fort Belvoir, Virginia |
| 1986 | Army Commendation Medal, Fort Belvoir, Virginia |
| 1987 | Outstanding Faculty Award, Department of Family and Community Medicine, University of California, Davis, Sacramento, California |

# Grants and Contracts

### Grants Completed

**Title:** Song-Brown Capitation Application (funded annually)
**Agency:** State of California, Office of Statewide Health Planning and Development **Grant No.:**
**Amount:** $154,845
**Date(s):** 07/01/1992 - 06/30/2001
**PI/Co-PI:** Principal Investigator
**Type:** Research
**Status:** Completed
**Title:** Graduate Training in Family Medicine
**Agency:** DHHS, Health Services and Resources Administration, Division of Medicine
**Grant No.:**
**Amount:** $374,951
**Date(s):** 07/01/1995 - 06/30/1998
**PI/Co-PI:** Principal Investigator
**Type:** Research
**Status:** Completed
**Title:** Graduate Training in Family Medicine
**Agency:** DHHS, Health Services and Resources Administration, Division of Medicine
**Grant No.:**
**Amount:** $464,038
**Date(s):** 07/01/1998 - 06/30/2001
**PI/Co-PI:** Principal Investigator
**Type:** Research
**Status:** Completed
**Title:** Tamoxifen Prevention: Is It Acceptable to Women at Risk?
**Agency:** California Breast Cancer Research Program
**Grant No.:** 5 PB-0110
Grants and Contracts 2
**Amount:** $321,373

**Date(s):** 07/00/1999 - 07/00/2001
**PI/Co-PI:** Co-Investigator, Joy Melnikow, M.D., M.P.H. (Principal Investigator)
**Type:** Research
**Status:** Completed
**Title:** Tamoxifen Prevention of Breast Cancer: Acceptance and Cost-
Effectiveness
**Agency:** National Cancer Institute **Grant
No.:** R01 CA86043
**Amount:** $577,591
**Date(s):** 04/01/2000 - 03/31/2003
**PI/Co-PI:** Co-Investigator, Joy Melnikow, M.D., M.P.H. (Principal Investigator)
**Type:** Research
**Status:** Completed
**Title:** Song Brown Residency Programs, Special Project: Telemedicine and Rural
Health
**Agency:** State of CA, Office of Statewide Health Planning and Development, CA
Health Manpower Policy Comm.
**Grant No.:**
**Amount:** $66,540
**Date(s):** 07/01/2000 - 06/30/2002
**PI/Co-PI:** Principal Investigator
**Type:** Research
**Status:** Completed
**Title:** Academic Administrative Units in Primary Care
**Agency:** DHHS, Health Resources & Services Administration, Division of
Medicine
**Grant No.:**
**Amount:** $246,677
**Date(s):** 01/01/2001 - 12/31/2003
**PI/Co-PI:** Co-Investigator, Klea Bertakis, M.D., M.P.H. (Principal Investigator)
**Type:** Research
**Status:** Completed
**Title:** Residency Training in Family Medicine: Quality of Care Improvement
**Agency:** DHHS, Division of Medicine, Bureau of Health Professions
Grants and Contracts 3 **Grant No.:**
**Amount:** $420,000
**Date(s):** 07/01/2001 - 06/30/2004
**PI/Co-PI:** Principal Investigator
**Type:** Research
**Status:** Completed
**Title:** Academic Administrative Units Support: Development of a Network Family
Practice Research Consortium
**Agency:** DHHS, Division of Medicine, Bureau of Health Professions **Grant
No.:**
**Amount:** $266,411
**Date(s):** 09/01/2001 - 08/31/2004
**PI/Co-PI:** Co-Investigator, K. Bertakis, MD., MPH. (Principal Investigator)

**Type:** Research
**Status:** Completed
**Title:** Song-Brown Residency Program, Special Project, Obstetrics Quality of Care Project
**Agency:** State of California, Office of Statewide Health Planning and Development **Grant No.:**
**Amount:** $100,000
**Date(s):** 07/01/2002 - 06/30/2004
**PI/Co-PI:** Principal Investigator
**Type:** Research
**Status:** Completed
**Title:** Take Care to Learn: Teaching Clinical Care Management
**Agency:** Robert Wood Johnson Foundation, through the Partnership for Quality Education
**Grant No.:**
**Amount:** $315,000
**Date(s):** 01/01/2002 - 12/31/2003
**PI/Co-PI:** Principal Investigator
**Type:** Research
**Status:** Completed
**Title:** Song-Brown Family Physician Training Program
Grants and Contracts 4
**Agency:** California Office of Statewide Health Planning and Development, California
Health Manpower Policy Co
**Grant No.:** 02-54235
**Amount:** $103,230
**Date(s):** 07/01/2002 - 06/30/2005
**PI/Co-PI:** Principal Investigator
**Type:** Research
**Status:** Completed
**Title:** Song-Brown Family Physician Training Program
**Agency:** California Office of Statewide Health Planning and Development, California
Health Manpower Policy Co
**Grant No.:** 03-3018
**Amount:** $137,640
**Date(s):** 07/01/2003 - 06/30/2006
**PI/Co-PI:** Principal Investigator
**Type:** Research
**Status:** Completed
**Title:** Achieving Competence Today II (ACT)
**Agency:** Robert Wood Johnson Foundation **Grant No.:** 8016
**Amount:** $25,000
**Date(s):** 10/01/2004 - 06/30/2005
**PI/Co-PI:** Principal Investigator

**Type:** Research
**Status:** Completed
**Title:** Residency Training in Family Medicine: Aligning Curriculum with Core Competencies
**Agency:** DHHS, Division of Medicine, Bureau of Health Professions **Grant No.:**
**Amount:** $522,512
**Date(s):** 07/01/2004 - 06/30/2007
**PI/Co-PI:** Principal Investigator
**Type:** Research
**Status:** Completed
Grants and Contracts 5
**Title:** Residency Training in Primary Care
**Agency:** DHHS, Health Resources and Services Administration **Grant No.:** D58HP00231
**Amount:** $564,308
**Date(s):** 07/01/2004 - 06/30/2007
**PI/Co-PI:** Principal Investigator
**Goal:** 1. To redesign the Residency Program's evaluation system to determine if residents are achieving learning objectives and ACGME core competencies, and 2. to develop, implement, and evaluate new behavioral medicine curriculum that teaches how to promote health behavior changes with patients. **Type:** Research
**Status:** Completed
**Title:** Development of an Asthma patient registries and point of care tools in the EMR
**Agency:** Chester Robbins Endowment: Asthma **Grant No.:**
**Amount:** $30,000
**Date(s):** 07/01/2004 - 06/30/2006
**PI/Co-PI:** Principal Investigator
**Type:** Research
**Status:** Completed
**Title:** Patient Readiness to Change: targeted Interventions for Providers and Patients with Diabetes
**Agency:** California HealthCare Foundation **Grant No.:** 04-1320
**Amount:** $200,000
**Date(s):** 01/01/2005 - 04/30/2006
**PI/Co-PI:** Principal Investigator
**Type:** Research
**Status:** Completed
**Title:** UCDHS Chronic Disease Management Center
**Agency:** UCD Health System **Grant No.:**
**Amount:** $375,110
Grants and Contracts 6
**Date(s):** 07/01/2005 - 06/30/2006

**PI/Co-PI:** Principal Investigator
**Type:** Research
**Status:** Completed
**Title:** UCDHS Chronic Disease Management Center
**Agency:** UCD Health System **Grant No.:**
**Amount:** $448,034
**Date(s):** 07/01/2006 - 06/30/2007
**PI/Co-PI:** Principal Investigator
**Type:** Research
**Status:** Completed **Title:** Pay
for Performance **Agency:**
UCD Health System **Grant
No.:**
**Amount:** $59,635
**Date(s):** 07/01/2006 - 06/30/2007
**PI/Co-PI:** Principal Investigator
**Type:** Research
**Status:** Completed
**Title:** Pay for Performance **Agency:**
UCD Health System **Grant No.:**
**Amount:** $41,179
**Date(s):** 07/01/2007 - 05/30/2008
**PI/Co-PI:** Principal Investigator
**Goal:** To develop and distribute patient registries, reports and report cards for
UCDHS primary care physicians on patient care measures include in
the Pay for Performance program. Reports will be designed to provide
information on patients needing follow-up care that will result in improved Pay
for Performance outcome measures.
**Type:** Research
**Status:** Completed
**Title:** UCDHS Chronic Disease Management Center
Grants and Contracts 7 **Agency:**
UCD Health System **Grant No.:**
**Amount:** $445,068
**Date(s):** 07/01/2007 - 06/30/2008
**PI/Co-PI:** Principal Investigator
**Goal:** 1) To improve the health of patients with chronic illnesses seen in the UC
Davis Health System and 2) to develop a more effective and cost-efficient
system of delivering care to patients with chronic illnesses. Diseases targeted
initially include diabetes, asthma, congestive heart failure, and coronary artery
disease. **Type:** Research
**Status:** Completed
**Title:** Diabetes Self Management education via Telemedicine for Rural and
Underserved Populations **Agency:**
California Medical Board **Grant
No.:**
**Amount:** $1,213,521

**Date(s):** 07/01/2009 - 06/30/2010
**PI/Co-PI:** Principal Investigator, J. Nuovo (Principal Investigator)
**Goal:** The UCDHS Chronic Disease Management Program, in collaboration
with the UCDHS Center for Health and Technology, is developing a
telemedicine model for the provision of modern diabetes self-management
education and training classes for patients with diabetes living in a 33 county
area of rural, underserved communities in northern and central California.
**Type:** Research
**Status:** Completed
**Title:** Increasing Rural Community Engagement in Telehealth Research
**Agency:** NIH / National Center for Research Resources **Grant**
**No.:** UL1RR024146
**Amount:** $599,019
**Date(s):** 11/01/2009 - 10/31/2011
**PI/Co-PI:** Co-Investigator, L. Berglund (Principal Investigator)
**Goal:** The goal of this project is to test a model for improving healthy behaviors
among person with diabetes using telehealth encounters with nurse health
coaches for patients in rural and/or medically-underserved communities.
**Type:** Research
Grants and Contracts 8
**Status:** Completed


**Teaching Contact Hours**


| Summer 1996 | Lecture=3.00, Discussion=120.00, Lab=0.00, Clinic=104.00 |
| Fall 1996 | Lecture=2.00, Discussion=120.00, Lab=0.00, Clinic=98.00 |
| Winter 1997 | Lecture=3.00, Discussion=160.00, Lab=0.00, Clinic=98.00 |
| Spring 1997 | Lecture=3.00, Discussion=160.00, Lab=0.00, Clinic=98.00 |
| Summer 1997 | Lecture=2.00, Discussion=120.00, Lab=0.00, Clinic=98.00 |
| Fall 1997 | Lecture=2.00, Discussion=120.00, Lab=0.00, Clinic=98.00 |
| Winter 1998 | Lecture=4.00, Discussion=160.00, Lab=0.00, Clinic=98.00 |
| Spring 1998 | Lecture=4.00, Discussion=160.00, Lab=0.00, Clinic=98.00 |
| Summer 1998 | Lecture=4.00, Discussion=120.00, Lab=0.00, Clinic=98.00 |
| Fall 1998 | Lecture=4.00, Discussion=120.00, Lab=0.00, Clinic=98.00 |
| Winter 1999 | Lecture=4.00, Discussion=160.00, Lab=0.00, Clinic=98.00 |
| Spring 1999 | Lecture=4.00, Discussion=160.00, Lab=0.00, Clinic=98.00 |
| Summer 1999 | Lecture=4.00, Discussion=120.00, Lab=0.00, Clinic=98.00 |
| Fall 1999 | Lecture=4.00, Discussion=120.00, Lab=0.00, Clinic=98.00 |
| Winter 2000 | Lecture=4.00, Discussion=160.00, Lab=0.00, Clinic=98.00 |
| Spring 2000 | Lecture=4.00, Discussion=160.00, Lab=0.00, Clinic=98.00 |
| Summer 2000 | Lecture=4.00, Discussion=120.00, Lab=0.00, Clinic=98.00 |
| Fall 2000 | Lecture=4.00, Discussion=120.00, Lab=0.00, Clinic=98.00 |
| Winter 2001 | Lecture=4.00, Discussion=160.00, Lab=0.00, Clinic=98.00 |
| Spring 2001 | Lecture=4.00, Discussion=160.00, Lab=0.00, Clinic=98.00 |

Summer 2001      Lecture=4.00, Discussion=160.00, Lab=0.00, Clinic=98.00
Fall 2001        Lecture=4.00, Discussion=160.00, Lab=0.00, Clinic=98.00
Spring 2002      Lecture=4.00, Discussion=140.00, Lab=0.00, Clinic=98.00
Winter 2002      Lecture=4.00, Discussion=140.00, Lab=0.00, Clinic=98.00
Spring 2003      Lecture=4.00, Discussion=140.00, Lab=0.00, Clinic=98.00
Winter 2003      Lecture=4.00, Discussion=140.00, Lab=0.00, Clinic=98.00
Spring 2004      Lecture=4.00, Discussion=140.00, Lab=0.00, Clinic=98.00
Winter 2004      Lecture=4.00, Discussion=140.00, Lab=0.00, Clinic=98.00
Spring 2005      Lecture=4.00, Discussion=140.00, Lab=0.00, Clinic=98.00
Winter 2005      Lecture=4.00, Discussion=140.00, Lab=0.00, Clinic=98.00
Spring 2006      Lecture=4.00, Discussion=140.00, Lab=0.00, Clinic=98.00
Summer 2006      Lecture=4.00, Discussion=140.00, Lab=0.00, Clinic=98.00
Winter 2006      Lecture=4.00, Discussion=140.00, Lab=0.00, Clinic=98.00
Fall 2006        Lecture=4.00, Discussion=140.00, Lab=0.00, Clinic=98.00
Spring 2007      Lecture=4.00, Discussion=140.00, Lab=0.00, Clinic=98.00
Summer 2007      Lecture=4.00, Discussion=140.00, Lab=0.00, Clinic=98.00
Winter 2007      Lecture=4.00, Discussion=140.00, Lab=0.00, Clinic=98.00
Fall 2007        Lecture=4.00, Discussion=140.00, Lab=0.00, Clinic=98.00
Spring 2008      Lecture=4.00, Discussion=140.00, Lab=0.00, Clinic=98.00
Summer 2008      Lecture=4.00, Discussion=140.00, Lab=0.00, Clinic=98.00
Winter 2008      Lecture=4.00, Discussion=140.00, Lab=0.00, Clinic=98.00
Fall 2008        Lecture=4.00, Discussion=140.00, Lab=0.00, Clinic=98.00
Spring 2009      Lecture=4.00, Discussion=80.00, Lab=0.00, Clinic=98.00
Summer 2009      Lecture=4.00, Discussion=80.00, Lab=0.00, Clinic=98.00
Winter 2009      Lecture=4.00, Discussion=80.00, Lab=0.00, Clinic=98.00
Fall 2009        Lecture=4.00, Discussion=80.00, Lab=0.00, Clinic=98.00
Spring 2010      Lecture=4.00, Discussion=80.00, Lab=0.00, Clinic=98.00
Summer 2010      Lecture=4.00, Discussion=80.00, Lab=0.00, Clinic=98.00
Winter 2010      Lecture=4.00, Discussion=80.00, Lab=0.00, Clinic=98.00
Fall 2010        Lecture=4.00, Discussion=80.00, Lab=0.00, Clinic=98.00
2010-2011        Lecture=16.00, Discussion=80.00, Lab=0.00, Clinic=392.00
2011-2012        Lecture=16.00, Discussion=80.00, Lab=0.00, Clinic=392.00
2012-2013    Lecture=16.00, Discussion=80.00, Lab=0.00, Clinic=392.00 2013-
2014   Lecture=16.00, Discussion=80.00, Lab=0.00, Clinic=392.00

**Courses**

1996             Winter Quarter, Course Number=FAP400, Patient Evaluation,
                 Units=2, Undergraduate Count=0, Graduate Count=93
1997             Winter Quarter, Course Number=FAP400, Patient Evaluation,
                 Units=2, Undergraduate Count=0, Graduate Count=93
1997             Spring Quarter, Course Number=FAP400, Patient Evaluation,
                 Units=2, Undergraduate Count=0, Graduate Count=93
1998             Winter Quarter, Course Number=FAP400, Patient Evaluation,
                 Units=2, Undergraduate Count=0, Graduate Count=93

| 1998 | Spring Quarter, Course Number=FAP400, Patient Evaluation, Units=2, Undergraduate Count=0, Graduate Count=93 |
|------|------|
| 1999 | Winter Quarter, Course Number=FAP400, Patient Evaluation, Units=2, Undergraduate Count=0, Graduate Count=93 |
| 1999 | Spring Quarter, Course Number=FAP400, Patient Evaluation, Units=2, Undergraduate Count=0, Graduate Count=93 |
| 2000 | Winter Quarter, Course Number=FAP400, Patient Evaluation, Units=2, Undergraduate Count=0, Graduate Count=93 |
| 2000 | Spring Quarter, Course Number=FAP400, Patient Evaluation, Units=2, Undergraduate Count=0, Graduate Count=93 |
| 2001 | Winter Quarter, Course Number=FAP400, Patient Evaluation, Units=2, Undergraduate Count=0, Graduate Count=93 |
| 2001 | Spring Quarter, Course Number=FAP400, Patient Evaluation, Units=2, Undergraduate Count=0, Graduate Count=93 |
| 2002 | Spring Quarter, Course Number=FAP400, Patient Evaluation, Units=2, Undergraduate Count=0, Graduate Count=93 |
| 2003 | Winter Quarter, Course Number=FAP400, Patient Evaluation, Units=2, Undergraduate Count=0, Graduate Count=93, Percentage Effort=16 |
| 2003 | Spring Quarter, Course Number=FAP400, Patient Evaluation, Units=2, Undergraduate Count=0, Graduate Count=93, Percentage Effort=16 |
| 2004 | Winter Quarter, Course Number=FAP400, Patient Evaluation, Units=2, Undergraduate Count=0, Graduate Count=93, Percentage Effort=16 |
| 2004 | Spring Quarter, Course Number=FAP400, Patient Evaluation, Units=2, Undergraduate Count=0, Graduate Count=93, Percentage Effort=16 |
| 2005 | Winter Quarter, Course Number=MDS411, Doctoring 1, Undergraduate Count=0, Graduate Count=0 |
| 2005 | Spring Quarter, Course Number=MDS411, Doctoring 1, Undergraduate Count=0, Graduate Count=0 |
| 2006 | Winter Quarter, Doctoring 1, Undergraduate Count=0, Graduate Count=0 |
| 2006 | Spring Quarter, Doctoring 1, Undergraduate Count=0, Graduate Count=0 |
| 2007 | Winter Quarter, Doctoring 1, Undergraduate Count=0, Graduate Count=0 |
| 2007 | Spring Quarter, Doctoring 1, Undergraduate Count=0, Graduate Count=0 |

**Student Advising**

2003 - 2004  Number of undergraduates advisees: (0), Number of graduates advisees: (4)

2004 - 2005  Number of undergraduates advisees: (0), Number of graduates advisees: (4)

2005 - 2006  Number of undergraduates advisees: (0), Number of graduates advisees: (4)

2006 - 2007  Number of undergraduates advisees: (0), Number of graduates advisees: (3)

2007 - 2008  Number of undergraduates advisees: (400), Number of graduates advisees: (3)

2008 - 2009  Number of undergraduate advisees: (400), Number of graduate advisees: (3)

2009 - 2010  Number of undergraduate advisees: (400), Number of graduate advisees: (3)

2010 - 2011  Number of undergraduate advisees: (0), Number of graduate advisees: (3)

2011 - 2012  Number of undergraduate advisees: (0), Number of graduate advisees: (3)

2012 - 2013  Number of undergraduate advisees: (0), Number of graduate advisees: (3)

2013 - 2014  Number of undergraduate advisees: (0), Number of graduate advisees: (3)

2014 - 2015  Number of undergraduate advisees: (0), Number of graduate advisees: (3)

2015 - 2016  Number of undergraduate advisees: (0), Number of graduate advisees: (3)

2016 - 2017  Number of undergraduate advisees: (0), Number of graduate advisees: (3)

ROB BONTA
Attorney General of California
JANE ZACK SIMON
Supervising Deputy Attorney General
LAWRENCE MERCER
Deputy Attorney General
State Bar No. 111898
 455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
Telephone:  (415) 510-3488
Fax:  (415) 703-5480
E-mail: Larry.mercer@doj.ca.gov
*Attorneys for Petitioner and*
*Real Party in Interest*

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**01/14/2022**
**Clerk of the Court**
**BY: JACKIE LAPREVOTTE**
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO          **CPF-22-517660**

| | |
|---|---|
| **KIMBERLY KIRCHMEYER, DIRECTOR OF THE DEPARTMENT OF CONSUMER AFFAIRS, STATE OF CALIFORNIA,**<br><br>Petitioner,<br><br>v.<br><br>**DOUGLAS VERN HULSTEDT, M.D.,**<br><br>Respondent,<br><br><br>**WILLIAM PRASIFKA, EXECUTIVE DIRECTOR, MEDICAL BOARD OF CALIFORNIA,**<br><br>Real Party in Interest. | Case No.<br><br>**DECLARATION OF SPECIAL INVESTIGATOR CHRIS JENSEN IN SUPPORT OF PETITION FOR ORDER TO SHOW CAUSE AND ORDER COMPELLING COMPLIANCE WITH INVESTIGATIONAL SUBPOENA**<br><br>Date:<br>Time:<br>Dept: 302<br>Judge: Hon. Ethan P. Schulman<br>Trial Date: TBA<br>Action Filed: |

I, CHRIS JENSEN, declare that the following matters are true and correct:

1.     I am a Special Investigator in the Complaint Investigation Office (CIO), Medical

Board of California (Board), which investigates complaints received by the Board and obtains the

evidence necessary to determine whether physicians are violating the Medical Practice Act and

related laws regulating the practice of medicine in the State of California.

1

2.      In 2017, the Board began receiving complaints that school-aged children were obtaining exemptions from compulsory vaccinations based upon medical conditions that did not appear to be valid. The Board opened investigations in CIO to determine whether these exemptions violated the standard of care relating to immunization practices. Generally, these investigations are directed to obtaining the vaccine exemptions in question, relevant medical records and collateral information specific to the exempted child's medical condition.

3.      On July 8, 2021, the Board received a complaint from the natural mother (Mother) of a school-aged child (Patient 1). She stated that Patient 1 had received a vaccine exemption from Dr. Douglas Hulstedt (Respondent) against her wishes at the demand of her ex-husband, claiming a "family auto-immune" risk of adverse reactions. Thereafter, she advised that she and her husband divorced and, because Patient 1 needed to be vaccinated to attend school, she sought a court order that her son catch up on his vaccinations. Mother related that the parental dispute continued into 2021. Respondent served as father's expert witness in the court dispute. Mother relied on the child's treating pediatrician, who supported Mother's plan to have her son vaccinated and who stated that he had no medical contraindication to any vaccine. In a court order, the Family Court Judge ordered that, pending further proceedings, Patient 1 begin to catch up on his vaccinations. Tragically, the father murdered his son and killed himself the day after the Judge issued the order. Mother attributes her husband's state of mind, in part, to misinformation about vaccines and vaccine safety that Dr. Hulstedt provided.

4.      I was assigned to investigate Mother's complaint on July 22, 2021. In the file were documents provided by Mother, including the 2015 exemption issued by Respondent, Patient 1's pediatric records from his primary care physician, court hearing transcripts and a declaration from Respondent that stated the child should not be vaccinated.

5.      On October 4, 2021, I received from Mother a release for medical information, allowing the Board to obtain and review Respondent's records for Patient 1. A true copy of the release, with personal identifying information redacted, is attached to this declaration as Attachment A.

6. I sent the medical release to Respondent on October 4, 2021. On November 3, 2021, I received a letter from Respondent in which he conditioned his response to the request on 35 separate "conditions" that were in effect an absolute refusal to provide the requested information. A true and correct copy of Respondent's letter, dated October 22, 2021 is attached to this declaration as Attachment B.

7. In October and November 2021, I obtained Patient 1's medical records from the other physicians identified by his mother.

8. On November 18, 2021, Daniel Schuman, an Investigator with the Health Quality Investigation Unit, personally served Respondent with an investigational subpoena *duces tecum* for Patient 1's medical records. The production date for the records was December 20, 2021. A true and correct copy of the subpoena, with personal identifying information redacted, is attached to this declaration as Attachment C.

9. On November 24, 2021, I received a letter from Respondent that did not reference the subpoena, but purported to grant an additional three days to respond to the 35-condition letter he had previously sent. A true and correct copy of Respondent's letter is attached to this declaration as Attachment D.

10. Respondent did not produce the subpoenaed records on December 20, 2021 and I have not received any of Respondent's medical records for Patient 1 from him to this date.

11. In December 2021, I requested and received medical consultant review of the case materials from Dr. James Nuovo. Dr. Nuovo opined that Respondent's records were relevant and necessary to a determination whether his care of Patient 1 was at or below the standard of care.

Executed under penalty of perjury at Sacramento, California, on January 12 , 2022.

CHRIS JENSEN

3

DECLARATION OF SPECIAL INVESTIGATOR JENSEN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Attachment A

Release of Medical Information (Redacted)

DECLARATION OF SPECIAL INVESTIGATOR JENSEN



# MEDICAL BOARD
## OF CALIFORNIA

Protecting consumers by advancing high quality, safe medical care.

**Enforcement Program**
2005 Evergreen Street, Suite 1200
Sacramento, CA 95815-5401
Phone: (916) 263-2528
Fax: (916) 263-0741
www.mbc.ca.gov

Gavin Newsom, Governor, State of California | Business, Consumer Services and Housing Agency | Department of Consumer Affairs

October 4, 2021

ATTN: Custodian of Records
Douglas V. Hulstedt, MD
2511 Garden Road, Suite C-100
Monterey, CA 93940

Regarding:
Control #:              8002021079497
Dates of Service:       December 2014 to May 2017
Medical Record #:       Unknown

Dear Custodian of Records,

In accordance with the enclosed Authorization for Release of Medical Records and other forms, please forward a **CERTIFIED** copy of the medical, psychiatric and drug treatment records for the above-referenced patient to the Medical Board of California. These records are to be provided by **November 8, 2021,** and sent to the attention of:

> Chris Jensen, Special Investigator
> Medical Board of California
> 2005 Evergreen St., Suite 1200
> Sacramento, CA  95815-3831

The Medical Board of California is a regulatory law enforcement agency requesting these records for confidential review.   Please complete the enclosed Certification of Records/Declaration of Custodian of Records form to certify that the records are a true copy and a complete set and return it, and a copy of this letter, with the records to the address shown above.

Thank you for your cooperation in this matter.

Sincerely,

Chris Jensen
Special Investigator
(916) 561-8221

Enclosures: Signed Authorization for Release of Medical Records



Medical Board of California
## Authorization for Release of Information
## for the Subject of the Complaint

Enforcement Program
2005 Evergreen Street, Suite 1200
Sacramento, CA 95815-5401
Phone: (916) 263-2528
Fax: (916) 263-2435
www.mbc.ca.gov

## CHECK ALL RECORD TYPES THAT APPLY

☒ Medical Records           ☐ Diagnostic Images

☐ HIV/AIDS                  ☐ Alcohol/Drug Abuse

☐ Psychiatric

## PATIENT INFORMATION

Patient Name

Date of Birth

Date of Death (If applicable)

Medical Record Number (If known)

Control Number
8002021079497

Page 1 of 2

Authorization for Release of Information for the Subject of the Complaint   Page 2 of 2
Patient Name: ▮▮▮▮▮▮▮▮▮

I, the undersigned hereby authorize:

| Physician/Provider Douglas V. Hulstedt, MD | | | |
|---|---|---|---|
| Street Address 2511 Garden Road, Suite C-100 | | | |
| City Monterey | | State CA | Zip Code 93940 |
| Phone Number (831) 899-5900 | Treatment Date(s) December 2014 to May 2017 | | |

to disclose medical records in the course of my diagnosis and treatment to the **Medical Board of California, Enforcement Program,** a healthcare oversight agency. This disclosure of records authorized herein is required for official use, including investigation and possible administrative and/or criminal proceedings regarding any violations of the laws of the State of California. This authorization shall remain valid for three years from the date of signature. **A copy of this authorization shall be as valid as the original.** I understand that I have the right to receive a copy of this authorization if requested by me. I understand that I have a right to revoke this authorization by sending written notification to the Medical Board of California at the above address. My written revocation will be effective upon receipt by the Medical Board of California but will not be effective to the extent that such persons have acted in reliance upon this Authorization. I understand that the recipient of my information is not a health plan or healthcare provider and the released information may no longer be protected by federal privacy regulations. I am signing this authorization voluntarily and understand that treatment, payment, or my eligibility for benefits will not be affected if I do not sign this authorization.

| Patient Signature | - OR - | Date |
|---|---|---|
| ▮▮▮▮▮▮▮ Legal Representative Name | | *Mother* Relationship to Patient |
| ▮▮▮▮▮▮▮ Legal Representative Signature | | 9-21-21 Date |

**NOTE:** Failure by a physician, podiatrist, or healthcare provider to provide the requested records within 15 days, or a healthcare facility within 30 days, of receipt of this request and authorization may constitute a violation of Section 2225.5 of the Medical Practice Act and may result in further action by the Board.

**NOTICE:** A licensee that fails to provide the *certified* medical records within 15 days, or a health care facility within 30 days, of receipt of a request for certified medical records may constitute a violation of Sections 2225(d) and 2225.5 of the Medical Practice Act (copy enclosed) and may result in a civil penalty of $1,000 per day for each day that the documents have not been produced. "Certified medical records" is defined as "a copy of the patient's medical records authenticated by the licensee or health care facility, as appropriate, on a form prescribed by the board."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Attachment B

Letter dated October 22, 2021

DECLARATION OF SPECIAL INVESTIGATOR JENSEN

FROM: Doug Hulstedt                                      Registered mail # RF 108 463 497 US

c/o 2511 Garden Road Bldg C # 100

Monterey CA [93940]



Date: October 22, 2021

TO: Chris Jensen

c/o Medical Board of California

2005 Evergreen St,. Suite 1200

Sacramento CA 95815-3831

CONDITIONAL ACCEPTANCE

READ CAREFULLY

Regarding your NOTICE directed to me, dated October 4, 2021, I conditionally accept your offer to get me to comply and answer your questions, upon proof and satisfaction of the following points

1. Upon proof of claim that this is a proper venue for me to testify in, and further;

2. Upon proof of claim that you, Chris Jensen, a man, and your Agency do not lack lawful authority to force your way into my private life and tell me what to do, and further;

3. Upon proof of claim that I am not lawfully entitled to have an attorney or counselor of my choice present before any questioning takes place, and further;

4. Upon proof of claim that anything I say or the information you may obtain from me will not be used against me, and further;

5. Upon proof of claim that there is not a lack of evidence of a complaining party in this matter, and further,

6. Upon proof of claim that the information you are acting upon is not mere hearsay or that it is not erroneous or based upon a lie, and further,

7. Upon proof of claim that what you are asking me is not an attempt on your part to impose into my private affairs, which are not yours, and further,

8. Upon proof of claim that, as a matter of Right, I am not permitted to conduct my own private and/or commercial affairs as I see fit, and further,

9. Upon proof of claim that I am not a "natural born free Citizen" adult Constitutionally, aka USA National, of California State/Republic by birth, thus America, and a temporary inhabitant living in California State/Republic; and that I was not endowed by our Creator God with unalienable Rights, which are partially enumerated in America's founding organic documents, and further,

10. Upon proof of claim that I do not have and hold certain Constitutionally secured unalienable Rights, among which are, as articulated in the Bill of Rights: the Right to lawful due process; the right to be free from unreasonable searches & seizures; and the Right to be secure in my person, houses, papers, and effects, and further,

11. Upon proof of claim that I knowingly, willingly, and intentionally gave up any of my unalienable and Constitutionally secured Rights, and that I am not refusing to waive any, and further;

12. Upon proof of claim that you and/or others in or out of government did not fail to inform me that if I were to answer any of your questions or do something you / they wanted me to do, that I would be giving up any or all of my unalienable and Constitutionally secured Rights, and further,

13. Upon proof of claim that you are not in violation of the law by not acting upon lawful probable cause supported by a signed and sworn affidavit /complaint by an actual "injured party" who has come forth detailing the injury done unto them, and that you have not violated my rights by not doing so, and further,

14. Upon proof of claim that you are not in violation of Article IV of the Bill of Rights, as well as, my unalienable and Constitutionally secured Rights concerning unreasonable searches and seizures, and that I do not have a lawful right to be secure in my person, papers, and my house, and further,

15. Upon proof of claim that the Constitution for the United States of America is not the Supreme Law of the Land, and that you are not required to obey it, and further,

16. Upon proof of claim that you did not take an Oath of Office as prescribed by the State of California Constitution at ART. XX, Sec. 3, affirming that you will not violate any of my Rights, and further,

17. Upon proof of claim that you are not in violation of your Oath of Office for violating my Rights, and further,

18. Upon proof of claim that I do not have a lawful claim and cause of action against you for violating or attempting to violate my unalienable and Constitutionally secured Rights.

19. Upon proof of claim that California Government Code 11120 does not also say, "It is the public policy of this state that public agencies exist to aid in the conduct of the people's business and the proceedings of public agencies be conducted openly so that the public may remain informed."

20. Upon proof of claim that this country and our society is not based upon the "rule of law", and further;

21. Upon proof of claim that the California Appellate Court did not say in, Favot v. Kingsbury (App. 3 Dist. 1929) 98 Cal.App. 284, 276 P. 1083, "The State cannot divest or impair vested rights, whether by statute, ordinance, or constitutional amendment," and further;

22. Upon proof of claim that you are not denying me due process of law which I have a Right to, and further;

23. Upon proof of claim that I do not have a right to know how you and/or your agency obtained an equitable interest in my private property without my knowledge or consent, and further;

24. Upon proof of claim that what you are demanding of us is not an attempt on your part to impose into our private affairs, which is ours alone, and further;

25. Upon Proof of claim that you are not jumping the gun by getting involved at this point as the communication between me and Special Investigator Chris Jensen is still on-going and that I am not still awaiting a response from Chris Jensen to my CONDITIONAL ACCEPTANCE OF October 21, 2021, which he received, and further Upon proof of claim that both the Constitution for the United States of America and the Constitution of the State of California do not promote and support private property rights, and further;

26. Upon proof of claim that Chris Jensen silence concerning my CONDITIONAL ACCEPTANCE of October 21, 2021 does not equate with fraud, and that in the cases of U.S. v. PRUDDEN 424 F.2d 1021 and U.S.v. TWEEL 550 F.2d 297, 299, 300 (1977) the courts did not say or restate that, "Silence can only be equated with fraud when there is a legal and moral duty to speak or when an inquiry left unanswered would be intentionally misleading", and further;

27. Upon proof of claim that you and or the Medical Board of California are not lacking sufficient authority to "request for permission to access" my property

28. Upon proof of claim that you do not hold a Title of Nobility from a foreign power and that you do not serve the interests of that foreign power and or owe allegiance to that power, and that you are not involved in conspiracy, fraud, racketeering, violation of Oath of Office, treason, and that you have not taken any secret oath contrary to the Constitution, and further

29. Upon proof of claim that the California Appellate Court did not say, "As a general rule, men have a right to do anything which their inclinations may suggest, if it be not evil in itself, and in no way impairs the rights of others." IN RE NEWMAN 71 C.A. 386, 235 P. 664 (1925), and further;

30. Upon proof of claim that you and or the medical Board are not proceeding against me in denial of lawful due process which equates to a crime, and further;

31. Upon proof of claim that you and the Medical Board of California are not wholly lacking authority to use the law to compel performance or specific performance, and further

32. Upon proof of claim that it is not unconstitutional to issue and or act upon a Warrant that is not supported by Oath or Affirmation, and also that it is not unconstitutional, as well as not perjury for someone in the Medical Board of make an affirmation in order to fulfill the Fourth Amendment requirement to obtain a Warrant that is based on hearsay or a false witness, or lack of a witness, and further;

33. Upon proof of claim that you are not using threat, duress, and or coercion in an attempt to commit the unlawful acts of extortion, fraud, and violating my rights, and that these acts are not felonies, and further;

34. Upon proof of claim that this North Carolina Court did not say, "...every man is independent of all laws, except those prescribed by nature. He is not bound by any institutions formed by his fellow-men, without his consent." CRUDEN v NEALE 2 NC 338, 339 (1796), and further

35. BRITISH MEDICAL JOURNAL No 7070 Volume 313: Page 1448, 7 December 1996. Introduction The judgment by the war crimes tribunal at Nuremberg laid down 10 standards to which physicians must conform when carrying out experiments on human subjects in a new code that is now accepted worldwide. This judgment established a new standard of ethical medical behaviour for the post World War II human rights era. Amongst other requirements, this document enunciates the requirement of voluntary informed consent of the human subject. The principle of voluntary informed consent protects the right of the individual to control his own body. This code also recognizes that the risk must be weighed against the expected benefit, and that unnecessary pain and suffering must be avoided. This code recognizes that doctors should avoid actions that injure human patients. The principles established by this code for medical practice now have been extended into general codes of medical ethics. The Nuremberg Code (1947) Permissible Medical Experiments The great weight of the evidence before us to effect that certain types of medical experiments on human beings, when kept within reasonably well-defined bounds, conform to the ethics of the medical profession generally. The protagonists of the practice of human experimentation justify their views on the basis that such experiments yield results for the good of society that are unprocurable by other methods or means of study. All agree, however, that certain basic principles must be observed in order to satisfy moral, ethical and legal concepts: 1. The voluntary consent of the human subject is absolutely essential. This means that the person involved should have legal capacity to give consent; should be so situated as to be able to exercise free power of choice, without the intervention of any element of force, fraud, deceit, duress, overreaching, or other ulterior form of constraint or coercion; and should have sufficient knowledge and comprehension of the elements of the subject matter involved as to enable him to make an understanding and enlightened decision. This latter element requires that before the acceptance of an affirmative decision by the experimental subject there should be made known to him the nature, duration, and purpose of the experiment; the method and means by which it is to be conducted; all inconveniences and hazards reasonably to be expected; and the effects upon his health or person which may possibly come from his participation in the experiment. The duty and responsibility for ascertaining the quality of the consent rests upon each individual who initiates, directs, or engages in the experiment. It is a personal duty and responsibility which may not be delegated to another with impunity. 2. The experiment should be such as to yield fruitful results for the good of society, unprocurable by other methods or means of study, and not random and unnecessary in nature. 3. The experiment should be so designed and based on the results of animal experimentation and a knowledge of the natural history of the disease or other problem under study that the anticipated results justify the performance of the experiment. 4. The experiment should be so conducted as to avoid all unnecessary physical and mental suffering and injury. 5. No experiment should be conducted where there is an a priori reason to believe that death or disabling injury will occur; except, perhaps, in those experiments where the experimental physicians also serve as subjects. 6. The degree of risk to be taken should never exceed that determined by the humanitarian importance of the problem to be solved by the experiment. 7. Proper preparations should be made and adequate facilities provided to protect the experimental subject against even remote possibilities of injury, disability or death. 8. The experiment should be conducted only by scientifically qualified persons. The highest degree of skill and care should be required through all stages of the experiment of those who conduct or engage in the experiment. 9. During the course of the experiment

the human subject should be at liberty to bring the experiment to an end if he has reached the physical or mental state where continuation of the experiment seems to him to be impossible. 10.During the course of the experiment the scientist in charge must be prepared to terminate the experiment at any stage, if he has probable cause to believe, in the exercise of the good faith, superior skill and careful judgment required of him, that a continuation of the experiment is likely to result in injury, disability, or death to the experimental subject. For more information see Nuremberg Doctor's Trial, BMJ 1996;313(7070):1445-75

1. Your timely response (15 days) from your receipt of this Conditional Acceptance, must be in affidavit form, under your full commercial liability, rebutting each of the points of the undersigned, on a point-by-point basis, that the facts contained therein, are true, correct, complete and not misleading. Declarations are insufficient, as declarations permit lying by omission, which no honorable draft may contain.

With explicit reservation of all my unalienable and Constitutionally protected Rights, Privileges and

Immunities (Article 4:2:1), with none waived, and without prejudice.

Very Truly,

Douglas Hulstedt   *Douglas Hulstedt*   October 22, 2021

, In Sui Juris

Witness #1        Signature: *Rch Ull*        Date: *10-22-21*
                  Print: *Richard Dunnuck*

Witness #2        Signature: *Gloria Hover*        Date: *10-26-2021*
                  Print: *Gloria Chavez*

Witness #3        Signature: *Philip Guino*        Date: *10/27/21*
                  Print: *Philip Coniglio*

the human subject should be at liberty to bring the experiment to an end if he has reached the physical or mental state where continuation of the experiment seems to him to be impossible. 10.During the course of the experiment the scientist in charge must be prepared to terminate the experiment at any stage, if he has probable cause to believe, in the exercise of the good faith, superior skill and careful judgment required of him, that a continuation of the experiment is likely to result in injury, disability, or death to the experimental subject. For more information see Nuremberg Doctor's Trial, BMJ 1996;313(7070):1445-75

1. Your timely response (15 days) from your receipt of this Conditional Acceptance, must be in affidavit form, under your full commercial liability, rebutting each of the points of the undersigned, on a point-by-point basis, that the   facts contained therein, are true, correct, complete and not misleading. Declarations are insufficient, as  declarations permit lying by omission, which no honorable draft may contain.

With explicit reservation of all my unalienable and Constitutionally protected Rights, Privileges and Immunities (Article 4:2:1), with none waived, and without prejudice.

Very Truly,

Douglas Hulstedt   *Douglas Hulstedt*   October 22, 2021

, In Sui Juris

Witness #1   Signature: *Rich Dunl* , Date: 10-22-21
Print: *Richard Dunnuck*

Witness #2   Signature: *Gloria Chavez* Date: 10-26-2021
Print: *Gloria Chavez*

Witness #3   Signature: *Philip Gin o* Date: 10/27/21
Print: *PHILIP CONIGCIO*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Attachment C

Subpoena Duces Tecum

DECLARATION OF SPECIAL INVESTIGATOR JENSEN



**MEDICAL BOARD**
OF CALIFORNIA

*Protecting consumers by advancing high quality, safe medical care.*

Enforcement Program
2005 Evergreen Street, Suite 1200
Sacramento, CA 95815-5401
Phone: (916) 263-2528
Fax: (916) 263-0141
www.mbc.ca.gov

Gavin Newsom, Governor, State of California | Business, Consumer Services and Housing Agency | Department of Consumer Affairs

November 15, 2021

Douglas V. Hulstedt, MD
2511 Garden Road, Suite C-100
Monterey, CA 93940
Attn: Medical Records

RE:  Investigational Subpoena Duces Tecum          Case Number: 8002021079497

To whom it may concern:

Enclosed you will find a copy of an Investigational Subpoena Duces Tecum to
Produce Papers and Documents.  Please review the subpoena for medical records
for patient ████████████ and let me know if you have any questions or concerns.
I may be reached at (916) 561-8221 or via e-mail at christopher.jensen@mbc.ca.gov.

Thank you in advance for your assistance with this matter.

Sincerely,

Chris Jensen
Special Investigator

Enclosures: Investigational Subpoena Duces Tecum to Produce Papers and
Documents
          Attachment A1- Subpoena for Patient Medical Records

1  BEFORE THE DEPARTMENT OF CONSUMER AFFAIRS
   STATE OF CALIFORNIA

2

3  In the Matter of the Investigation of:          )
4                                                  )   INVESTIGATIONAL SUBPOENA
   Douglas V. Hulstedt, MD                         )
5                                                  )   DUCES TECUM TO PRODUCE
   Case Number 8002021079497                       )
                                                   )   PAPERS AND DOCUMENTS
6  To:  Custodian of Records                       )
7      Douglas V. Hulstedt, MD                     )
8                                                  )
       2511 Garden Road, Suite C-100               )
9                                                  )
       Monterey, CA 93940                          )

10

11      Pursuant to the federal Health Insurance Portability and Accountability Act (HIPAA) and the

12  powers conferred upon the Director of the Department of Consumer Affairs (DCA) of the State of

13  California as head of the DCA by Sections 11180 through 11191 of the Government Code of

14  California, which powers have been delegated by the said Director under Section 7 of the Government

15  Code to Supervising Special Investigator Rashya Henderson of the Medical Board of California, a

16  health oversight agency as defined in HIPAA.

17  **YOU ARE HEREBY COMMANDED** to appear before Special Investigator (SI)

18  Chris Jensen and/or any other duly authorized representative(s) of the Medical Board of California

19  Enforcement Program staff, at 1735 Technology Drive, Suite 800, San Jose, CA 95110, telephone

20  number (408) 437-3684 on the 20th day of  December, 2021, at the hour of 11:00 am, then and there

21  to testify and to answer questions propounded to you in connection with the above titled investigation

22  and to bring with you, and there produce, any and all writings as defined by Evidence Code section

23  250, including but not limited to, all the papers, books, accounts, documents and records described in

24  **the attached list**, regardless of the form in which they are kept, and including all electronic or

25  computer forms of records.

26

27

28

For purposes of this subpoena, all references to records and documentation includes, but is not limited to, production of minutes, notes, electronic communications, audio and video recordings, reports, findings, recommendations or evaluations, taken during any formal or informal conferences, discussions or meetings.

For failure to comply with the commands of this subpoena, you will be liable to the proceedings and penalties provided by law.

NOTICE: If you confirm with the SI Chris Jensen that the specific papers and documents commanded in this subpoena duces tecum have been, or will be, delivered or otherwise produced to SI Chris Jensen at 2005 Evergreen Street, Suite 1200, Sacramento, California 95815 *before* the time of your appearance, then you DO NOT need to appear. All patient medical records must be certified and must be accompanied by a completed and signed *Declaration of Custodian of Records* for each patient medical record, if applicable. If the records produced are not certified, you must personally appear on the date and time indicated.

If the identity of the patient is known to the Medical Board of California, we have attempted to obtain a signed authorization for the release of the patient medical records pursuant to the HIPAA. After service of this subpoena duces tecum, we will take steps to notify the patient in writing of our attempt to obtain their records through service of this subpoena.

If you have any questions, contact the SI Chris Jensen at (916) 561-8221 or christopher.jensen@mbc.ca.gov

Given under my hand this ___15th___ day of ___November___, 2021.

Rashya Henderson
Supervising Special Investigator
Department of Consumer Affairs
Medical Board of California
Enforcement Program

## ATTACHMENT A1

### SUBPOENA FOR PATIENT MEDICAL RECORDS

**A certified copy** of the complete medical record of the patient identified as ███████████, DOB ███████, for the period <u>December 2014 to May 2017</u>. The complete medical record includes, but is not limited to:

1.  all medical histories, treatment notes and records, physical examinations, test results, orders, prescription records, operative reports, consultation records, nursing notes;

2.  all x-ray films and reports, MRIs and reports, CT scans and reports, all laparoscopic images, reports and records;

3.  all pathology reports and laboratory data;

4.  all correspondence, doctor-patient agreements, memorandums, releases, telephone messages.

ENF-67 (Rev. 06/09)

BEFORE THE MEDICAL BOARD OF CALIFORNIA
DEPARTMENT OF CONSUMER AFFAIRS
STATE OF CALIFORNIA

In the matter of the Investigation of:

Douglas V. Hulstedt, MD

Case Number 8002021079497

To: Douglas V. Hulstedt, MD

    2511 Garden Road, Suite C-100

    Monterey, CA 93940

NOTICE AND
ACKNOWLEDGEMENT OF
INVESTIGATIONAL SUBPOENA

## NOTICE

This Investigational Subpoena Duces Tecum is served pursuant to California Government Code §11184 and Code of Civil Procedure §415.30. Failure to complete this form and return it to the sender within 20 days may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a subpoena upon you in any other manner permitted by law. If you are served on behalf of a corporation, unincorporated association (including a partnership) or other entity, this form must be signed in the name of such entity by you or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of a subpoena. Section 415.30 provides that this subpoena is deemed served on the date of execution of an acknowledgment of receipt of subpoena.

Dated: _____

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt on _____, 20_____ of a copy of the investigational subpoena.

_____        _____
      Signature                    Printed Name

ENF-23A (New 2/09)




MEDICAL BOARD OF CALIFORNIA
ENFORCEMENT PROGRAM

Complaint Investigation Office
2005 Evergreen St., #1200
Sacramento, CA 95815
(916) 263-2528 • FAX (916) 263-0141
www.mbc.ca.gov



Patient: ▮▮▮▮▮▮▮▮▮

Record No.:

Business Facility: Douglas V. Hulstedt, MD

Phone No.: (831) 333-1207

Address: 2511 Garden Road, Suite C-100

City/State: Monterey, CA          Zip: 93940

## CERTIFICATION OF RECORDS

To the best of my knowledge, the copied documents, records and other things enclosed herewith were and are prepared and maintained in the ordinary course of business by authorized persons or personnel of this business or facility at or near the time of the acts, conditions or events described by such records. The enclosed records of the business or facility are a true copy of the following records described in the patient authorization or subpoena duces tecum (check only one):

☐  the complete records consisting of _____ pages;

☐  the complete records for the period beginning _____ and ending _____

    _____ only, consisting of _____ pages;

☐  the completed records, except that the business or facility does not have the following:

    _____

    The copied records consist of _____ pages.

## CERTIFICATION OF NO RECORDS

☐  A thorough search of our files carried out under my direction and control revealed that this business or facility does not have the records described in the patient authorization or the subpoena duces tecum.

## DECLARATION OF CUSTODIAN OF RECORDS

I, the undersigned, am the duly authorized Custodian of Records of the above named business or facility. I am familiar with the mode of preparation of, and have the authority to certify, the business or facility records. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____          _____
Print Name and Title                              Signature

                                                  _____
                                                  Date

NOTICE:  A licensee that fails to provide the *certified* medical records within 15 days, or a health care facility within 30 days, of receipt of a request for certified medical records may constitute a violation of Section 2225.5 of the Medical Practice Act and may result in a civil penalty of $1,000 per day for each day that the documents have not been produced. "Certified medical records" is defined as "a copy of the patient's medical records authenticated by the licensee or health care facility, as appropriate, on a form prescribed by the board."

MBC CASE NO. 8002021079497

ENF-22 (REV. 1/10)

## MEDICAL BOARD OF CALIFORNIA
### DECLARATION OF SERVICE

Case Name: Douglas V. Hulstedt, MD                    Case No: 8002021079497

I declare that I am employed by the Medical Board of California in the County of Sacramento, California. I am over the age of eighteen years, and my business address is 2005 Evergreen Street, Sacramento, California, 95815. On November 15, 2021, I served the attached:

☐ Letter to Patient (ENF-20)
☐ Notice of Medical Consumers (ENF-21)
☐ Authorization for Release of Medical Information (ENF-27A)
☐ Authorization for Release of Alcohol and Drug Abuse Information (ENF-27B)
☐ Authorization for Release of Psychiatric Information (ENF-27C)
☐ Authorization for Release of HIV/AIDS Medical Information (ENF-27D)

☐ Letter advising patient of service of SDT for medical records along with the copy of Investigational Subpoena Duces Tecum (ENF-34)
☐ Letter advising patient that MBC has received their medical records

☐ Medical Records Request Compliance Advisory (ENF-31)
☒ Declaration of Custodian of Records (ENF-22)

☒ Investigational Subpoena Duces Tecum
☐ Investigational Subpoena to Appear and Testify
☐ Administrative Hearing Subpoena
☐ Other
☐ (list):

☒ By personal delivery and service of a true copy thereof to Douglas V. Hulstedt, MD. at the following address: 2511 Garden Road, Suite C-100, Monterey, CA 93940

☐ By placing a true copy thereof, along with a cover letter, a copy of which is also attached, Enclosed in a sealed envelope with postage fully prepaid, by Certified Mail, in the United States mail at Sacramento, California, to Douglas V. Hulstedt, MD, at the last known address.

Certified Mail No.: _____

☐ Courtesy copy to: _____

I declare under penalty of perjury the foregoing is true and correct, and this declaration was executed at

Sacramento, California, on November 15, 2021.

Chris Jensen, Special Investigator
          (Printed Name)                                      (Signature)

ENF-23 (REV. 2/10)

## DIVISION OF INVESTIGATION
## HEALTH QUALITY INVESTIGATION
## DECLARATION / PROOF OF SERVICE

Case Name: Douglas V. Hulstedt, M.D.                    Case No: 8002021079497

I declare that I am employed by the Division of Investigation in the County of Santa Clara        , California.
I am over the age of eighteen years, and my business address is: 1735 Technology Drive, Suite 800
San Jose                                        ,  California, 95110

On 11/18/2021, I served the attached (indicate all that apply):

☐ Letter to patient Requesting Medical Release (ENF-20A) with Consumer Information About Release of
   Medical Information (ENF-21)
☐ Letter to patient Re: Subpoena for Medical Records with Notice to Consumer and Objection (ENF-20B) and
   copy of Investigational Subpoena Duces Tecum
☐ Letter to patient advising DOI has received their medical records (ENF-20C) (includes ENF-20C Attachment
   – *Consumer Information about Release of Medical Records in Possession of DOI*)
☐ Authorization for Release of Medical Information (ENF-27)
☐ Medical Records Request Compliance Advisory (ENF-31)
☒ Declaration of Custodian of Records (ENF-22)
☐ Notice and Acknowledgement of Subpoena (ENF-23A)
☒ Investigational Subpoena Duces Tecum
☐ Investigational Subpoena to Appear and Testify
☐ Administrative Hearing Subpoena
☐ Other (list): _____

## Method of Service:

☒ By personal delivery and service of a true copy there of to Douglas V. Hulstedt, M.D.
   at the following address: 2511 Garden road, Suite C-100, Monterey, CA 93940

☐ By e-mailing a true copy thereof of the documents marked above as follows:
   Name of person served: _____
   Electronic service address of person served: _____
   My electronic service address is: _____

☐ By placing a true copy thereof, along with a cover letter, a copy of which is also attached,
   Enclosed in a sealed envelope with postage fully prepaid, by Certified Mail, in the United
   States Mail at _____,
   California, to _____
   at the last known address.  Certified Mail No.: _____

☐ Courtesy copy was also provided to: _____

I declare under penalty of perjury the foregoing is true and correct, and this Declaration was executed at

1735 Technology Drive, Suite 800, San Jose                    , California, on 11/18/2021

Daniel Schuman
            (Printed Name)                              (Signature)

ENF-23 (REV. 02/09/2021)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Attachment D

Letter received November 24, 2021

DECLARATION OF SPECIAL INVESTIGATOR JENSEN

Reg Mail RF 108 463 8 06 US



NOV 24 2021

MEDICAL BOARD OF CALIFORNIA
COMPLAINT INVES

## Courtesy notice

Doug Hulstedt

2511 Garden Road bldg. C #100

Monterey CA [93940}

To Chris Jensen alleged special investigator

C/O Medical Board of California

2005 Evergreen St., Suite 1200

Sacramento CA 95815-3831

Dear Mr. Jensen

Be it known that on October 3, 2021 I sent you a        conditional acceptance-special reply,      giving you 15 days to respond. Thus far I have not received your response.

Perhaps this is an oversight on your part or perhaps the Holidays interfered with you being able to give a timely response.

Therefore,, please accept my offer of an additional three (3) days, from the date of this COURTESY NOTICE- SPECIAL REPLY (Copy attached). Again, your response to me must be in "affidavit" form, under your full commercial liability, that the facts contained therin, are correct, complete and not misleading. Declarations are insufficient, as declarations permit lying by omission, which no honorable draft may contain.

I look forward to your timely response on or before November 22, 2021.

With explicit reservation of all my unalienable and constitutionally protected Rights, Privileges and Immunities ( article 4:2:1) with none waived , and without prejudice.

Very Truly , in Proper Person, Special, with assistance,

Douglas Hulstedt

In Sui Juris

Witness signature

Gloria Chavez

Witness signature

Lisatrita

EXHIBIT 4



# Superior Court of California, County of Monterey
# MINUTE ORDER

| | |
|---|---|
| Douglas-Vern Hulstedt<br>vs.<br>State Of California, et al.<br>22CV001522<br><u>Date of Hearing:  09/30/2022</u> | 8:30 AM Hearing: Motion |

Heard By:      Honorable  Carrie M. Panetta  ;          Location:   Department 14
Courtroom Reporter:     NOT REPORTED          Courtroom Clerk:   Sonia Olalia

**Parties Present:**

| | |
|---|---|
| Hsu, Cheryl Weni | Attorney for |
| VIA Court Call | Defendant |
| Hulstedt, Douglas-Vern | Plaintiff |

Case is regularly called for Defendant's Special Motion to Strike Plaintiff's Complaint Pursuant to Code of Civil Procedure Section 425.16.

Appearance on Plaintiff's behalf is stated as Beneficiary to Douglas-Vern Hulstedt.

Appearance stated as to Counsel for Defendant.

Arguments are presented.

First the court has not considered the new arguments made in the reply (those arguments should have been made in the Motion).

Second, Ruling on the Defendants' Objections:  Sustained as to the Timeline of History, the articles, and Exhibit R.  There was no Exhibit H submitted.  Objections are overruled as to the case and constitutional citations, and Plaintiff's unsworn statement and CV pursuant to Sweetwater Union High School Dist. v. Gilbane Building Co. (2019) 6 Cal.5th 931.  The court notes that for purposes of this motion, the court may consider evidence that may be admissible at trial, but cannot consider evidence that could never be admitted.

The court engages in a two-part analysis in determining Anti-SLAPP motions, set forth in the Sweetwater case.  The defendant must first establish that the challenged claim arises from activity protected by section 425.16.  Here, the defendant made the required showing that the activity is protected because it is made during a judicial proceeding or other official proceedings authorized by law.  See CCP section 425.16(e)(1) and (2).  Investigations and administrative review proceedings authorized by law qualify as official proceedings and of course, the San Francisco court action is a judicial proceedings.

This suit is based upon a judicial proceeding and official proceeding regarding obtaining a judicial subpoena for investigation.

The burden then shifted to the Plaintiff to demonstrate the merit of his claims by establishing a probability of success.  The alleged wrongful threats here appear to have occurred during the judicial proceeding to compel compliance with the investigational subpoena.  The litigation privilege of Civil Code section 47(b) applies, providing defendants with an absolute privilege protecting statements made in the course of judicial proceedings and precludes the use of such statements as a basis for all tort liability except malicious prosecution.



## Superior Court of California, County of Monterey
## MINUTE ORDER

Plaintiff s opposition was silent about the merits of the legal causes of action.

The motion to strike the complaint in its entirety is granted pursuant to Code of Civil Procedures section 425.16.

Minute Order shall serve as the Order After hearing.

**Dated:**   10/11/22

**Carrie M. Panetta, Judge of the Superior Court**

# EXHIBIT 5

**Douglas Vern Hulstedt**
**℅ 2511 Garden Road, Building-C #100**
**Monterey, California 93940**
**Tel: (831) 899-5900**
*Claimant/Witness/Beneficiary*
*Without Counsel at this Time*

*By-Registered-Mail #*
RE108580 935US

# BEFORE THE
# MEDICAL BOARD OF CALIFORNIA
# DEPARTMENT OF CONSUMER AFFAIRS
# STATE OF CALIFORNIA

In the Matter of the Accusation Against: )
)
**DOUGLAS VERN HULSTEDT, M.D.** )
)
*Respondent* )
)
)
_____ )
)
**Douglas Vern Hulstedt** )
)
*Claimant/Witness/Beneficiary* )
*Third-Party-Rule* )
)
)
_____ )
*NOTICE TO THE FIDUCIARIES; 18 U.S.C § 2071,* )
*Concealment, removal, or mutilation generally (a)* )
*Whoever, willfully and unlawfully conceals,* )
*removes, mutilates, obliterates, or destroys, or* )
*attempts to do so, or, with intent to do so takes and* )
*carries away any record, proceeding, map, book,* )
*paper, document, or other thing, filed or deposited* )
*with any clerk of officer of any court of the United* )
*States, shall be fined under this title or imprisoned* )
*not more than three years, or both.* )
*CalGovCode §6200/6201, CalPenCode § 135* )
)

**Case No. 800-2021-079497**

# NOTICE OF PENDING CLAIM

**EXHIBIT 1**

**METHOD OF PROCESS**

**CASE NO. 800-2021-079497** NOTICE OF PENDING CLAIM
Copyrighted-Works this document by the Douglas Vern Hulstedt

*NOTICE OF PENDING CLAIM* by accepting the "Valid" "Oath of Office" of any Public-Fiduciary-Trustee or **"Placeholder"** concerning this matter for the equal protections of the law with my Adoption of the Bill of Rights for the Due-Processes and by accepting the public record **"Official Bond"** or any other insurance-policies that may apply concerning fraud or employee misconduct/dishonesty and by entering and the making of this **special-appearance-visitation-notice** before this administrative-court as the Claimant/Witness/Beneficiary to protect my Beneficial Property Rights against Trespass or Breach of Fiduciary-Trust, "I", Douglas Vern Hulstedt, *a man* Claim this Notice of Pending Claim, acknowledgement, **EXHIBIT 1** and Method of Process for the **"Due-Process"** _Guaranteed by the Bill of Rights_. **NOTE:** The citation of state and federal statutes, codes, rules, regulations, and court citations, within any document-contract created by me, is only to notice my servants that which is applicable to them and is not intended, nor shall be construed, to mean that I confer, submit to, or have entered into any jurisdiction alluded to thereby, by the following; **NOTICE OF PENDING CLAIM, EXHIBIT 1, METHOD OF PROCESS;**

**ALL RIGHTS RESERVED WAIVE NONE**
**Adopter of the Bill of Rights**
**Reservations for Writ of Habeas Corpus**


Verified by: Douglas Vern Hulstedt
**Douglas Vern Hulstedt**
**Claimant/Witness/Beneficiary**
**Author/Publisher.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

CASE NO. 800-2021-079497 NOTICE OF PENDING CLAIM
Copyrighted-Works this document by the Douglas Vern Hulstedt

## SC-100

### Plaintiff's Claim and ORDER to Go to Small Claims Court

**Notice to the person being sued:**

- You are the defendant if your name is listed in ② on page 2 of this form or on form SC-100A. The person suing you is the plaintiff, listed in ① on page 2.
- You and the plaintiff must go to court on the trial date listed below. If you do not go to court, you may lose the case. If you lose, the court can order that your wages, money, or property be taken to pay this claim.
- Bring witnesses, receipts, and any evidence you need to prove your case.
- Read this form and all pages attached to understand the claim against you and to protect your rights.

**Aviso al Demandado:**

- Usted es el Demandado si su nombre figura en ② de la página 2 de este formulario, o en el formulario SC-100A. La persona que lo demanda es el Demandante, la que figura en ① de la página 2.
- Usted y el Demandante tienen que presentarse en la corte en la fecha del juicio indicada a continuación. Si no se presenta, puede perder el caso. Si pierde el caso, la corte podría ordenar que le quiten de su sueldo, dinero u otros bienes para pagar este reclamo.
- Lleve testigos, recibos y cualquier otra prueba que necesite para probar su caso.
- Lea este formulario y todas las páginas adjuntas para entender la demanda en su contra y para proteger sus derechos.

*Clerk stamps date here when form is filed.*

**ENDORSED**
**FILED**
**ALAMEDA COUNTY**

**OCT – 4 2022**

CLERK OF THE SUPERIOR COURT
By_____ **K Ghee** _____ Deputy

*Fill in court name and street address:*

**Superior Court of California, County of**
**Alameda Civil Small Claims**
**1225 Fallon Street**
**Oakland, California 94612**
**Tel: (510)-891-6003**

*Court fills in case number when form is filed.*

**Case Number:** 2ᵉˢᶜ **018927**

**Case Name:**
**Douglas Vern Hulstedt vs.**
**Thomas Ostly et. al. Does 1-20**

### Order to Go to Court

The people in ① and ② must attend court: *(Clerk fills out section below.)*

| | Date | Time | Department | Name and address of court, if different from above |
|---|---|---|---|---|
| **Trial Date** | 1. 2/8/23 | 1:30pm | 105 | 661 Washington St., Oakland |
| | 2. | | | |
| | 3. | | | |

Date: **OCT – 4 2022**   Clerk, by _____ **K Ghee** _____, Deputy

### Instructions for the person suing:

**Do not use this form to recover COVID-19 rental debt**, which is unpaid rent or other financial obligations under a tenancy due between March 1, 2020, and September 30, 2021. (See Code of Civil Procedure, §1179.02.) To recover COVID-19 rental debt, use form SC-500, *Plaintiff's Claim and ORDER to Go to Small Claims Court.*

- You are the plaintiff. The person you are suing is the defendant.
- **Before** you fill out this form, read form SC-100-INFO, *Information for the Plaintiff*, to know your rights. You can get form SC-100-INFO at any courthouse or county law library, or go to *www.courts.ca.gov/forms.*
- **Fill out pages 2, 3, and 4 of this form**. Make copies of all the pages of this form and any attachments—one for each party named in this case and an extra copy for yourself. Take or mail the original and the copies to the court clerk's office and pay the filing fee. The clerk will write the date of your trial in the box above. Your court may allow electronic filing. Check your local court website for information: *www.courts.ca.gov/find-my-court.htm.*
- You must have someone at least 18—not you or anyone else listed in this case—give each defendant a court-stamped copy of all pages of this form and any pages this form tells you to attach. There are special rules for "serving," or delivering, this form to public entities, associations, and some businesses. See forms SC-104, SC-104B, and SC-104C.
- **Go to court on your trial date listed above.** Bring witnesses, receipts, and any evidence you need to prove your case.

Judicial Council of California, *www.courts.ca.gov*
Rev. November 1, 2021, Mandatory Form
Code of Civil Procedure, §§ 116.110 et seq.,
116.220(c), 116.340(g)

**Plaintiff's Claim and ORDER to Go to Small Claims Court**

**SC-100**, Page 1 of 6



Plaintiff *(list names)*:   **Douglas Vern Hulstedt**

Case Number:

2 2 5 C 0 1 8 9 2 7

---

**① The plaintiff (the person, business, or public entity that is suing) is:**

Name:   **Douglas Vern Hulstedt**                    Phone:   **831-899-5900**

Street address:   **c/o 2511 Garden Road, #C-100   Monterey , California 93940**
                              *Street*                                    *City*                    *State*    *Zip*

Mailing address *(if different):*   **n/a**
                                            *Street*                        *City*                    *State*    *Zip*

Email address *(if available):*   **n/a**

**If more than one plaintiff, list next plaintiff here:**

Name:   **n/a**                                        Phone:

Street address:
                              *Street*                                    *City*                    *State*    *Zip*

Mailing address *(if different):*
                                            *Street*                        *City*                    *State*    *Zip*

Email address *(if available):*

☐ *Check here if more than two plaintiffs and attach form SC-100A.*
☐ *Check here if either plaintiff listed above is doing business under a fictitious name and attach form SC-103.*
☐ *Check here if any plaintiff is a "licensee" or "deferred deposit originator" (payday lender) under Financial Code sections 23000 et seq.*

**② The defendant (the person, business, or public entity being sued) is:**

Name:   **Thomas Ostly**                          Phone:   **n/a**

Street address:   **455 Golden Gate Avenues, # 11000, San Francisco, California 94102**
                              *Street*                                    *City*                    *State*    *Zip*

Mailing address *(if different):*
                                            *Street*                        *City*                    *State*    *Zip*

**If the defendant is a corporation, limited liability company, or public entity, list the person or agent authorized for service of process here:**

Name:                                        Job title, if known:

Address:
            *Street*                                    *City*                *State*    *Zip*

☒ *Check here if your case is against more than one defendant and attach form SC-100A.*
☐ *Check here if any defendant is on active military duty and write defendant's name here:*

**③ The plaintiff claims the defendant owes $ 10,000.00** . *(Explain below and on next page.)*
*(Note: A claim for COVID-19 rental debt cannot be made on this form. Use form SC-500, Plaintiff's Claim and ORDER to Go to Small Claims Court (COVID-19 Rental Debt).)*

a.  Why does the defendant owe the plaintiff money?
    Agreements after being given due process defendant Thomas Ostly refused to
    abide by his Oath of Office by not providing due process concerning my interest
    ~~in case no. 800-2021-079497 attached herein, this claim is entered for judgement~~
    ~~in favor of plaintiff as Thomas Ostly has agreed, order for claim for 10,000.00.~~

---

**SC-100A**   Other Plaintiffs or Defendants

Case Number: 22 SC 018927

[X] This form is attached to form SC-100, item 1 or 2.

**1** **If more than two plaintiffs (person, business, or entity suing), list their information below:**

Other plaintiff's name: _____

Street address: _____   Phone: _____

City: _____   State: _____   Zip: _____

Mailing address *(if different)*: _____

City: _____   State: _____   Zip: _____

*Is this plaintiff doing business under a fictitious name?* ☐ Yes ☐ No *If yes, attach form SC-103.*

Other plaintiff's name: _____

Street address: _____   Phone: _____

City: _____   State: _____   Zip: _____

Mailing address *(if different)*: _____

City: _____   State: _____   Zip: _____

*Is this plaintiff doing business under a fictitious name?* ☐ Yes ☐ No *If yes, attach form SC-103.*

☐ *Check here if more than 4 plaintiffs and fill out and attach another form SC-100A.*

**2** **If more than one defendant (person, business, or entity being sued), list their information below:**

Other defendant's name: **State of California *as Guarantor***

Street address: **1300 "I" Street**   Phone: _____

City: **Sacramento**   State: **CA**   Zip: **95814**

Mailing address *(if different)*: _____

City: _____   State: _____   Zip: _____

*If this defendant is a corporation, limited liability company, or public entity, list the person or agent authorized for service of process:*

Name: **Rob Bonta**   Job title, if known: **Attorney General**

Address: **1300 "I" Street**

City: **Sacramento**   State: **CA**   Zip: **95814**

☐ *Check here if your case is against more than two defendants, and fill out and attach another form SC-100A.*

**3** **Is your claim for more than $2,500?** [X] Yes   ☐ No

*If yes, I have not filed, and understand that I cannot file, more than two small claims cases for more than $2,500 in California during this calendar year.*

**4** **I understand that by filing a claim in small claims court, I have no right to appeal this claim.**

I declare under penalty of perjury under California state law that the information above and on any attachments to this form is true and correct.

Date: _____

**Douglas Vern Hulstedt**   *Douglas Vern Hulstedt* (signature)

Type or print your name   *Sign your name*

Date: _____

Type or print your name   *Sign your name*

Judicial Council of California, *www.courts.ca.gov*
Revised January 1, 2017, Mandatory Form
Code of Civil Procedure, § 116.110 et seq.

**Other Plaintiffs or Defendants**
(Attachment to Plaintiff's Claim and ORDER
to Go to Small Claims Court)

SC-100A, Page 2 of 2

| **SC-100A** | **Other Plaintiffs or Defendants** | **Case Number:** ZZSC 018927 |

☒ This form is attached to form SC-100, item 1 or 2.

**(1) If more than two plaintiffs (person, business, or entity suing), list their information below:**

Other plaintiff's name: _____

Street address: _____ Phone: _____

City: _____ State: _____ Zip: _____

Mailing address *(if different)*: _____

City: _____ State: _____ Zip: _____

Is this plaintiff doing business under a fictitious name? ☐ Yes ☐ No *If yes, attach form SC-103.*

Other plaintiff's name: _____

Street address: _____ Phone: _____

City: _____ State: _____ Zip: _____

Mailing address *(if different)*: _____

City: _____ State: _____ Zip: _____

Is this plaintiff doing business under a fictitious name? ☐ Yes ☐ No *If yes, attach form SC-103.*

☐ Check here if more than 4 plaintiffs and fill out and attach another form SC-100A.

**(2) If more than one defendant (person, business, or entity being sued), list their information below:**

Other defendant's name: **United States *as Guarantor* c/o *Officer in Charge***

Street address: **450 Golden Gate Avenue, #20** Phone: _____

City: **San Francisco** State: **CA** Zip: **94102**

Mailing address *(if different)*: _____

City: _____ State: _____ Zip: _____

*If this defendant is a corporation, limited liability company, or public entity, list the person or agent authorized for service of process:*

Name: **Merrick Garland** Job title, if known: **Attorney General**

Address: **950 Pennsylvania Ave. NW**

City: **Washington** State: **DC** Zip: **20530**

☒ *Check here if your case is against more than two defendants, and fill out and attach another form SC-100A.*

**(3) Is your claim for more than $2,500?** ☒ Yes ☐ No

*If yes, I have not filed, and understand that I cannot file, more than two small claims cases for more than $2,500 in California during this calendar year.*

**(4) I understand that by filing a claim in small claims court, I have no right to appeal this claim.**

I declare under penalty of perjury under California state law that the information above and on any attachments to this form is true and correct.

Date: _____

**Douglas Vern Hulstedt**

Type or print your name          *Sign your name*

Date: _____

Type or print your name          *Sign your name*

Judicial Council of California, www.courts.ca.gov
Revised January 1, 2017, Mandatory Form
Code of Civil Procedure, § 116.110 et seq.

**Other Plaintiffs or Defendants**
(Attachment to Plaintiff's Claim and ORDER to Go to Small Claims Court)

SC-100A, Page 1 of 2

Plaintiff *(list names):*   **Douglas Vern Hulstedt**

Case Number:
2Z SC O18927

---

**(3)** b.  When did this happen? *(Date):* _____

If no specific date, give the time period: *Date started:* **August 1, 2022** *Through:*   **Current**

c.  How did you calculate the money owed to you? *(Do not include court costs or fees for service.)*
**Maximum amount in Civil Small Claims**

_____
_____
_____

☐ *Check here if you need more space. Attach one sheet of paper or form MC-031 and write "SC-100, Item 3" at the top.*

**(4)** **You must ask the defendant (in person, in writing, or by phone) to pay you before you sue. If your claim is for possession of property, you must ask the defendant to give you the property. Have you done this?**

☒ Yes    ☐ No    If no, explain why not:
**See proof by Attachment**
_____
_____

**(5)** **Why are you filing your claim at this courthouse?**
**This courthouse covers the area** *(check the one that applies):*

a.  ☒ (1) Where the defendant lives or does business.     (4) Where a contract (written or spoken) was made,
(2) Where the plaintiff's property was damaged.         signed, performed, or broken by the defendant *or*
(3) Where the plaintiff was injured.                    where the defendant lived or did business when the
defendant made the contract.

b.  ☐  Where the buyer or lessee signed the contract, lives now, or lived when the contract was made, if this claim, is about an offer or contract for personal, family, or household goods, services, or loans. (Code Civ. Proc., § 395(b).)

c.  ☐  Where the buyer signed the contract, lives now, or lived when the contract was made, if this claim is about a retail installment contract (like a credit card). (Civ. Code, § 1812.10.)

d.  ☐  Where the buyer signed the contract, lives now, or lived when the contract was made, or where the vehicle is permanently garaged, if this claim is about a vehicle finance sale. (Civ. Code, § 2984.4.)

e.  ☐  Other *(specify):* _____
_____

**(6)** **List the zip code of the place checked in (5) above** *(if you know):*   **94612** _____

**(7)** **Is your claim about an attorney-client fee dispute?** ☐ Yes   ☒ No
*If yes, and if you have had arbitration, fill out form SC-101, attach it to this form, and check here:* ☐

**(8)** **Are you suing a public entity?** ☒ Yes   ☐ No
*If yes, you must file a written claim with the entity first.* ☒ A claim was filed on *(date):*  **September 26, 2022**
*If the public entity denies your claim or does not answer within the time allowed by law, you can file this form.*

---

→

Plaintiff *(list names):*   **Douglas Vern Hulstedt**

**Case Number:**

ZZ SC O18927

---

(9) **Have you filed more than 12 other small claims within the last 12 months in California?**
☐ Yes   ☒ No   *If yes, the filing fee for this case will be higher.*

(10) **Is your claim for more than $2,500?**   ☒ Yes   ☐ No
*If you answer yes, you also confirm that you have not filed, and you understand that you may not file, more than two small claims cases for more than $2,500 in California during this calendar year.*

(11) **I understand that by filing a claim in small claims court, I have no right to appeal this claim.**

I declare under penalty of perjury under the laws of the State of California that the information above and on any attachments to this form is true and correct.

Date:   Sept 30 2022

**Douglas Vern Hulstedt**
*Plaintiff types or prints name here*

▶ *Plaintiff signs here*

Date:

*Second plaintiff types or prints name here*

▶ *Second plaintiff signs here*

## See Proof by Attachment as follows;



**Requests for Accommodations**
Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least five days before the trial. For these and other accommodations, contact the clerk's office for form MC-410, *Disability Accommodation Request.* (Civ. Code, § 54.8.)

---



# ATTACHMENT

**DOUGLAS VERN HULSTEDT, MD**
c/o 2511 Garden Road, Building – C #100
Monterey, California 93940
Phone (831) 899-5900

# TRUE BILL – INVOICE # 1

DATED: September 24, 2022

**Bill To:**
Thomas Ostly *an Attorney as Lien Debtor*
United States *as Guarantor*
State of California *as Guarantor*
455 Golden Gate Avenues, Suite 11000
San Francisco, California 94102
By Certified-Mail # 70220410000174541914

Comments: Reference Cases # 800-2021-079497, See 6 page Attachment-Admissions

| DESCRIPTION OF DISHONORABLE ACTS BY A FIDUCIARY | UNIT PRICE | AMOUNT |
|---|---|---|
| DECEPTIVE PRACTICES AND PROCEDURES 15 USC § 45 | | $10,000.00 |
| PERJURY OF OATH 18 USC § 1621 | | |
| HONEST SERVICES FRAUD 18 USC § 1346 | | |
| SIMULATED LEGAL PROCESS CAL.CIV. CODE § 1788.16 VIA UNITED STATES POST OFFICE/WIRE 18 USC § 1343 | | |
| DEPRIVATION OF RIGHTS UNDER COLOR OF LAW 18 USC § 241, 242 | | |
| REFUSAL TO PROVIDE DUE PROCESS DISCOVERY 5th AMENDMENT VIOLATIONS SEE VERIFIED ATTACHMENTS 1-6 | | |
| CONSPIRACY ACTING TO DEPRIVE RIGHTS 42 § 1985 | | |
| To: "United States" *as Guarantor* c/o Attorney General/Merrick Garland 950 Pennsylvania Ave., NW Washington, DC 20530 By Certified-Mail # 70220410000174542058 | | |
| To: "State of California" *as Guarantor* c/o Attorney General/Rob Bonta 1300 "I" Street Sacramento, California 95814 By Certified-Mail # 70220410000174542054 | | |
| | | |
| Take Notice of 28 USC §§ 1346, 1491 and "Tucker Act of 1887" as Sovereign Immunity Waiver | | |
| PRE NOTICE ATTEMPT TO SETTLE FOR VIOLATION OF RIGHTS | | |
| **TOTAL Past Due 3 Day Settlement-Agreement DUE upon Receipt** | | $10,000.00 |
| SEE ADDITIONAL NOTICED BY METHOD OF PROCESS | | |

Make Payment to Douglas Vern Hulstedt
If you have any questions concerning this True-Bill/Invoice
Contact Douglas Vern Hulstedt *as Creditor* at (831) 899-5900

# ATTACHMENTS 1-6

# ATTORNEY'S OATH OF OFFICE

## CALIFORNIA BUSINESS AND PROFESSIONS CODE

**6067.  Oath.**  Every person on his admission shall take an oath to support the Constitution of the United States and the Constitution of the State of California, and faithfully to discharge the duties of any attorney at law to the best of his knowledge and ability. A certificate of the oath shall be indorsed upon his license. (Added by Stats. 1939, c 34. p. 354, Sec. 1.)

# Cal. R. 9.7

As amended through June 15, 2022

Rule 9.7 - Oath required when admitted to practice law

In addition to the language required by Business and Professions Code section 6067, the oath to be taken by every person on admission to practice law is to conclude with the following: "As an officer of the court, I will strive to conduct myself at all times with dignity, courtesy and integrity."

*Cal. R. Ct. 9.7*

1  **Douglas Vern Hulstedt**
2  **% 2511 Garden Road, Building-C #100**
   **Monterey, California 93940**                    *By-Registered-Mail #*
3  **Tel: (831) 899-5900**                             *RE527008721US*
   *Claimant/Witness/Beneficiary*
4  *Without Counsel at this Time*                    **DEFAULT**

5

6

7                           **BEFORE THE**
8               **MEDICAL BOARD OF CALIFORNIA**
               **DEPARTMENT OF CONSUMER AFFAIRS**
9                     **STATE OF CALIFORNIA**

10

11

12  In the Matter of the Accusation Against: )      **Case No. 800-2021-079497**
                                            )
13  DOUGLAS VERN HULSTEDT, M.D.             )
                                            ) **RE: STATEMENT TO RESPONDENT**
14          *Respondent*                    )   [Gov. Code §§ 1504, 11505(b)]
                                            )
15                                          )
                                            )          **"VERIFIED"**
16  _____ )
                                            )
17      **Douglas Vern Hulstedt**           )      **NOTICE OF REQUEST FOR**
                                            )   **DISCLOSURES PRE HEARING TO**
18      *Claimant/Witness/Beneficiary*      )   **KNOW THE NATURE AND CAUSE**
19          *Third-Party-Rule*              )    **BY THE DUE PROCESS BY THE**
                                            )    **NUMBER POINTS 1 THRU 28,**
20  _____ )     **ADMISSIONS OR DENIALS,**
21  *NOTICE TO THE FIDUCIARIES; 18 U.S.C § 2071,* )  **REQUEST PLACED ON RECORD**
    *Concealment, removal, or mutilation generally (a)* )  **BEFORE THE FIDUCIARIES, I.E.**
22  *Whoever, willfully and unlawfully conceals,* )   **ATTORNEYS MAKING CLAIMS**
    *removes, mutilates, obliterates, or destroys, or* )  **CONCERNING THIS MATTER**
23  *attempts to do so, or, with intent to do so takes and* ) **WHICH IS A MIS-UNDERSTANDING**
    *carries away any record, proceeding, map, book,* )     **BY BOTH SIDES AND**
24  *paper, document, or other thing, filed or deposited* )
    *with any clerk of officer of any court of the United* ) **UNINTENTIONAL BY ME AS TO MY**
25  *States, shall be fined under this title or imprisoned* )  **BENEFICIAL INTERESTS**
26  *not more than three years, or both.* )
                                            )
27  _____ )

28

Page 1

CASE NO. 800-2021-079497 NOTICE OF REQUEST FOR DISCLOSURES PRE HEARING
Copyrighted-Works this document by the Douglas Vern Hulstedt

1 | **Douglas Vern Hulstedt**
2 | ℅ **2511 Garden Road, Building-C #100**
   | **Monterey, California 93940**
3 | **Tel: (831) 899-5900**
   | *Claimant/Witness/Beneficiary*
4 | *Without Counsel at this Time*
5 |
6 |

*By-Registered-Mail #*
*RE527008735US*

*DEFAULT*

7 |
8 | **BEFORE THE**
   | **MEDICAL BOARD OF CALIFORNIA**
9 | **DEPARTMENT OF CONSUMER AFFAIRS**
   | **STATE OF CALIFORNIA**
10 |
11 |
12 | In the Matter of the Accusation Against:                **Case No. 800-2021-079497**
13 | DOUGLAS VERN HULSTEDT, M.D.
14 |                                                         **RE: STATEMENT TO RESPONDENT**
   |            *Respondent*                                 [Gov. Code §§ 1504, 11505(b)]
15 |
16 |                                                         **"VERIFIED"**
   |                                                         **[MOTION/NOTICE]**
17 |       **Douglas Vern Hulstedt**                         **LAWFUL DIRECTION IN THE FORM**
   |                                                         **OF A MOTION DELIVERED TO**
18 |       *Claimant/Witness/Beneficiary*                    **THOMAS OSTLY AN ATTORNEY**
19 |       *Third-Party-Rule*                                **FOR THE RETURN OF EVIDENCE**
   |                                                         **ON THE RECORD TO PROVIDE**
20 |                                                         **DUE-PROCESS AND PROVE THE**
   |                                                         **ENACTING CLAUSES AS**
21 | *NOTICE TO THE FIDUCIARIES; 18 U.S.C § 2071,*           **MANDATED BY THE CALIFORNIA**
22 | *Concealment, removal, or mutilation generally (a)*     **CONSTITUTION FOR THE CLAIMS**
   | *Whoever, willfully and unlawfully conceals,*           **MADE AGAINST MY BENEFICIAL**
23 | *removes, mutilates, obliterates, or destroys, or*      **INTERESTS TO BE RETURNED**
   | *attempts to do so, or, with intent to do so takes and* **WITHIN 15 DAYS WITH**
24 | *carries away any record, proceeding, map, book,*       **VERIFICATION BY THIS**
25 | *paper, document, or other thing, filed or deposited*   **JURISDICTION INQUIRY**
   | *with any clerk of officer of any court of the United*
26 | *States, shall be fined under this title or imprisoned*
   | *not more than three years, or both.*                   **MEMORANDUM OF LAW**
27 |
28 |

Page 1

## ATTORNEY / CLIENT CONTRACT

**1. PARTIES:** This one (1) page contract is between the below-named Licensed Attorney and Client. Attorney has a valid license to practice law in the appropriate jurisdiction(s). Attorney agrees to provide Client a copy of said license upon request. Attorney knows and understands the law and has sworn to uphold it. Attorney has no conflict of interest. Attorney shall act and conduct themselves in good faith at all times, whilst prioritizing the Clients best interests in higher honor than any adversarial party(s).

**2. DUTIES:** Attorney knowingly and fully agrees to:

    a. **[check one]( )** Zealously represent Client within the bounds of the law
            ( ) Provide Client with assistance of counsel, in the matter of:

    **Case or Cause Number:** _____ ("the Business").
    All work shall be done timely and in a professional workman like manner.

    b. Protect all Client's Constitutional and other rights, including ones Client is not aware of. Attorney agrees to provide a complete list of Client's rights upon request.

    c. Abide by all applicable laws, Administrative Rules, Rules of Conduct, Ethical Rules and Court Rules. Any deviation or violation of any law or rule constitutes a breach of this contract.

    d. Client agrees to timely pay Attorney's retainer, fees and expenses in:
    **[check one] ( )** lawful money of the United States ( ) Federal Reserve Notes

**3. TIME LIMIT:** This contract shall go into effect immediately upon signature and is revocable by either party immediately upon notice to the other party. If Attorney revokes this contract before completing any work, the retainer shall be immediately refunded.

**4. CONSIDERATION:** Consideration shall consist of Attorney's retainer fee in the sum of $_____, paid in: **[check one]** ( ) lawful money of the United States ( ) Federal Reserve Notes.

**5. NOT AN ADHESION CONTRACT:** The terms of this contract are not dictated by a party with superior bargaining power, but are negotiable. (Client does not have superior bargaining power. Attorney possesses superior bargaining power due to their membership in a labor union called the Bar Association, their special status, and their knowledge of the law, court, court procedure/proceedings.) If Attorney objects to any clause, or part thereof, Attorney shall provide as part of the negotiating process, a written explanation to which clause or clauses is/are not acceptable.

**Printed Name:** _____    **Printed Name:** _____

X_____    _____   X_____   _____
(Attorney)                 (date)     (Client)             (date)

# Tucker Act

Under the Tucker Act of 1887, the United States waived its sovereign immunity as to certain kinds of claims. Although the government is immune to lawsuits as a general rule, the Tucker Act exposes the government to liability for certain claims. Specifically, the Act extended the original Court of Claims' jurisdiction to include claims for liquidated or unliquidated damages arising from the Constitution (including takings claims under the Fifth Amendment), a federal statute or regulation, and claims in cases not arising in tort. The relevant text of the Act is codified in 28 U.S.C. §§ 1346(a) and 1491.

Specifically, the Tucker Act permits three kinds of claims against the government: (1) contractual claims, (2) noncontractual claims where the plaintiff seeks the return of money paid to the government and (3) noncontractual claims where the plaintiff asserts that he is entitled to payment by the government.

Today, jurisdiction over Tucker Act claims is vested in the United States Court of Federal Claims. The United States Court of Federal Claims has exclusive jurisdiction over Tucker Act claims in excess of $10,000, while another statutory grant of jurisdiction—the so-called "Little Tucker Act"—allows the court to entertain similar suits against the United States for claims of less than $10,000 concurrently with the federal district courts. Prior to the passage of the Federal Courts Improvement Act of 1982, however, this jurisdiction was vested in the original U.S. Court of Claims.

- United States Court of Federal Claims
- 28 U.S.C. § 1491
- Wex...United States Court of Federal Claims

- wex

# METHOD OF PROCESS-ADDITIONAL NOTICED

In the California state, of the Monterey county. I, the undersigned, herein declare that I am over the age of eighteen years and NOT a party to the within entitled action. My business address is:

_1180 Soreat Ave *8 Pacific Cerone California 93950_

I hereby declare under the penalty of perjury of the California Republic and The United States of America (unincorporated) that I served the foregoing document as entitled: on the party(s) by mailing with the Post Office maintained by the United States, Post Office with postage paid, titled and addressed as follows and or by file stamp/banking postmasters; **TRUE-BILL/INVOICE # 1;**

**State Bar Court of California**
**c/o Bar Grievance against an Attorney Thomas Ostly**
180 Howard Street
San Francisco, California 94105
**By Certified-Mail #** _70220410000174542003_

**United States Attorney Executive Office**
**c/o Executive Officer _in_ Charge**
450 Golden Gate Ave. #20
San Francisco, California 94102
**By Certified-Mail #** _70220410000174542010_

**Office of Administrative Hearings**
**c/o Clerk of Administrative-Court**
**1515 Clay Street, Suite 206**
**Oakland, California 94612**
**By Certified-Mail #** _70220410000174542027_

I declare under the penalty of perjury of the Laws of the California Republic and The United States of America (unincorporated) that the foregoing is correct and complete to the best of my knowledge, information and belief, and that this process is executed by the voluntary act of my own hand on Monterey county and is dated below;

Date: _September 26-2022_

By: _Gloria Chavez_

# METHOD OF PAYMENT ACCEPTED

## CHECK ALL THAT APPLY

### Payable to: Douglas Vern Hulstedt

1. Lien Debtor -Thomas Oslty to make payment by Postal Money Orders for
   $10,000.00;

2. Lien Debtor – Thomas Ostly "Collateral-Assets" Property known as his personal
   residence in which he agrees to put up for payment of $10,000.00 after order given
   to Sheriff for sale to satisfy his debt;

3. United States *as Guarantor* to satisfy by Insurance coverage;

4. State of California *as Guarantor* to satisfy by Insurance coverage;

5. State Bar of California *as Guarantor* to satisfy by Insurance coverage by policy
   #209234

6. Lien Debtor – Thomas Ostly to be Disbarred and Charged for Perjury of Oath et.
   al. in his continued attempts to overthrow the government;

## SC-100    Information for the defendant (the person being sued)

**"Small claims court"** is a special court where claims for $10,000 or less are decided. Individuals, including "natural persons" and sole proprietors, may claim up to $10,000. Corporations, partnerships, public entities, and other businesses are limited to claims of $5,000. (See below for exceptions.*) The process is quick and cheap. The rules are simple and informal. You are the *defendant*—the person being sued. The person who is suing you is the *plaintiff*.

**Do I need a lawyer?** You may talk to a lawyer before or after the case. But you *may not* have a lawyer represent you in court (unless this is an appeal from a small claims case).

**How do I get ready for court?** You don't have to file any papers before your trial, unless you think this is the wrong court for your case. But bring to your trial any witnesses, receipts, and evidence that support your case. And read "Be Prepared for Your Trial" at *www.courts.ca.gov/smallclaims/prepare.*

**What if I need an accommodation?** If you have a disability or are hearing impaired, fill out form MC-410, *Disability Accommodation Request*. Give the form to your court clerk or the ADA/Access Coordinator.

**What if I don't speak English well?** Ask the court clerk as soon as possible for a court-provided interpreter. You may use form INT-300, *Request for Interpreter (Civil)* or a local court form to request an interpreter. If a court interpreter is unavailable for your trial, it may be necessary to reschedule your trial. You cannot bring your own interpreter for the trial unless the interpreter has been approved by the court as a certified, registered, or provisionally qualified interpreter. (See Cal. Rules of Court, rule 2.893, and form INT-140.)

**Where can I get the court forms I need?** Go to any courthouse or your county law library, or print forms at *www.courts.ca.gov/forms.*

**What happens at the trial?** The judge will listen to both sides. The judge may make a decision at your trial or mail the decision to you later.

**What if I lose the case?** If you lose, you may appeal. You'll have to pay a fee. (Plaintiffs cannot appeal their own claims.)

- If you were at the trial, file form SC-140, *Notice of Appeal.* You must file within 30 days after the clerk hands or mails you the judge's decision (judgment) on SC-200 or form SC-130, *Notice of Entry of Judgment.*

- If you were *not* at the trial, fill out and file form SC-135, *Notice of Motion to Vacate Judgment and Declaration,* to ask the judge to cancel the judgment (decision). If the judge does not give you a new trial, you have 10 days to appeal the decision. File form SC-140.

For more information on appeals, see *www.courts.ca.gov/smallclaims/appeals.*

**Do I have options?** Yes. If you are being sued you can:

- **Settle your case before the trial.** If you and the plaintiff agree on how to settle the case before the trial, the plaintiff must file form CIV-110, *Request for Dismissal* or a written and signed settlement agreement with the clerk. Ask the Small Claims Advisor for help.

- **Prove this is the wrong court.** Send a letter to the court *before* your trial explaining why you think this is the wrong court. Ask the court to dismiss the claim. You must serve (give) a copy of your letter (by mail or in person) to all parties. (Your letter to the court must say you have done so.)

- **Go to the trial and try to win your case.** Bring witnesses, receipts, and any evidence you need to prove your case. To have the court order a witness to go to the trial, fill out form SC-107, *Small Claims Subpoena and Declaration,* and have it served on the witness.

- **Sue the person who is suing you.** If you have a claim against the plaintiff, and the claim is appropriate for small claims court as described on this form, you may file *Defendant's Claim* (form SC-120) and bring the claim in this action. If your claim is for *more* than allowed in small claims court, you may still file it in small claims court if you give up the amount over the small claims value amount, or you may file a claim for the full value of the claim in the appropriate court. If your claim is for more than allowed in small claims court *and* relates to the same contract, transaction, matter, or event that is the subject of the plaintiff's claim, you may file your claim in the appropriate court and file a motion to transfer the plaintiff's claim to that court to resolve both matters together. You can see a description of the amounts allowed in the paragraph above, titled **"Small Claims Court."**

- **Agree with the plaintiff's claim and pay the money.** Or, if you can't pay the money now, go to your trial and say you want to make payments.

- **Let the case "default."** If you don't settle and do not go to the trial (default), the judge may give the plaintiff what he or she is asking for plus court costs. If this happens, the plaintiff can legally take your money, wages, and property to pay the judgment.

### What if I need more time?

You can change the trial date if:

- You cannot go to court on the scheduled date (you will have to pay a fee to postpone the trial), *or*
- You did not get served (receive this order to go to court) at least 15 days before the trial (or 20 days if you live outside the county).

Ask the Small Claims Clerk about the rules and fees for postponing a trial. Or fill out form SC-150 (or write a letter) and mail it to the court *and* to all other people listed on your court papers before the deadline. Enclose a check for your court fees, unless a fee waiver was granted.



**Need help?**
Your county's Small Claims Advisor can help for free.

Or go to *www.courts.ca.gov/smallclaims/advisor.*

---

* **Exceptions**: Different limits apply in an action against a defendant who is a guarantor. (See Code Civ. Proc., § 116.220(c).) Limits do not apply in an action to recover COVID-19 rental debt. (See Code Civ. Proc., §§ 116.223 & 1179.02; form SC-500.)



# SC-100   Información para el demandado (la persona demandada)

La **"Corte de reclamos menores"** es una corte especial donde se deciden casos por $10,000 o menos. Los individuos, o sea las "personas físicas" y los propietarios por cuenta propia, pueden reclamar hasta $10,000. Las corporaciones, asociaciones, entidades públicas y otras empresas solo pueden reclamar hasta $5,000. (Vea abajo para las excepciones.*) El proceso es rápido y económico. Las reglas son sencillas e informales. Usted es el Demandado—la persona que se está demandando. La persona que lo está demandando es el Demandante.

**¿Necesito un abogado?** Puede hablar con un abogado antes o después del caso. Pero no puede tener a un abogado que lo represente ante la corte (a menos que se trate de una apelación de un caso de reclamos menores).

**¿Cómo me preparo para ir a la corte?** No tiene que presentar ningún documento antes del juicio, a menos que piense que ésta es la corte equivocada para su caso. Pero lleve al juicio cualquier testigos, recibos y pruebas que apoyan su caso. Y lea "Esté preparado para su juicio" en *www.courts.ca.gov/reclamosmenores/prepararse*.

**¿Qué hago si necesito una modificación?** Si tiene una discapacidad o tiene impedimentos de audición, llene el formulario MC-410, *Solicitud de modificaciones para discapacidad*. Entregue el formulario al secretario de la corte o al Coordinador de Acceso/ADA de su corte.

**¿Qué pasa si no hablo bien inglés?** Solicite un intérprete al secretario de la corte lo más pronto posible. Puede usar el formulario INT-300 o un formulario de su corte local. Si no está disponible un intérprete de la corte para su juicio, es posible que se tenga que cambiar la fecha de su juicio. No puede llevar su propio intérprete para el juicio a menos que el intérprete haya sido aprobado por la corte como un intérprete certificado, registrado, o provisionalmente calificado. (Vea la regla 2.893 de las Reglas de la Corte de California, y el formulario INT-140.)

**¿Dónde puedo obtener los formularios de la corte que necesito?** Vaya a cualquier edificio de la corte, la biblioteca legal de su condado, o imprima los formularios en www.courts.ca.gov/smallclaims/forms (página está en inglés).

**¿Qué pasa en el juicio?** El juez escuchará a ambas partes. El juez puede tomar su decisión durante la audiencia o enviársela por correo después.

**¿Qué pasa si pierdo el caso?** Si pierde, puede apelar. Tendrá que pagar una cuota. (El Demandante no puede apelar su propio reclamo.)
- Si estuvo presente en el juicio, llene el formulario SC-140, *Aviso de apelación* (Notice of Appeal). Tiene que presentarlo dentro de 30 días después de que el secretario le entregue o envíe la decisión (fallo) del juez en el formulario SC-200 o SC-130, *Aviso de publicación del fallo* (Notice of Entry of Judgment).
- Si *no* estuvo en el juicio, llene y presente el formulario SC-135, *Aviso de petición para anular el fallo y Declaración* para pedirle al juez que anule el fallo (decisión). Si la corte no le otorga un nuevo juicio, tiene 10 días para apelar la decisión. Presente el formulario SC-140.

Para obtener más información sobre las apelaciones, vea *www.courts.ca.gov/reclamosmenores/apelaciones*.

**¿Tengo otras opciones?** Sí. Si lo están demandando, puede:
- **Resolver su caso antes del juicio.** Si usted y el Demandante se ponen de acuerdo en cómo resolver el caso antes del juicio, el Demandante tiene que presentar el formulario CIV-110 Solicitud de desestimación (Request for Dismissal) o un acuerdo de resolución escrito y firmado al secretario de la corte. Pídale al Asesor de Reclamos Menores que lo ayude.

- **Probar que es la corte equivocada.** Envíe una carta a la corte *antes* del juicio explicando por qué cree que es la corte equivocada. Pídale a la corte que despida el reclamo.Tiene que entregar (dar) una copia de su carta (por correo o en persona) a todas las partes. (Su carta a la corte tiene que decir que hizo la entrega.)
- **Ir al juicio y tratar de ganar el caso.** Lleve testigos, recibos y cualquier prueba que necesite para probar su caso. Si desea que la corte emita una orden de comparecencia para que los testigos vayan al juicio, llene el formulario SC-107, *Citatorio de reclamos menores* (Small Claims Subpoena) y entrégueselo legalmente al testigo.
- **Demandar a la persona que lo demandó.** Si tiene un reclamo contra el Demandante, y el reclamo se puede presentar en la corte de reclamos menores, tal como se describe en este formulario, puede presentar el formulario SC-120, *Reclamo del demandado* (Defendant's Claim) y presentarlo en este mismo caso. Si su reclamo excede el límite permitido en la corte de reclamos menores, puede igualmente presentarlo en la corte de reclamos menores si está dispuesto a limitar su reclamo al máximo permitido, o puede presentar un reclamo por el monto total en la corte apropiada. Si su reclamo excede el límite permitido en la corte de reclamos menores y está relacionado con el mismo contrato, transacción, asunto o acontecimiento que el reclamo del Demandante, puede presentar su reclamo en la corte apropiada y presentar una moción para transferir el reclamo del Demandante a dicha corte, para poder resolver los dos reclamos juntos. Puede ver una descripción de los montos permitidos en el párrafo anterior titulado "Corte de reclamos menores".
- **Aceptar el reclamo del Demandante y pagar el dinero.** O, si no puede pagar en ese momento, vaya al juicio y diga que quiere hacer los pagos a plazos.
- **No ir al juicio y aceptar el fallo por falta de comparecencia.** Si no llega a un acuerdo con el Demandante y no va al juicio (fallo por falta de comparecencia), el juez le puede otorgar al Demandante lo que está reclamando más los costos de la corte. En ese caso, el Demandante legalmente puede tomar su dinero, su sueldo o sus bienes para cobrar el fallo.

**¿Qué hago si necesito más tiempo?** Puede cambiar la fecha del juicio si:
- No puede ir a la corte en la fecha programada (tendrá que pagar una cuota para aplazar el juicio), *o*
- No le entregaron los documentos legalmente (no recibió la orden para ir a la corte) por lo menos 15 días antes del juicio (ó 20 días si vive fuera del condado).

Pregúntele al secretario de reclamos menores sobre las reglas y las cuotas para aplazar un juicio. O llene el formulario SC-150 (o escriba una carta) y envíelo antes del plazo a la corte y a todas las otras personas que figuran en sus papeles de la corte. Adjunte un cheque para pagar los costos de la corte, a menos que le hayan dado una exención.

 **¿Necesita ayuda?** El Asesor de Reclamos Menores de su condado le puede ayudar sin cargo.

O visite *www.courts.ca.gov/reclamosmenores/asesores*.

\* **Excepciones:** Existen diferentes límites en un reclamo contra un garante. (Vea el Código de Procedimiento Civil, sección 116.220 (c).) Los límites no se aplican a las acciones para reclamar una deuda de alquiler del COVID-19. (Vea el Código de Procedimiento Civil, secciones 116.223 y 1179.02; y el formulario SC-500.)

**Reclamo del Demandante y ORDEN Para Ir a la Corte de Reclamos Menores**

# __METHOD OF PROCESS__

In the California state, of the Monterey county. I, the undersigned, herein declare that I am over the age of eighteen years and NOT a party to the within entitled action. My business address is: *1180 Forest Ar2B Pacific Grove California 93950* I hereby declare under the penalty of perjury of the California Republic and The United States of America (unincorporated) that I served the foregoing document as entitled: on the party(s) by mailing with the Post Office maintained by the United States, Postal Service with postage paid, titled and addressed as follows and or by file stamp/banking postmasters: **NOTICE OF PENDING CLAIM, EXHIBIT 1, METHOD OF PROCESS;**

**Office of Administrative Hearings**
**c/o Clerk of Administrative-Court**
**1515 Clay Street, Suite 206**
**Oakland, California  94612**
**By-Registered-Mail #**
*Rf 108 580 935 US.*

**Rob Bonta**
Attorney General
455 Golden Gate Avenues, Suite 11000
San Francisco, California 94102
**By-Certified-Mail #**
*7022 0410 0001 7454 1938*

I declare under the penalty of perjury of the Laws of the California Republic and The United States of America (unincorporated)  that the foregoing is correct and complete to the best of my knowledge, information and belief, and that this process is executed by the voluntary act of my own hand on Monterey county and is dated below;

Date: *Oct 3, 2022*                    By: *Gloria Chavez*

CASE NO. 800-2021-079497 NOTICE OF PENDING CLAIM
Copyrighted-Works this document by the Douglas Vern Hulstedt

EXHIBIT 6

STEPHANIE M. HINDS (CABN 154284)
United States Attorney
MICHELLE LO (NYBN 4325163)
Chief, Civil Division
JAMES A. SCHARF (CABN 152171)

Assistant United States Attorney
150 Almaden Boulevard, Suite 900
San Jose, California 95113
Telephone: (408) 535-5044
FAX: (408) 535-5081
James.Scharf@usdoj.gov

Attorneys for Defendant
United States of America

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS VERN HULSTEDT, | Case No. |
| Plaintiff, | |
| v. | **NOTICE OF REMOVAL OF CIVIL ACTION** |
| THOMAS OSTLY, *et al.*, | |
| Defendants. | |

TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

CALIFORNIA AND TO THE PARTIES, BY AND THROUGH THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on this day, Case No. 22SC018927, currently pending before the

Superior Court of California, Alameda County, Small Claims Division, is being removed to the United

States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1142(a)(1) and

1446(a) on behalf of Defendant United States of America, which Plaintiff sued as "guarantor." The

grounds for removal are as follows:

1.      On October 4, 2022, Pro Se Plaintiff Douglas Vern Hulstedt filed a Plaintiff's Claim and

ORDER to go to Small Claims Court ("Complaint") in Alameda Superior Court against Thomas Ostly,

1  an attorney sued as "Lien Debtor" (hereinafter "Ostly"), the State of California sued as "guarantor"

2  (hereinafter "California"), and the United States of America sued as "guarantor" ("United States"). A

3  copy of Plaintiff's Complaint is attached hereto as Exhibit 1.

4        2. In the Complaint, Plaintiff asserts claims against Ostly, California, and the United States.

5  Plaintiff alleges that Ostly "refused to abide by his Oath of Office by not providing due process

6  concerning [Plaintiff's] interest in case no. 800-2021-079497" before the Medical Board of California.

7  Plaintiff seeks $10,000 in monetary damages. Complaint, p. 10. Plaintiff does not identify a federal

8  agency or federal employee who harmed him and states no facts supporting his claim that the United

9  States guaranteed him due process regarding his proceedings before the Medical Board of California.

10 Defendant United States will promptly file a motion to dismiss after removal and is entitled to have that

11 motion adjudicated by a federal judge or magistrate judge.

12       3. On October 27, 2022, Plaintiff served the United States Attorney's Office with this

13 pending lawsuit. The materials attached as Exhibit 1 constitute the only process, pleadings, or orders

14 that have been received to date.

15       4. This action is removable to federal district court under 28 U.S.C. § 1442(a)(1) because

16 this action names the United States as a defendant. To the extent Plaintiff sues the United States for

17 personal injury or property damage caused by the negligent or wrongful act of a federal employee acting

18 within the scope of their federal employment, the action is also removable under the Federal Tort Claims

19 Act, 28 U.S.C. § 2679(d)(2).

20       5. A copy of this Notice of Removal will be filed with the Clerk of Superior Court,

21 Alameda County, Small Claims Division. This will automatically effect the removal of this action

22 described above in its entirety to this Court for all future proceedings, pursuant to 28 U.S.C. § 1446(d).

23 The Small Claims Court Trial, scheduled for February 8, 2023, at 1:30 p.m. in Dept. 105 with the Hon.

24 Joscelyn Jones, should be vacated upon the filing of that notice unless this case is remanded back to

25 Alameda County, Small Claims Division following the adjudication of Defendant United States'

26 anticipated motion to dismiss.

27

28

DATED: November 23, 2022                          Respectfully submitted,

                                                  STEPHANIE M. HINDS
                                                  United States Attorney


                                                  _/s/ James A. Scharf_
                                                  JAMES A. SCHARF
                                                  Assistant United States Attorney
                                                  Attorneys for Defendant
                                                  United States of America

## DECLARATION OF SERVICE BY CERTIFIED MAIL AND EMAIL

Case Name:     **Hulstedt v. Bonta et al.**

Case No.:        **5:23-cv-02003-JSC**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter.  I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service.  In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

On June 23, 2023, I served the attached **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS ROB BONTA AND LAURE ROSE LUBIANO TO DISMISS COMPLAINT** by placing a true copy thereof enclosed in a sealed envelope as certified mail and return receipt requested, in the internal mail collection system at the Office of the Attorney General at 300 South Spring Street, Suite 1702, Los Angeles, CA  90013-1230. In addition, I served the attached **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS ROB BONTA AND LAURE ROSE LUBIANO TO DISMISS COMPLAINT** by transmitting a true copy via electronic mail, addressed as follows:

**Douglas Vern Hulstedt, M.D.**
2511 Garden Road, Building -C#100
Monterey, CA 93940
Email: doughulstedt314@gmail.com

I declare under penalty of perjury under the law of the State of California the foregoing is true and correct and that this declaration was executed on June 23, 2023, at Los Angeles, California.

| Jusua Barbosa | |
|---|---|
| Declarant | Signature |